# UNITED STATES DISTRICT COURT
## for the
### Eastern District of California

**FILED**
SEP 1 8 2014
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

United States of America )
v. )
)
) Case No.
)
) 2:14 - MJ - 2 1 2  EFB
BRENT DOUGLAS COLE )
)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Count One: On June 14, 2014, in the County of Nevada, State and Eastern District of California, defendant Brent Douglas Cole did forcibly assault and inflict bodily injury upon a Bureau of Land Management Ranger, a person designated in Title 18, United States Code, Section 1114, by means and use of a deadly and dangerous weapon, that is, a Taurus, .44 caliber revolver, serial number WG141325, while that person was engaged in, and on account of, the performance of his official duties, in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

Count Two: On June 14, 2014, in the County of Nevada, State and Eastern District of California, defendant Brent Douglas Cole did forcibly assault and inflict bodily injury upon a California Highway Patrol Officer, a person designated in Title 18, United States Code, Section 1114, by means and use of a deadly and dangerous weapon, that is, a Taurus, .44 caliber revolver, serial number WG141325, while that person was assisting a Federal Officer in the performance of the Federal Officer's official duties, and on account of that assistance, in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

Count Three: On June 14, 2014, in the County of Nevada, State and Eastern District of California, defendant Brent Douglas Cole did knowingly discharge, carry and use a firearm, that is, a Taurus, .44 caliber revolver, serial number WG141325, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, assault on a federal officer with a deadly weapon which inflicts bodily injury, in violation of Title 18, United States Code, Sections 111(a)(1) and (b) and 1114, all in violation of Title 18 United States Code, Sections 924(c)(1)(A) and 924(c)(1)(A)(iii).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and this criminal complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

☒ Continued on the attached sheet and made a part of this complaint.

_____
Complainant's signature

Andrew D. Forristel, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: _____September 18, 2014_____        _____
                                                          *Judge's signature*

City and state:   Sacramento, California          Edmund F. Brennan, U.S. Magistrate Judge
                                                          *Printed name and title*

## AFFIDAVIT

I, Andrew D. Forristel, ("Your Affiant"), a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Sacramento Division, Chico Resident Agency, being duly sworn, depose and state the following.

1. Your Affiant has been employed as a Special Agent of the FBI for approximately eleven years, and is currently assigned to the Sacramento Division, Chico Resident Agency. Some of my investigative responsibilities include violent crimes, firearms violations, and fugitive matters.

2. The statements contained in this affidavit are based on information provided by law enforcement officers/agents of the Federal Bureau of Investigation and officers from other law enforcement agencies with whom I have spoken or whose reports I have read, and my own investigation and percipient knowledge. Because this affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant, I have set forth only the facts that I believe are necessary to establish that there is probable cause for the indicated offenses.

3. Based on the following information, I believe probable cause exists that BRENT DOUGLAS COLE, date of birth August 12, 1953, has committed the following violations:

- Count 1: Assault on a federal officer with a deadly weapon which inflicts bodily injury, in violation of Title 18, United States Code, Section 111(a)(1) and (b), and 1114;
- Count 2: Assault on a person assisting a federal officer with a deadly weapon which inflicts bodily injury, in violation of Title 18, United States Code, Section 111(a)(1) and (b), and 1114;

- Count 3: Discharging a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(1)(A)(iii).

4.      On June 14, 2014, a law enforcement Ranger, employed by the Bureau of Land Management (BLM), United States Department of the Interior, an employee of the federal government (hereinafter "BLM Ranger"), was working his assigned duties in Nevada County, in the State and Eastern District of California. The BLM Ranger was in full uniform, consisting of a tan colored shirt with BLM patches and a badge affixed, chocolate brown colored pants, black boots, and a duty belt.

5.      While on patrol in BLM land, in the area of North Bloomfield Road, northwest of Edwards Crossing, near the South Yuba River campground, the BLM Ranger observed a blue colored Dodge pickup truck driving on a dirt road that was closed to vehicular traffic. The BLM Ranger activated the emergency lights and siren on his fully marked, BLM patrol truck, and conducted a traffic stop. During this enforcement stop, the BLM Ranger identified the driver of the Dodge pickup as Brent Douglas COLE. The BLM Ranger advised COLE that the dirt road he was driving on was a closed road, and to not drive on it in the future. No citation was issued to COLE, and the BLM Ranger released him after giving him this warning.

6.      After COLE departed the area, the BLM Ranger traveled up the dirt road, which he had just observed COLE driving down, to investigate where COLE had come from, and what may be located there. The road is more accurately described as a path, with heavy bush and tree branches along both sides. It is not possible for a vehicle to travel along this path without foliage rubbing against the sides of the vehicle.

7.      A short distance up the path, the BLM Ranger located a campsite in a small clearing. Located within the campsite, among other items, were two motorcycles. One of the motorcycles

Affidavit                                                                                                          2

contained a California state license plate. The other motorcycle was partially disassembled and did not contain a license plate. The BLM Ranger located a vehicle identification number (VIN) on the second motorcycle. The BLM Ranger contacted the Grass Valley Forest Service Dispatch center and provided the identifying information for the two motorcycles. The dispatch center told the BLM Ranger that the registration for the motorcycle with the California license plate had expired in 2009, and the disassembled motorcycle was stolen.

8. Based on the information received from the dispatch center, the BLM Ranger decided to impound the two motorcycles. As the BLM Ranger was not able to do this by himself, he contacted the California Highway Patrol (CHP) and requested their assistance.

9. A CHP Officer, driving a fully marked CHP patrol vehicle, and wearing a CHP uniform, responded to the area near the campsite and met with the BLM Ranger. The BLM Ranger briefed the CHP Officer on what he had discovered, and provided him with the VIN of the second motorcycle. The CHP Officer contacted CHP Dispatch and provided the identifying information. CHP Dispatch confirmed that the second motorcycle was previously reported stolen and had not yet been recovered.

10. The BLM Ranger asked the CHP Officer to assist him with the impound of the two motorcycles. The two law enforcement officers returned to the campsite and began to develop a plan for how to extract the two motorcycles from the campsite and transport them to a location where a tow truck could meet them.

11. As the two law enforcement officers were in the campsite, they both heard some rustling in the brush near the campsite. The BLM Ranger verbally identified himself as the police and asked who was there. An individual, who was later identified as COLE, responded saying he was the person the BLM Ranger previously dealt with, and that he was coming to get his things.

Affidavit                                                                 3

12.     As COLE came out of the trees and into the campsite, he identified the camp as being his, and the items in it belonging to him. COLE told the BLM Ranger that he did not want him taking his things. When the BLM Ranger removed his handcuffs from his duty belt, COLE began to back away from the BLM Ranger, and took an aggressive stance. The BLM Ranger asked COLE if he was armed, to which COLE said he was. In response to COLE's answer, both the CHP Officer and the BLM Ranger drew their weapons.

13.     In a quick motion, COLE drew a silver colored handgun from the right side of his waist, pointed the weapon at the BLM Ranger and fired multiple rounds. One round struck the BLM Ranger in the left shoulder. In response to COLE's actions, both the BLM Ranger and the CHP Officer returned fire. During the engagement, COLE turned the weapon upon the CHP Officer and fired multiple rounds. The CHP Officer was struck by shrapnel in the right, lower leg. Cole was struck several times by law enforcement.

14.     After expending his ammunition, and being shot multiple times, COLE fell to the ground and told law enforcement he gave up. The two officers handcuffed COLE, called for assistance, and then rendered medical aid to COLE while waiting for fire and an ambulance to arrive.

15.     Immediately after the shooting, law enforcement seized the silver colored handgun COLE had fired at the law enforcement officers. The weapon is more fully described as a silver colored Taurus, .44 caliber revolver, serial number WG141325, manufactured in the Country of Brazil. An inspection of the weapon revealed it contained six spent shell casings.

16.     Fire and emergency medical services (EMS) arrived at the campsite and took over in providing aid to COLE. COLE was treated at the scene and then evacuated out of the campsite to a waiting ambulance. While in the back of the ambulance EMS asked COLE what had

happened.[1] COLE said he was approached by some officers, who asked him if he was armed. After saying "yes," the officers drew their weapons so he (COLE) shot them.

17.   COLE, the BLM Ranger, and the CHP Officer received medical attention and all will survive their wounds.

18.   On June 16, 2014, COLE waived his rights per *Miranda*, and was interviewed by law enforcement about this incident. During this interview, COLE admitted he fired a total of six rounds at the two law enforcement officers, with three being directed at the BLM Ranger. COLE said he tried to hit the BLM Ranger in the shoulder, and acknowledged that this is where he shot the BLM Ranger. COLE also admitted he recognized the BLM Ranger from the contact earlier in the morning, and that the BLM Ranger was in a law enforcement uniform. COLE described the CHP Officer as being a State Trooper, and again recognized him to be a law enforcement officer. COLE described the weapon he used during the shooting as a .44 Magnum, which he received as a gift from his son. COLE identified the ammunition in the weapon as being "soft lead" which he purchased from a store

19.   The BLM Ranger, while on duty and performing his official duties on BLM land, in Nevada County, in the State and Eastern District of California, falls within the definition of Title 18, United States Code, Section 1114, protection of officers and employees of the United States.

20.   While rendering assistance to, and at the request of, the BLM Ranger, the CHP Officer, who was on duty and in full CHP uniform, also falls within the definition of Title 18, United

---

[1] It is common practice for EMS to assess a patient's level of consciousness during treatment. Typically, a care provider wants to determine if the patient is oriented to four things: person, place, time and event. To accomplish this, the patient is asked questions to determine if they know their name, where they are, what day it is, and what happened. If the patient is not able to properly answer any of these four questions, it is an indication that they have an altered mental status. In this instance, an altered mental status may be an indicator that the patient is in hemorrhagic shock, which is a life threatening condition. The patient's response to "what happened" can also assist in identifying other injuries which are not immediately obvious to the care provider.

Affidavit                                                                                                           5

States Code, Section 1114, protection of officers and employees of the United States.

21.     Based on the aforementioned facts and circumstances, the undersigned Affiant believes there is probable cause that Brent Douglas COLE, on June 14, 2014, in Nevada County, in the State and Eastern District of California, assaulted a federal officer with a deadly weapon which inflicted bodily injury, in violation of Title 18, United States Code, Section 111(a)(1) and (b), and 1114; assaulted a person assisting a federal officer with a deadly weapon which inflicted bodily injury, in violation of Title 18, United States Code, Section 111(a)(1) and (b), and 1114; and discharged a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(1)(A)(iii).

22.     I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Andrew D. Forristel, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before
me this ___ day of September 2014.

_____
Edmund F. Brennan
United States Magistrate Judge

Approved as to form:

_____
Michael McCoy
Assistant U.S. Attorney

Affidavit                                                                                                                                6