Defendant: Brent Douglas Cole /X-635066

2  Sacramento County Main Jail

651 "I" Street, Sacramento, CA 95814

4  In Propia Persona:

**FILED**

JUN 15 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES DISTRICT COURT

6  EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8  UNITED STATES OF AMERICA, | Docket no.: 0972 2:14-cr-0269-GEB |
| Plaintiff, | |
| 10  v | OBJECTION TO PRE-SENTENCE |
| BRENT DOUGLAS COLE, | INVESTIGATION REPORT |
| 12  Defendant. | |

14  I, Brent Douglas Cole, defendant, hereby depose and state my

16  objections to the pre-sentence report in this instance. The

18  report is flawed severely in that it reflects the bias that

20  has been introduced in this case by false assertions and

22  prosecutorial misconduct, which has gone unrebutted

24  due to violations of due process, perjury, and an

26  ineffective assistance of counsel.

OBJECTION TO REPORT - U.S. v. Cole - Page 1 of 36

# INDEX TO APPENDICES

APPENDIX 1 - Interview with Ricky Hurtodo  - 1 page

APPENDIX 2 - "Affidavit of Brent Douglas Cole, June 4, 2014"
         Was filed with "ANSWER...," June 5, 2014 - 1 page

APPENDIX 3 - Page 1 of "Emergency Medical Report"  - 1 page

APENDIX 4 - "August 14, 2014 MEMORANDUM" (evidences
         that the "ANSWER WITH BILL OF EXCEPTIONS And Af-
         fidavit In Support" [APPENDIX 2] were removed from the
         California Superior Court County of Nevada file) - 1 page

APPENDIX 5 - Defendant's North Dakota Class A C.D.L. - 1 page

APPENDIX 6 - Letter from American Insurance Inc. proving
         defendant's insurance was current on June 14, 2014 and
         that Tod Pultorak's testimony that his insurance was
         expired was False testimony. Policy No.: 10542465
         1-701-483-9104 38 First St. W., Dickenson, ND 58601

APPENDIX 7 - Government Exhibit 6G Brent Hardin's wounds
         photograph. A horizontal trajectory wound.

APPENDIX 8 - Government Exhibit 6D Tod Pultorak's
         wound photograph. A horizontal trajectory wound.

APPENDIX 9 - "COLE_00872" Photo of defendant in Stokes
         basket. 4 horizontal and 1 vertical trajectory wounds,
         DEFENDANT'S EXHIBIT NO. E

APPENDIX 10 - "Supplemental Incident Report" no. 1.: Concealed
         from the defendant by counsel till June 4, 2015 to
         conceal existence of witness David Brett Tuter - 3 pages.

OBJECTION TO REPORT - U.S. v. Cole    Page i

I.

"And the judges shall make careful inquiry, and indeed, if
2   the witness is a false witness, who has testified falsely against
his brother, Then you shall do to him as he thought to have
4   done to his brother; so you shall put away the evil from among
you. And those who remain shall hear and fear, and hereafter they shall
6   not again commit such evil among you." Deuteronomy 19: 18-20.
"You shall do no injustice in judgment. You shall not be partial to
8   the poor, nor honor the person of the mighty. In righteousness you
shall judge your neighbor." Leviticus 15:15
10  "You shall not take vengeance, nor bear any grudge against
the children of your people, but you shall love your neighbor
12  as yourself: I am the LORD, You shall keep My statutes."
Leviticus 19: 18-19.
14  "In the absence of eminent danger to Life and limb, a decision
regarding search, or siezure is required by a judicial officer
16  to "make an independent determination on the undisputable
facts."" Stroble v. California, 343 US 181, 190.
18

There existed no factual predicate which amounted to probable
20

cause sufficient to support the BLM Ranger arresting the
22

defendant. His "attempt to arrest" was an illegal arrest that
24

constituted personal trespass. See Brown v. Illinois, 422 US,
26

590; and Dunaway v. New York, 422 U.S. 200.
OBJECTION TO REPORT:      - U.S. v. Cole Page 2 of 36

## II.

Ecclesiastical law and the Torah are the basis of the common law.

2

The testimonies against the accused do not agree; There is none:

4  "One witness shall not rise against a man concerning any iniquity

or sin that he commits; by the mouth of two or three witnesses

6  the matter shall be established." Deuteronomy 19:15

"   Now the chief priests and all the counsel sought testimony

8  against Jesus to put him to death, but found none."

"For many bore false witness against him, but their testimonies

10  did not agree." Mark 14:55-56.

12  At trial Officer Hardin testified that he could not tell who

14  fired the first shot. In his interview June 17, 2014,

16  N.C.S.O, Case 1140-1626 on page 6 of the transcript: Lines 268-270:

"The Ranger said, "Are you armed?" and the guy says,

18  "Yes I am." and I immediately drew my weapon, and I

saw the rg- the BLM Ranger draw his..." On page 7, line

20  274;"- when, uh, we asked if he was armed we both - we both

drew, I saw the Ranger draw his weapon, and the Ranger

22  started back towards the trail a little bit, kinda

backin up a little bit. " — Then on page 31, line 1333:

24  "And I saw the gun, and at that point, I don't believe the

BLM officer said anymore he- he - we both drew and he

26  backed up."

OBJECTION TO REPORT - U.S. v. Cole - Page 3 of 36

## III - COURT'S DUTY TO DETERMINE

"The Fourth Amendment proscribes all unreasonable searches
2 and seizures, and it is a cardinal principle that "searches
conducted outside the judicial process, without prior
4 approval by judge or magistrate, are per se unreasonable
under the Fourth Amendment - subject only to a few
6 specifically established and well-delineated exceptions,"
Katz v. United States, 389 US. 347, 357; Mincey v. Arizona, 437
8 U.S. 390; South Dakota v. Opperman, 428 US 364, 381.
"Detention for custodial interrogation - regardless of it's label-
10 intrudes so severely on interests protected by the Fourth
Amendment as to necessarily trigger the safeguard
12 against illegal arrest." Dunway v. New York, 422 US 200, 213,
214. — The Fourth Amendment "is designed to prevent, not
14 simply to redress, unlawful police action." Chimel v California,
395 US 752, 766; U.S. v U.S. District court, 407 U.S. 297, 316.
16

"When the constitutional validity of an arrest is challenged, it is
18 the function of a court to determine whether facts available
to officers at the moment of arrest would "warrant a man of
20 reasonable caution in the belief" that an offense had been
committed." Carol v. United States, 387 US 294, 310 (1967)
22

The court, in this case, has failed to determine the validity of
24
the arrest, failed to be watchful for the constitutional rights,
26
and stealthy encroachments, and not stood for principles.

IV

Officers were not engaged in the lawful performance

2 of their duties. They were without a warrent to search

4 or to arrest the accused, and were taking his property.

6 In the transcript of Officer Hardin's interview June 17, 2014,

8 Page 6, line 231: "So, there was a back pack layin' right there
that had nothing in it so I - I started puttin' the parts in

10 the back pack and he was gonna - we were gonna cary that
down and he'd walked over to the other motorcycle..."

12 Line 236: "And, uh, before I actually pulled it out, there was some
cases, and I thought maybe I should get - see if there's any

14 ID, 'cause if the person who reported..."

16 "[E]very invasion of private property, be it ever so minute, is a
trespass. ... [I]t is the invasion of his indefeasible right of

18 personal security, personal liberty and private property, where
that right has never been forfeited by his conviction of

20 some public offense; it is the invasion of this sacred right
which underlies and constitutes the essence of Lord Camden's

22 judgment. ..." "The principles laid down in this opinion affect
the very essence of constitutional liberty and security. ...

24 [T]hey apply to all invasions on the part of the Government and
its employees, of the sanctity of a man's home and the privacies

26 of life." Boyd v. United States (1886) 116 US 616, 627, 630, 39 LED 746.

OBJECTION TO REPORT - U.S. v. Cole - Page 5 of 36

## V

"Notes of Advisory Committee on 2002 amendments. ... First,
Rule 4(b)(1)(C) mandates that the warrant require that the defendant
be brought "without unnecessary delay" before a judge. ... Second,
the revised rule states a preference that the defendant be brought
before a federal judicial officer," — "Rule 4(b)(2) has
been amended to require that if a summons is issued, the defen-
dant must appear before a magistrate judge. ... This change
is consistent with the preference for requiring defendants
to appear before federal judicial officers stated in revised
Rule 4(b)(1)." — "Rule 4(c) ... As revised, Rule
4(c)(3)(A) explicitly requires the arresting officer  *
in all instances to inform the defendant of the     *
offense charged and of the fact that an arrest      *
warrant exists." — "3. Fourth Amendment ... Test
applied in determining whether or not probable cause exists for issuing
arrest is same provided for search warrant under Fourth Amend-
ment. United States v. Bailey (1965, ED La) 247 F Supp 883.
    "Functions and duties of magistrate
Protection afforded by rules 3 and 4 is that inferences from facts
which lead to complaint be drawn by neutral and detached
magistrate instead of being judged by officer engaged in
competitive enterprise of ferreting out crime. Giordenello.
    Arrest warrant proceedure serves to insure deliberate,
impartial judgment of judicial officer will be interposed
between citizen and police, to assess weight and credibility
of information which complaining officer adduces as
probable cause. Wong Sun v. United States (1963) 371 U.S. 471."

$$\overline{VI.}$$

The defendant was arrested in the I.C.U. unit of the hospital,
2   where he had undergone extensive surgery for gunshot
wounds, without a valid warrant or commitment. He was
4   confined in "Maximum A" security confinement and denied
the ability to access the courts on or about June 18, 2014.
6   A state complaint was drawn up by the Assistant District
Attorney and submitted to the Court, but there was no
8   determination of probable cause made by any judicial
officer based on the sworn testimony of any witness.
10   The complaint was based entirely on hearsay and supposi-
tions. Then on September 25, 2014 the state prosecution
12   was dismissed and a complaint was instituted in this
court based on the hearsay evidence of Andrew Forrestel,
14   but still there was no determination of probable cause
made by a qualified judicial officer. The federal rules of
16   criminal proceedure, rules 3, 4, and 5 apply to state courts.
See F.R. Crim. P. Rule 1(c), 28 U.S.C. §§ 631-639, and
18   18 U.S.C. § 3041; and Notes of Advisory Committee on 1972 amend.
Title 18 U.S.C § 3161 (B) directs the government to have an
20   original indictment filed within thirty days from the
defendant's arrest; Wherefore, the defendant has been
22   under an unlawful seizure since July 18, 2014, all in
violation of the defendant's Fourth Amendment right
24   and Rules 3-5. In Weeks v. United States, 222 US 383 (1914)
the courts held that any Fourth Amendment violation triggers
26   the exclusionary rule thus, barring from use evidence so obtained,

Whereby, this Court is precluded from utilizing fruits of a

2   poisonous predicate to prosecute the defendant, <u>Wong Sun v. United</u>

  <u>States, 371 US 417 (1962)</u>. The instant indictment was illegal

4   before its conception, and as a result, the courts are without

  jurisdiction to prosecute in the absense of a lawful accusatory

6   instrument: Rule 34.2; 18 U.S.C. 3231; <u>Gerstein v. Pugh</u>, 420 US

  103, 125, 43 L Ed 2d 54, 95 S. Ct. 854; — "Whatever procedure

8   a State may adopt, it must provide a fair and reliable deter-

  mination of probable cause as a condition for any significant

10   pretrial restraint of < * pg. 72 > liberty,[26] and this deter-

  mination must be made by a judicial officer either

12   before or promptly after arrest.[27]"

  This Court did not comply with these requirements even

14   after defendant had been held for ninety six (96) days.

  Defendant was placed in T-Sep without a due process hearing

16   and denied all access to legal materials and courts.

  Counsel J. Toney was imposed to "represent" and he failed

18   and/or refused to research any law, file any motions, and

  deprived the defendant of his rights under the Fifth

20   to due process, and his Sixth Amendment rights. This

  Court has refused to allow defendant to address the

22   Court, stating that the defendant was "not authorized".

  Counsel failed to subject the prosecution's case to meaningful

24   adversarial testing, and defendant has had no opportun-

  ity to speak in his own behalf and rebut the allegations

26   against him. The trial was unfair and the verdict vitiated.

  OBJECTION TO REPORT – U.S. v. Cole– Page 8 of 36

## $\overline{VII}$

Ranger Pultorak asserted that there had never been any
2 problems with anyone else in his testimony, and he
portrayed his demeanor as calm and rational during
4 the "traffic stop" that morning. Both the U.S. Attorney
and counsel J. Toney were well aware of the deception.
6 As Kevin Radon testified before the grand jury Sept. 4, 2014 on
page 21, "And Brent, Mr Cole asked if it's a closed road,
8 where is the sign or gate or some thing that states that
it's a closed road." ... "The ranger said he was the
10 sign." ... Page 22, line 16, "Q And then what happened?"
A. "Cole tried to ask another question, which the
12 ranger didn't really let him speak, and told us to leave
and --" ... Page 27, Line 7, "He said he was going to go
14 to town, to the big town, and try to get a restraining order
against him." Q. "Against the Ranger?" A. "Yes."
16 Line 15 "... he felt, I guess, he felt threatened, is
the easiest way to put it." —— Michael Radon detailed
18 the ranger leaning in the drivers side window in my
face, making threats and angrily cursing. He
20 also detailed the ranger repeatedly searching his
property without a warrant and "trashing" his
22 important papers and clothes. Mr. McEoy was
so astounded on Sept. 24, 2014, page 20, line 9-10 he asked,
24 Q. "I'm the what? I'm sorry" A. "He goes like this
up against the window. He goes I'm the -- and don't let
26 me see you back again or I'll have your vehicle towed."
OBJECTION TO REPORT - U.S. v. Cole - Page 9 of 36

I asked where the sign was, thinking, perhaps I had not seen it,
2 I was inquiring as to how a person is to know of a closure.
The ranger's claim that the road is "completely brushed in" is
4 false. The ranger falsely claimed that defendant had expired
insurance, and labeled defendant a "transient", knowing that
6 he was being held in custody to attend court on a misdemeanor
and held a North Dakota Class A CDL with haz-mat, tanker,
8 and tripples endorsements, and a current medical examiner's
certificate. Counsel J. Toney had been given proof of
10 these facts, the existance of the audio, and informed by
a private investigater that Michael Radon has stated that
12 Ranger Pultorak obviously had an intent to injure and
provoke an altercation. July 23, 2014 investigator Robert
14 Beresford interviewed Michael Radon, who informed him,
Line 12, page 2: "Radon described those nights as scary because
16 of wild animals and a bear that was in the vicinity."
Page 3 line 11: "When the trio arrived at the bottom of the dirt
18 road, at the intersection with N. Bloomfield Road, they found
Tad Pultorak waiting for them." Line 14: "RADON clarified
20 that he did not know whether Pultorak was waiting for
them or was "just sitting there"..."Cole immediately yeilded,
22 driving about another 20 feet to the shoulder of North
Bloomfield Road."... Page 4, Line 4: Michael said, ""They
24 already know who we are," and added that he and other home-
less persons felt harassed by PULTORAK and other law enforce-
26 ment officials that contacted them."

OBJECTION TO REPORT - U.S.v. Cole - Page 10 of 36

Page 4 Line 20 : "Every time COLE tried to speak, PULTORAK

2. cut him off and he was not allowed to respond. Coles face

expressed Frustration." ——— "Michael described PULTORAK

4 as "agitated" and stated that it appeared Pultorak had

"a vendetta out for Brent Cole." I clarified whether

6 it appeared PULTORAK wanted to arrest, injure or

hurt COLE for no apparent reason and Michael replied,

8 "Correct." The manner in which PULTORAK spoke to

COLE angered Michael as well. Michael added that

10 PULTORAK spoke to COLE as though he wanted to

"Kick his ass," Michael agreed that PULTORAK was

12 aggressive and opined that he challenged COLE as if

to say, "Try some thing and see what happens." "...

14 "While still driving to BROWN's residence, Cole stated

that he wanted to obtain a restraining order that would

16 require another law enforcement officer to witness

any further conversation between him and PULTORAK.

18 COLE figured that if another officer was present

that PULTORAK would not speak to him with condescension

20 and disrespect." Counsel Toney apparently had been

given the transcript by Jody Schutz in October and had

22 concealed it from the defendant and carefully avoided

asking any questions of Michael Kadon that would

24 elicit similar testimony before the court and jury.

There were two other witnesses, Chris DONEGAN, and

26 David Brett Tuter with crucial testimony J. Toney concealed.

OBJECTION TO REPORT - U.S. v. Cole - Page 11 of 36

Guidelines Manual Chapter 5 Part 0.  Downward Departures

VIII

The grounds for downward departures that are specifically men-
tioned in the guidlines are present in this case: §5K2.10
Victim's Conduct. — The alleged victims unlawful, immoral,
and criminal conduct contributed so significantly to the
occurrence of the incident that it is an absolute certainty
that had they acted in a lawful manner, or not been acting
in an unlawful manner, that was injuring the defendant in
his property, the incident would never have occurred.

1.) Defendant was 130 lbs, over 60 years old and 5'7". He
was accosted by two large middle age men, one being
285 lbs, 6'5" and in his 30s, and the other being about
200 lbs. Both were wearing balistic vests and heavily
armed with semi-automatic firearms, and standing
within a few feet calmly conversing with the defendant
when, without stating that they were placing the defendant
"under arrest", both men suddenly assaulted the
defendant with semi-automatic firearms.

2.) The ranger had previously that day made verbal threats
and assaulted the defendent, He had seized his property,
without a warrant, demanding that defendant leave in his
pickup and not drive his pickup on the spur road, The defend-
ant complied with his demands, in an attempt to placate
him, and returned on foot to claim his property to find
officers searching private property without a warrant,
and purloining his property, Defendant announced his
approach, stated his name and his business, and was told to approach,

OBJECTION TO REPORT - U. S. v. Cole - Page 12 of 36

3.) The ranger immediately fired his gun upon drawing
2  it, at point blank range, inflicting serious bodily injury
   upon the defendant. The bullet entered just below
4  the defendant's naval and exited out of his perinlum
   at the apex of his left inner thigh about an inch
6  from his scrotum, The ranger rapidly backed away
   and continued to shoot him with a semi-automatic
·8  40 caliper firearm. The "victim's" reputation for
   violence has not been investigated and his personel records
10  have not been disclosed, His reputation for unlawful
   behavior is well known, and the prosecution abetted
12  his concealment of that fact from the jury knowingly.
   4.) The danger actually presented to the defendant
14  is evidenced by five gunshot wounds and permanant
   loss of the use of defendant's left arm subsequent
16  to about three hours in surgery by a team of trauma
   surgeons at Sutter Roseville Medical Center One,
18  5.) The "victims" had no warrant or probable cause to "arrest"
   the defendant and made no attempt to inform the defendant
20  of their intent to "arrest" him. They suddenly drew their
   guns and shot the defendant when he informed them
22  that he was armed, after being asked if he was, The
   ranger had been informed hours beforehand that
24  the defendant was armed, and used the fact that
   defendant was exercising his second Amendment right
26  as an excuse to shoot the defendant,
   5.) Prior to the shooting the ranger issued threats and brandished handcuffs,

6.) Within 10 to 12 seconds of defendant calmly answering
2  the ranger's question, while standing facing him a few feet
   away" from him, the two officers fired 17 shots at the
4  defendant striking him five (5) times and inflicting
   serious bodily injuries, which were life threatening.
6  The defendant inflicted one minor flesh wound upon
   each of the two officers in defending himself.
8  Neither required surgery or any stitches. The
   defendant had no criminal intent but simply reacted
10 to being shot repeatedly, by an attempt to defend
   himself, The fact that he shot back did not constitute
12 an assault, but was in fact done in self defense, without
   any prior planning or criminal intent, evidenced by a
14 minor wound to a lower extremety and a minor
   wound to a shoulder. despite numerous life threatening
16 wounds being inflicted upon the defendant, without this
   having committed any overt act or crime. Had the
18 officers informed him that he was being placed under
   arrest there would have been no altercation, which
20 is evidenced by the defendant having been arrested on
   several occasions with firearms, and having always
22 surrendered them peaceably when informed by any
   officer that they were placing him under arrest,
24   § 5K2.11, Lesser Harms
   Defendant percieves that the State has implemented
26 unconstitution statutes and is abrogating a constitutionally
   guaranteed right. He was attacked for performing statutory duty..

## IX

Section 6A1.4 of the Guidelines Manual states:

2 "§6A1.4 Notice of Possible Departure (Policy Statement)

before the court may depart from the applicable sentencing

4 guideline range on a ground not identified for departure

either in the presentence report or in a party's pre-

6 hearing submission, the court must give the parties

reasonable notice that it is contemplating such a dep-

8 arture. The notice must specify any ground on which

the court is contemplating a departure. Rule 32(h) FRCP

10

   Official Victim (§3A1.2) enhancement should

12 not apply because no crime or offense had been

committed by the defendant nor has it even been

14 alleged that the defendant committed any crime

for which a firearm could have been discharged

16 during the commission thereof. — An offense

or crime must have been perpetrated during which an

18 assault was committed for this to apply. It

violates the Fifth Amendmend bar on double jeopardy

20 to add upper departures for a firearm being used in an

assault plus additional sentence, and also convict

22 on another count claiming that it is a separate crime.

There has been no allegation made that defendant was

24 engaged in committing a crime when Tod Pultorak

? attempted to "arrest" the defendant. The prosecution

26 for count 3 is abuse of process, barred by the Fifth

Amendment, and manifestly unjust.

$\overline{X}$

§ 5K2.12 Coercion and Duress

2   The defendants actions were prompted by coercion and duress. His
Second, Fourth, Fifth, and Sixth Amendment rights were violated
4   in January by the State of California, N.C.S.O., and the agents
and agencies of the government violating the Constitution and
6   laws of the United States. Defendant was again being seized,
assaulted, and his property was being taken under color of law.
8   Defendant was unlawfully incarcerated, Falsely accused of
having committed a crime under 'Bills of Attainder', and then
10   held in custody by persons acting unlawfully under the guise of
the authority of State. The ranger provoked and assaulted him.
12      5K2.20 The conduct of the defendant was completely out of
character for the defendant. There was no planning and no
14   intent to commit any criminal act. The entire duration of
the incident was 10 to 12 seconds in which the defendant was
16   severely injured, maimed for life, and required 2,375 ccs
of blood in trauma surgery.
18           UPWARD DEPARTURES
§ 5K2.2 Physical Injury - The defendant was the only
20   person involved that incurred "serious bodily injury",
which was inflicted upon him by the alleged "victims".
22   Officers received only fairly minor wounds which required
no surgery and no stitches, and which caused no permanent
24   injury or disfigurement. The upward departures are not
warranted that are called for in the report. The defendant
26   deliberately avoided inflicting serious injury upon them.
OBJECTION TO REPORT - U.S. v. Cole - Page 16 of 36

XI

Defendant affirms and defers to his motion filed 4/10/15,

2

"MOTION TO DISMISS COUNSEL AND REVERSE JUDGMENT.",

4    FOURTH AMENDMENT- II - UNLAWFUL ARREST

"The right to resist an unlawful arrest was well established at

6   common law. "If the officer have no right to arrest, the other

party might resist the illegal attempt to arrest him, using

8   no more force than was absolutely necessary to repel the

assault constituting the attempt to arrest," John. Bod ElK

10   v. United States, 177 U.S. 529, 535, 44 L. Ed 874, 20 S. Ct. 729

(1900), "One has an undoubted right to resist an unlawful

12   arrest, and courts will uphold the right of resistance

in proper cases." United States v. Di Re, 322 US 581, 594,

14   68 S. Ct 222, 92 L. Ed 210 (1948).

"The right to resist unlawful arrest memorializes one of the

16   principal elements in the heritage of the English revolution: the

belief that the will to resist arbitrary authority in a reasonable

18   way is valuable and ought not be suppressed by the criminal

law. In the face of obvious injustice, one ought not to be

20   forced to submit and swallow one's sense of justice. More

importantly, it is unconscionable to convict a man for

22   resisting an injustice. This is indeed a value judgment,

but the values are fundamental," Chevigny, The Right to

24   Resist an Unlawful Arrest 78 Yale L.J. 1128, 1137-38(1969),

"The freedom to refuse to obey a patently unlawful arrest is essen-

26   tial to the integrity of a government which purports to be one of

OBJECTION TO REPORT   :  -US. v. Cole - Page 17 of 36

laws, and not of men. Unless it is desirable to kill the impulse
2  to resist arbitrary authority, the rule that such an arrest
is a provocation to resist must remain fundamental."
4  Id. at 1147. Footnote 3, United States v. Moore 483 F2d
1361; 1973 U.S. App. Lexis 8124 No. 72-3181 (9th Cir.)
6                              XII
"We are not to be understood as implying that the defendant's
8  state of mind is never a relevant consideration under 18
U.S.C. §111. The statute does require a criminal intent
10  and there may well be circumstances in which ignorance
of official status of the person assaulted or resisted
12  negates the very existence of mens rea. For example,
where an officer fails to identify himself or his
14  purpose, his conduct in certain circumstances might
reasonably be interpreted as the unlawful use of
16  force directed either at the defendant or his property.
In a situation of that kind, one might reasonably be
18  justified in exerting an element of resistance, and
an honest mistake of fact would not be consistent
20  with criminal intent." United States v. Feola, 420 U.S.
671, 686, 95 Sct. 1255, 1264, 43 L Ed 2d 541 (1974)
22
The defendant has challenged the constitutional validity of his
24
arrest, and this court failed and/or refused to determine facts.
26  See Carol v. United States (1967) 387 U.S. 294, 310.
OBJECTION TO REPORT - U.S. v. Cole   Page 18 of 36

RESPONSE TO ALLEGATIONS IN "PART A. THE OFFENSE

1.) The verdict returned was vitiated by an unfair trial.

2.) True.

3.) Defendant has been denied discovery of the trial briefs and of the grand jury proceedings, and has insufficient information to either confirm or deny.

4.) I deny the accuracy of the information given here, and submit that the prosecution has suppressed the audio recording of the incident. Defendant insisted at the hearing on January 30, 2015 that he could not get a fair trial without that audio recording and the evidence that was unlawfully seized: i. e. Evidence entries 106 and 120 held by N.C.S.O. Both were suppressed at trial.

5.) Defendant denies that there were two motorcycles in the camp. The Honda was in the camp. The kawasaki was in the trees near the camp, and was moved into the camp by N.C.S.O. and photographed. Evincing that the kawasaki was not in the camp is Government Exhibit 2J, the 18th picture taken, which reveals that it was not there until after the shooting incident.

6.) The Kawasaki was declared unrecovered in July 2013 and the insurance company paid out for it. Defendant was in North Dakota building a house in July 2013. Defendant has had nothing to do with any motorcycles for over 30 years.

7.) True that is claimed, but the alleged facts are not accurate.

OBJECTION TO REPORT - U.S. v. Cole - Page 19 of 36

8.) Defendant denies the allegations made in "8.)", Pultorak admitted in his testimony at trial that there was conversation after defendant came up to the clearing, and that the demeanor of the defendant was passive and pleading to leave his backpack and personal items alone. The defendant did not draw his gun first, and the prosecution is well aware of that fact, but the U.S. Attorney keeps claiming falsely that defendant drew first. The fact that the prosecution knows this claim is false is evinced by Andrew Forrestel being questioned before the grand jury by Assistant U.S. Attorney Michael McCoy on Tuesday, October 2, 2014, 10:51 A.M. Andrew Forrestel, an FBI agent assigned to the Chico Resident Agency testified: Page 12, line 13: "The BLM ranger ended up removing a pair of handcuffs from his duty belt. And upon seeing that, Mr. Cole backed up a little bit and took kind of an agressive stance." "In response to Mr. Cole's actions, the BLM ranger asked Mr. Cole if he was armed. Mr. Cole said he was. In response to that, both of the law enforcement officers drew their weapons."

This was the testimony of Brent Hardin on June 18, 2014 four days after the incident. He stated this very clearly at least three times during his questioning very assertively. He changed his testimony at trial. He said he was not able to tell who fired first, and that defendant drew when Pultorak backed away.

OBJECTION TO REPORT - U.S. v. Cole- Page 20 of 36

When Tad Pultorak drew his weapon he immediately fired,
striking the defendant just below his belly button and
exiting out of his perinium at the apex of his inner left
thigh, thus leaving the bullet strike in the roadway
that is point #37 in the MAIT Diagram. After gut
shooting the defendant, he rapidly backed away and
continued shooting the defendant. The accused drew
his weapon and shot Pultorak in the shoulder after
being gut shot by Pultorak twice. The CHP
officer opened fire, firing twelve shots at defendant
in a few seconds. Defendant fired his direction at
the ground, evinced by the bullet strikes at his feet.
Officers fired 17 rounds at the defendant within about
10 - 12 seconds of drawing their guns. They drew
without provocation on defendant's part. Defendant
was shot five (5) times by officers. He inflicted a
relatively minor flesh wound on each officer,
neither of which required any surgery or stitches.
Defendant used only minimal force under the circumstance,
Defendant is maimed for life and neither officer suffers
any disfigurement or debilitation. Officers had no
warrant and no probable cause to arrest the defendant,
and did not inform him of their intent to arrest him.
Neither officer allowed the defendant to surrender his gun.
Officers drew their guns without provocation. Then
Tad Pultorak shot the defendant to initiate the shooting.
OBJECTION TO REPORT - U.S. v. Cole - Page 21 of 36

9.) Defendant denies that he stated that "officers drew their
2  weapons, so he shot them." There are three witnesses as
to what defendant said in the ambulance, and only the
4  testimony of Stefan Montilius is refered to by the
prosecution. Defendant was severely wounded, had lost
6  two thousand three hundred and seventy five CC's of
blood, and was having trouble maintaining consciousness.
8  Mr. Montilius testified before the grand jury, "That's how I
interpreted it, what he said. I interpreted it as he
10  fired the first shot after they drew their guns."
        "GRAND JURROR. They pulled their guns out and he
12  pulled his gun out?" Page 31, lines 8-14.
        Witness. "He did not say that they shot at him first."
14  The witnesses whom the prosecution did not call have
a different story, and theirs both agree. Kyle
16  Rutherford stated in his testimony before the grand
jury: Page 18, lines 1-4:    A. "I asked him what
18  happened. And he told me that the officers had drew
his gun, their guns at him, and he didn't have a
20  choice but to -- to shoot back at the officers or
to shoot at the officers." ... "I told him, "You can't
22  shoot at cops," "He in turn said basically the same
thing, that he didn't have a choice but -- but to shoot
24  at them because they had drawn on him."
        Attached is Incident Report #19, case no. 11401626, NCSO, as
26  APPENDIX 1. Ricky Hurtaldo said the same in paragraph 3.
OBJECTION TO REPORT - U.S. v. Cole - Page 22 of 36

9.) (cont.) "Hurtado said he heard the suspect say that

2  they drew on him, so he shot back in self-defense."

   I did not think that I was going to survive. I was

4  trying to be clear in stating the fact that they had

   'drawn down on me' meaning that they had drown

6  their guns and fired at me. I submit that you can

   not "shoot back" until some one has fired upon you.

8  Officer Hardin states very clearly in his testimony

   that he fired upon the defendant prior to the

10 defendant firing in his direction. I submit

   that my lack of intent to do harm is evinced by the

12 fact that I was shooting at extremeties suchas

   the lower leg and above the clavical bone, and the

14 fact that I did not inflict serious injuries upon

   either despite shooting one of the most powerful guns.

16 Defendant had no criminal intent. He responded in self

   defense to being repeatedly shot, using minimal force

18 to defend his life from Tad Pulforak's unwarranted

   assault and battery with a semi-automatic firearm.

20 10.) It should be noted that defendant was in intensive care

   receiving hourly doses of morphine, after being pulled

22 off of the respirator shortly before, and he was unable to

   move even enough to push the 'call button'. Counsel

24 promised to suppress the interview. The defendant

   was over borne and denied the recording. It is only

26 hearsay as to what was said, with no way to verify.

   OBJECTION TO REPORT - U.S.v. Cole- Page 23 of 36

11.) I was heavily sedated. I told them I did not have a
2   clear memory of what happened. They just kept on and
on, interogating me and twisting what I said. Since that
4   time, I have repeatedly asked for a copy of the audio
recording, but have been denied a copy. I am told this
6   and that were said, but was severely impaired by drugs
post tramatic shock, being unable to move, and having
8   two people grilling me and badgering me. I do not
clearly remember the interview. It is unfair to put too much
10  reliance on the ICU unit interigation as I stated I could
not clearly remember, and was receiving hourly doses of morphine.
12  The testimony should have been suppressed, and counsel
demonstrated his ineffectiveness by failing or refusing to
14  even attempt to supress it and failing or refusing to
obtain a copy of the audio recording. The hearsay
16  of Stefan Montilius should have also been suppressed,
or at a mininimum, the other two witnesses who heard
18  what was said and interperated it correctly should
have also been called to testify about it. I believe
20  I said that they "drew down on me", meaning drew their
guns and fired at me. The bullet strike in the
22  roadway, point #37 in the MAIT Diagram, and the vertical
wound from my belly button exiting my left inner
24  thigh are from Tad Pultorak shooting me at point
blank range before he backed away. There has been
26  steadfast refusal to do a gun powder residue test.
OBJECTION TO REPORT - U.S. v. Cole - Page 24 of 36

11.) (cont.) The prosecution and counsel J. Toney have concealed the report of defendant's pickup being towed, which reveals the existence of a witness, David Brett Tutor, who advised N.C.S.O. that he had heard the gunshots from a very close distance away. This is very significant, as David Tutor can state with certainty which sound he heard first, and a 40 caliper sounds completely different from a 44. This witness could establish that Tad Pultorak shot first. J. Toney and the prosecution have steadfestly refused to have a gunpowder residue test done on defendant's clothing. Tad Pultorak's gun barrel was about 2 feet from the defendant when he fired the first shot. Similarly, J. Toney refused to ask the questions of Seargeant Day that would have established that Tad Pultorak's testimony is a perjury: He gut-shot the defendant at point blank range to initiate the incident, and then perjured himself.

12.) I did not remember clearly when I was in the ICU unit of the hospital sedated on morphine, and so stated to the detectives during the interview. The reason that I "just freaked" is because Tad Pultorak had just gut shot me. What I did remember in the ICU unit was the fear and freaking out when he shot me. I could remember how despirately I wanted him away from me, but did not clearly recall what had happened, perhaps due to trauma and sedation.

OBJECTION TO REPORT - U.S. v. Cole - Page 25 of 36

12.) Defendant asserts that he was in fear and shock.
Logic was gone. He was severely injured and desperate
to make the shooting stop. To make them back away
so that it would be harder to shoot him. The
whole incident lasted about 10 seconds from the time
they drew their guns until they had fired 17 shots
at him and shot him five (5) times. There was no
criminal intent. There was self defense reaction to them
drawing guns on me and repeatedly shooting me in
an attempt to defend myself. My lack of desire
to inflict injury is evident by the fact I was hitting
the ground at officer Hardin's feet.

13.) Both wounds inflicted were in fact flesh wounds.
Neither required stitches or surgery. Neither caused any
serious bodily injury or disfigurement. The wound on
the calf of officer Hardins leg was not a large wound.
There was not serious bodily injury inflicted on either one.

14.) I deny that I committed a crime. There was no mens
rea. Officers had no warrant and no probable cause to
arrest me. They were not engaged in the lawful perform-
ance of duties. They were taking my property and
searching through Michael Radon's property without a
warrant. They did not inform me of their intent to
arrest me. Tad Pultorak assaulted me and battered me.
OBJECTION TO REPORT - U.S. v. Cole - Page 26 of 36

14.) (cont.) This prosecution was instituted on January 26, 2014
by the lead detective, Rusty Greene, who headed the
investigation. He and Josh Stanis assaulted and en-
trapped me, charging me under a 'Bill of Attainder' for
having exercised my right to keep and bear arms. I was
incarcerated, my property seized, and was falsely charged
with a "crime"; I attempted lawfully to defend the
rights of the people. On June 5, 2014 I filed a
formal written "ANSWER WITH BILL OF EXCEPTIONS
And Affidavit In Support." in Superior Court of Calif-
ornia County of Nevada in case number M14-000388.
The pleading was ordered to be part of the court file,
and District Attorney Jessie Wilson was ordered to
respond. The pleading was removed from the
court file of the Superior Court. Tad Paltorak came
looking to institute a provocation to seize my
conform copy of the pleading and to silence me.
My conform copies were in fact siezed with all of my personal
papers, court documents, occupational licenses and
certifications, without a warrant or just cause. Then
on July 10, 2014 warrant no. 3692 was issued ex-post-facto
and used as a pretext to seize all evidence of violations
perpetrated by State Officers and all copies of the
pleadings which had been removed from the court files.
These things were done at the behest of Rusty Greene
in violation of 18 U.S.C. § 1512 in obstruction of justice.
OBJECTION TO REPORT — U.S. v Cole — Page 27 of 36

15.) Defendant asserts that he is in fact the victim
of unlawful actions perpetrated by Tod Pultorak and
Brant Hardin acting outside of their lawful authority
in violation of the laws of the United States and the
Oath of office by which they are required to be bound.
Tod Pultorak unlawfully seized property belonging to the
defendant and assaulted him on the morning of June 14, 2014.
Defendant complied with his demands not to bring his truck
back onto Come Along Road and returned to find Pultorak
and Brant Hardin committing the crime of theft of his
personal property. Upon approaching them and pleading
with them to leave his personal property alone. Tod Pultorak
assaulted him first with handcuffs, and then both
officers assaulted him with semi-automatic firearms
and began inflicting great bodily harm upon him.
Defendant attempted to defend himself using minimal
force under the circumstances, and was critically
injured and maimed for life by the violent assault
and battery instituted by Tod Pultorak to prevent the
defendant from attending an official court proceeding
and to conceal documents and evidence. Crimes under
title 18 U.S.C. §§ 1512(a)(1) and (a)(2)(A) and (C), 2071,
241, 242, and 111(a) and (b).
     A vindictive prosecution was instituted against the
defendant in this instant case and by sustained violation
of due process, abuse of process, and prosecutorial misconduct.

OBJECTION TO REPORT - U.S. v. Cole - Page 28 of 36

17.) Defendant denies that he was untruthful under oath, and asserts that it was the officers who were not truthful on the stand. Defendant had been told not to bring his truck back by ranger Pultorak, and he did comply with that demand. Defendant has not been given a fair opportunity to present his evidence of the perjury of Tad Paltorak and the change in Brant Hardin's testimony at trial from his previous statements, which may also constitute perjury. Further, the deceptions of the prosecution in pursuing this prosecution are reprehensible and unlawful. I light of this untrue allegation defendant moves this court to hold an evidenciary hearing so that the defendant may refute this false allegation against him and show the deceptions of the prosecution and its witnesses. Defendant calls for a gunpowder residue test to be performed on his clothing and Sergeant Day or a competent balistics expert to examine the evidence of the bullet holes in the defendant's clothing, the bullet strike labeled #37 in the MAIT Diagram and to compell David Brett Tudor as a witness, who's information was given by Incident Report #1 of NCSO case no. 1140 1626 and has been concealed from the defendant by both the prosecution and defense counsel J. Toney.

OBJECTION TO REPORT - U.S. v. Cole - Page 29 of 36

18.) This allegation misconstrues what I said. It is an attempt, to malign me by distorting what was said, I deny that I said I "was routinely chased by 500-pound black bears" in Alaska. I did not shoot until after I had been shot at point blank range by Tad Paltorak. The verasity of my statement that it is the intent of the prosecution team to hold me in jail for the rest of my life is shown by the recomendation made in the pre-sentence-investigation report, and by the misrepresentation of my statements.

22.) The addition of 5 levels here is in error.

23.) The defendant denies that the BLM officer sustained serious bodily injury and denies that he sustained any permanent bodily injury or any disfigurement. The claim that he did shows the bias of the pre-sentence investigation. The addition of five levels in "22." is based on the false assertion that serious bodily injury was inflicted. 10 levels is erroneously added.

24.) The addition of two levels is unwarranted here "because the conviction was under §111.

27.) There was no obstruction of justice perpetrated by the defendant. The addition of 2 levels is unwarranted. The claim that defendant "lied on the stand" is unsubstantiated.

28.) The adjusted offense level should be less than 18.

OBJECTION TO REPORT - U.S. v. Cole - Page 30 of 36

30.) Five levels should only be added if there was serious bodily injury.

31.) The CHP officer was not "shot in his leg". A bullet grazed his calf area causing a laceration. There should be no additional level added as the level is added in 30 and should not be seperate.

32.) There should not be any added levels due to § 111 (b).

35.) Defendant denies that he lied or obstructed justice and asserts that officers are the ones that were not truthful. There should be no added levels here.

36.) The adjusted offense level should be less than 16 because there were mitigating factors, which if any thing, should result in a downward deviation.

40.) The greater of the adjusted Offense levels should be 18 or less due to downward adjustments for mitigating facts.

41.) There should be no increase in offense level.

42.) The combined offense level should be 18 or less.

45.) Total offense level should be 18 or less.

62.) I worked in Kentucky for a few month and moved to North Dakota. I attended my father's funeral in Idaho Falls, Idaho.

OBJECTION TO REPORT - U.S. v. Cole - Page 31 of 36

68.) I moved to Alaska in 1985. In 1990 I was injured in an automobile accident, and began attending college at the Mat-Su campus of the University of Alaska Anchorage. I attained my associates in BCIS in 1993 and continued to attend working towards a Management Information Systems bachelors degree until 1995, but could not afford to finish the last few classes. I went back to work doing construction and land development. I founded a development corporation which was bankrupted by the State of Alaska's wetland frauds.

69.) I worked for G.H. Hart Excavating and Paving and Chemical Express until 1977. I went to work as a burr hand for Camco Inc, for $8.65/hr and worked my way up to machinist, NC/CNC Programmer, and then as machine shop supervisor. I was making $18,65/hr when I left Houston to move to Alaska.

70.) I drove for several local businesses including Goenzel Builders and Carlyle Enterprises, I ran low boy for United Rentals and Central Environmental, I did construction for Goenzel Builders including the Anchorage Sewer Treatment Facility and houses for Adams Construction, I hauled gasoline for Diversified Petroleum, and I worked as a machinist for West Gold in Nome, I did both wire line and E-line at Prudhoe Bay for Camco Inc, for a year.

71.) I would have had an income except for California prosecutions.

OBJECTION TO REPORT - U.S. v. Cole - Page 32 of 36

71.) (cont.) On January 26, 2014 Detective Rusty Greene and Josh Stanis assaulted me and instituted a vindictive prosecution against me for exercising my right to keep and bear arms. A shooter with an AK-47 was shooting up campsites and I had black bears coming through my camp on almost a daily basis, so I had loaded pistols in my pickup. I went to N. San Juan to get gas and a few supplies. I parked in a private parking lot to call to line up some work when N.C.S.O, entrapped me with 'Bills of Attainder' used by N.C.S.O, for racketeering. On February 19, 2014 I attempted to institute criminal charges against Detective Greene and Stanis for violation of oath. Detective Greene was immediately called by Tad Pultorak to head the investigation of this case. Greene immediately had N.C.S.O, search the county for my property and seized it immediately without warrant upon locating it, including my court papers and private documents. Greene informed me in the Nevada County Jail of N.C.S.O.'s intent to deprive me of all of my private papers and property to maximize injury upon me.

72.) The land was fraudulently purported to be "19 ten acre home sites" which I intended to subdivide. Upon realizing that there were hundreds of springs on the property, I had the Army Corps. of Engineers do an official wetlands determination. It was classified "National Wetlands Inventory", but the State of Alaska refused to discontinue taxes on it.

OBJECTION TO REPORT - U.S. v. Cole - Page 33 of 36

73.) I stated that I did not recall when I last filed taxes. I
2  should have filed last year and the previous year, as I would
   have received a refund, but I was not required to file.
4  That has been the case for several years. Had I not been
   prevented from working by the unlawful prosecution that
6  M.C.S.O. instituted last January, I would be gainfully
   employed and paying taxes; and would not have been
8  forced to live like a refugee to attend court; and
   I would not have been on BLM land. It was the State
10 of California legislating unlawful acts and the M.C.S.O.
   employees violating the Fourth Amendment and their
12 required Oath which initiated this prosecution. I
   am the victim of routine violations of the laws of
14 the United States by public officials of the State
   of California, and a vindetta against me for having
16 attempted to lawfully enforce my rights.

18 77.) The guideline needs to be adjusted to offense level 18
   or less.
20                    CONCLUSION
   The pre-sentence investigation presumes the claims of
22 the prosecution are true, and defendant has shown they
   are not. The trial was fundamentally unfair and the
24 substantial Constitutional rights of the defendant were
   violated. Counsel was ineffective. Defendant is seeking
26 dismissal for lack of jurisdiction or a new trial.

   OBJECTION TO REPORT - U.S. v. Cole - Page 34 of 36

The claim that defendant stated he shot first is hearsay refuted by

2   two witnesses: Kyle Rutherford and Ricky Hurtado. See Appendix 1.

The affidavit of standing, Appendix 2, stands unrefuted, and was

4   removed from the court file in case no. M14-000388; establishing

both the motive for the assault Ted Pultorak perpetrated against

6   the defendant, and that defendant is a federal officer who was

performing his official duties. The seizure of items in the

8   Evidence entry #120 evinces that the purpose of the assault

was to conceal and destroy items intended for use in court

10  proceedings in violation of 18 USC, §.1512. See "MOTION TO

ENJOIN DISPOSAL OF EVIDENCE AND RETURN PROPERTY" filed

12  May 31, 2015 in this case. Appendix 3 shows three exit

wounds that are horizontal and one vertical exit wound on

14  the defendant. This with the bullet strike in the roadway

where the defendant was standing evinces that Ted Pultorak's

16  testimony is perjury, when the horizontal wounds on the

officers is considered. See Appendices 7-9.

18   Appendix 4 evinces that the June 5, 2014 "ANSWER WITH BILL

OF EXCEPTIONS,.," was removed from the court file.

20  Appendices 5 and 6 evince defendant's occupational license and

that Pultorak perjured himself claiming defendant had no

22  insurance and was "just a transient". J. Toney concealed these facts.

Appendix 10 was withheld from the defendant until June 4, 2015

24  and was the first paper filed in the case against the defendant:

This was concealed by J. Toney, counsel imposed upon defendant,

26  to conceal the existence of a witness that would establish perjury.

OBJECTION TO REPORT - U.S. v. Cole - Page 35 of 36

There exists no evidence that defendant has any substance
2 abuse problems. It has not been alleged that drugs or
alchohol were involved in any way. Therefore the
4 recomendation that defendant be required to submit
to and pay for drug and alchohol screening and abuse
6 programs is an unwarranted imposition.
     The sustained denial of due process and subjugation to
8 cruel and unusual punishments, denial of medically necessary
treatments, violation of 18 U.S.C. § 3161 (B), violation of
10 F.R. Cim. P. Rules 3, 4, 4(c)(3)(A), use of the grand jury
to circumvent a judicial officer determining probable cause,
12 suppression of evidence, concealment of witnesses, and the
ineffective assistance of counsel have so vitiated
14 the verdict and jurisdiction of this Court over the person
of the defendant as to warrant acquittal.
16   WHEREFORE: Defendant moves this court to:
   1.) Acquit the defendant on all charges or set the verdict aside;
18 2.) Order the pre-sentence report corrected and evidenciary hearing.
          VERIFICATION
20 I hereby certify under penalty of perjury that I have read the
fore going, the facts presented are of my own personal knowledge
22 where it is not otherwise supported by citations to record,
exhibits, or other documents, and that it is the truth and
24 nothing but the truth to the best of my knowledge. So help me God.
   Executed June 8, 2015    Brent D. Cole/x-635066
26 at Sacramento, California 95814   Brent D. Cole, defendant
   OBJECTION TO REPORT - U.S. v. Cole - Page 36 of 36

| INCIDENT REPORT | NEVADA COUNTY SHERIFFS OFFICE | CASE NUMBER 11401626 | SUP NO 19 |
|---|---|---|---|

did not see the suspect talk to anyone else while he was at the LZ. One last thing that Rutherford wanted to add ⸱s that the suspect had told him that he shot the officers with a 44.

End of Statement

**Interview with Ricky Hurtado**

**Time:** 1213 hours

**Date:** July 11, 2014

**Location:** ▓▓▓▓▓▓▓▓▓▓ Grass Valley, CA 95945

Page 1 of 1
APPENDIX 1

     Hurtado said that he and his partner, Kyle Rutherford, were staged for a suicidal subject in North San Juan and once they were cleared, they were sent to the shooting incident. They followed a North San Juan Fire Unit to the scene. Hurtado said when they arrived they saw the first ambulance coming up the hill, and there was confusion as to how many more patients there were. He said that after talking to the first ambulance crew, they then talked to the officers on scene and determined that there was one more patient that needed treatment.

✳     Hurtado said that once they got to the scene, they got IVs ready in preparation for receiving the next patient. Hurtado said they waited until the suspect was brought down to them. He remembers seeing Battalion ⌒ ief Jim Turner walking with the suspect as he was being transported to the ambulance. Hurtado said they put ʟ̣ₙ on a backboard and in his opinion the suspect did not look good; he appeared altered. He said they had to ✳ yell at him to get a response, at which time he would open his eyes and answer them back. Hurtado said he saw several possible wounds that were bandaged, but did not view the wounds since they did not do any kind of wound dressing.

✳     Hurtado said while they were in route to the LZ he could not hear very well, but was picking up bits and pieces of a conversation occurring in the back of the ambulance between his partner and the suspect. Hurtado said he heard the suspect say that they drew on him, so he shot back in self-defense. Hurtado said he heard the ✳ medical crew say that you're not supposed to shoot at cops and he heard the suspect say something to the effect of yeah, I guess so.

     Hurtado said as they were heading to the LZ, the suspect appeared more awake and appeared to be getting slightly better than when they first loaded him onto the ambulance. Hurtado said when they arrived at the scene, he heard what he believed was a Cal Fire fireman say there was 500 CC's of blood on the ground at the scene. He did not know how the firefighter had received that information. Later he overheard the same firefighter talking to someone else, saying that the BLM ranger had approached the suspect, when the suspect pulled a gun out and shot the officers. Hurtado said one of the CHP officers from the helicopter got a report from his partner, then the suspect was put on a gurney, and he was taken to the helicopter.

End of Statement

COLE_00451

In The Superior Court For The State Of California In And For The County Of Nevada
RE: State of California -vs- Brent Douglas Cole   Case Number M-14-0000388

### Affidavit of Brent Douglas Cole, June 4, 2014

At the Arraignment proceeding on January 28, 2014, I clearly asserted my standing, and Linda J Sloven, without any input from the prosecutor, denied my assertions and entered a plea without any inspection of the questions required to be answered in the affirmative for arraignment to have occurred.

On February 19, 2014, I filed a cross complaint with the court stating my standing in writing, citing 18 U.S.C. Sections 6 and 1961(10), and etc. On this date Candice S. Heidelberger ruled that this was a criminal case and that no civil filing submitted by the accused would be considered by the court. This case was instituted by a civil form; that is, an information. This court's objection to the form of motions filed by the accused i apprehend is because my lawful standing is not acknowledged.

In federal case A01-0108CV(JKS) in the district of Alaska I filed suit against the state of Alaska for wetlands fraud and racketeering using this statutory authority. I was ordered to remove the caption to which this court specifically objected to in the motions I submitted; specifically, "In The Name Of The People Of The United States Of America". I could not in good conscience comply:
On July 11, 2001 I filed an amended complaint which stated the reasons, statutes, and court decision upon which I relied for my lack of compliance with the Order of the court, and stating my standing. Judge Singleton conceeded the point. I proceeded using this authority until that case was closed, and have so proceeded since both in both federal and state courts.

My standing is as a statutory Attorney General of the United States arising under 18 U.S.C. Section 1961(10) and the Supreme Court Decision in Rotella v Wood. Under 18 U.S.C. Section 6, I am an agency of the United States. I lawfully entered into said Office. I am in compliance with the requirements of law for occupying said Office. I have faithfully exercised the duties of said office, and my authority has not been revoked. I last proceeded claiming this authority in the United States Court Of Appeals For The Ninth Circuit in City of Anchorage v Cole in 2007, case number 07-35630.

The refusal to recognize this authority serves to obstruct justice and deny equal protections to the People. I have been bombed, and attempts have been made to murder me for having exercised said authority. I am entitled to statutory protections and the emoluments of the office. I receive no compensation, and the authority is not tenured.

*I hereby certify, of my own free will, under penalties of perjury, that I am competent and willing to testify, that I have read this instrument, that I have personal knowledge of facts presented herein, that I know the contents thereof, and that, to the best of my knowledge and belief, it is true, correct, and not misleading; the truth, and nothing but the truth. So help me God.*

*Brent D. Cole*

*Supervaccuum esset leges condere, nisi esset qui leges tuerentur.*

Brent Douglas Cole

Statutory Attorney General of the United States          Executed this 4th day of May, 2014.
206 90th Avenue NE, Bismarck, ND  58503                    At Nevada City, California

Appendix 1 of ANSWER
Case No. M14-0388

*Page 1 of 3*
*Appendix 3*

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
# EMERGENCY MEDICAL REPORT (EMT-P, EMT-1, EMR)
CHP 330 (Rev. 4-10) OPI 091

Page __1__ of __3__

| LOG CODE | RESIDENT POST/AIR OPS | MISCELLANEOUS | CASE / A.I. NUMBER | INCIDENT TIME | RESP. TIME | ARRIVAL TIME (L2) | TRANS. TIME | FACILITY TIME | DATE | ☐ Off-duty Incident |
|---|---|---|---|---|---|---|---|---|---|---|
| 216 | VDAO | Nevada Co. | 14-165-S-1 | 14:50 | 15:00 | 16:10 | 16:30 | 16:53 | 06/14/2014 | |

| INCIDENT LOCATION | | | |
|---|---|---|---|
| 39.33583 -120.97528, Nevada Co. | ☐ TC | ☐ Off-highway accident | ☑ Other: Officer Involved Shooting |

| NAME | WEIGHT | SEX | DATE OF BIRTH / Age |
|---|---|---|---|
| unknown | 70kg | ☑ Male  ☐ Female | |

| ADDRESS | TELEPHONE NUMBER |
|---|---|
| | |

## PATIENT ASSESSMENT

| CHIEF COMPLAINT / MECHANISM OF INJURY | TIME OF PATIENT CONTACT |
|---|---|
| COP to left arm and groin/GSWx2 to groin area and GSWx1 to left upper arm | 16:30 |

| LEVEL OF CONSCIOUSNESS | PUPIL | L | R | SKIN | | RESPIRATIONS | | CIRCULATION | | |
|---|---|---|---|---|---|---|---|---|---|---|

**LEVEL OF CONSCIOUSNESS**
- ☑ Conscious
- ☐ Unconscious
- ☑ Alert
- ☐ Disoriented
- ☐ Unresponsive

**PUPIL**  L  R
- Normal  ☑  ☑
- Dilated  ☐  ☐
- Constricted  ☐  ☐
- Fixed  ☐  ☐

**SKIN**
COLOR:
- ☐ Normal
- ☑ Pale
- ☐ Cyanotic
- ☐ Flushed
- ☐ Jaundiced

TEMPERATURE:
- ☐ Hot
- ☐ Warm
- ☑ Cool
- ☐ Dry
- ☑ Moist

**RESPIRATIONS**
RATE:
- ☑ Normal
- ☐ Rapid
- ☐ Slow
- ☐ Absent

RHYTHM:
- ☑ Regular
- ☐ Irregular

DEPTH:
- ☐ Normal
- ☐ Deep
- ☑ Shallow

**CIRCULATION**
RATE:
- ☑ Normal
- ☐ Rapid
- ☐ Slow
- ☐ Absent

RHYTHM:
- ☑ Normal
- ☐ Irregular

STRENGTH:
- ☑ Strong
- ☐ Weak

CAPILLARY REFILL:
- ☑ Normal
- ☐ Delayed

| 1. TIME | BLOOD PRESSURE | PULSE | RESP. | GCS | 2. TIME | BLOOD PRESSURE | PULSE | RESP. | GCS |
|---|---|---|---|---|---|---|---|---|---|
| 16:33 | 120 /72 | 96 | 18 | 15 | 16:43 | 128 /72 | 97 | 18 | 15 |
| 3. TIME | BLOOD PRESSURE | PULSE | RESP. | GCS | 4. TIME | BLOOD PRESSURE | PULSE | RESP. | GCS |
| 16:46 | 128 /72 | 90 | 16 | 15 | 16:53 | 100 /68 | 94 | 11 | 15 |

### OBSERVED CONDITION – INJURY



R – FRONT – L        L – BACK – R

- A — Abrasion
- B — Burn
- C — Contusion
- CF — Closed Fracture
- D — Deformity
- H — Hemorrhage
- I — Internal Injury
- L — Laceration
- OF — Open Fracture
- P — Pain
- PW — Puncture Wound
- S — Swelling
- X — Amputation
- O — Other (Explain)

### ASSESSMENT

| | WNL | ABN |
|---|---|---|
| Airway | ☑ | ☐ |
| Breathing | ☑ | ☐ |
| Circulation | ☑ | ☐ |
| C-Spine | ☑ | ☐ |
| Chest | ☑ | ☐ |
| Abdomen | ☑ | ☐ |
| Head | ☑ | ☐ |
| Face | ☑ | ☐ |
| Back | ☑ | ☐ |
| Pelvis | ☐ | ☑ |
| Extremities | ☐ | ☑ |

If abnormal, explain in narrative.

### EMERGENCY CARE ADMINISTERED
- ☐ Assessment Only
- ☐ Airway Cleared
- ☐ Airway Inserted (OPA)
- ☐ Suctioning
- ☐ Assist Ventilations
- ☐ CPR  ☐ Pocket Mask
- ☑ Oxygen at 15 Liters/min.  ☐ Cannula
- ☑ Bleeding Control  ☑ Mask
- ☑ C-Collar Applied
- ☐ Occlusive Dressing  ☐ Assist Childbirth
- ☑ Treat for Shock  ☑ Spinal Immobilization
- ☐ Traction Splint  ☑ Other (Explain in narrative)
- ☐ Other Splinting  ☐ Refused Aid (see page 2)
- ☑ Bandaging  ☑ ALS Care (see page 2)

### MEDICAL HISTORY
- ☐ Cardiac  ☐ Psychiatric
- ☐ Seizure  ☐ ETOH
- ☐ Diabetes  ☐ HTN
- ☐ CVA  ☐ Asthma/COPD

Medication: none
Allergies: none  ☑ NKDA

### AED APPLICATION
Operator ID Number: _____
AED ID Number: _____
Number of Shocks Administered: _____
CPR prior to arrival: ☐ YES  ☐ NO
Witnessed cardiac arrest: ☐ YES  ☐ NO

(Attach hardcopy printout of event)

### INCIDENT HISTORY

| EXTRICATION REQUIRED | DNR | ROUGH TERRAIN RESCUE EQUIPMENT USED | SEAT BELT/CHILD SAFETY SEAT | HELMET | AIRBAGS | EST. SPEED | COMPARTMENT INTRUSION |
|---|---|---|---|---|---|---|---|
| ☐ YES ☑ NO | ☐ YES ☑ NO | ☐ YES ☑ NO | ☐ S ☐ L ☑ No ☐ Unk. | ☐ YES ☑ NO | ☐ YES ☑ NO | n/a | ☐ YES ☑ NO |

NARRATIVE
See page 3.

☑ Continued on Attached

| CONDITION | TRANSPORTED TO | BY | TIME |
|---|---|---|---|
| ☒ Urgent  ☐ Non-Urgent | Sutter Roseville MC | H-20 | 1630 |

| NAME AND I.D. NUMBER | PARTNER NAME AND I.D. NUMBER | REVIEWED BY | RANK |
|---|---|---|---|
| CHLOUT 16734 P29039 | EMERY 12875 | | |

*Shaded areas are minimum required entries.        Destroy Previous Editions        chp330_0614.pdf

Appendix 4

COUNTY OF NEVADA
STATE OF CALIFORNIA

**OFFICE OF THE PUBLIC DEFENDER**

224 MAIN STREET, NEVADA CITY, CALIFORNIA 95959
PHONE: (530) 265-1400    FAX: (530) 478-5626

**DEPUTIES:**

DONALD E. LOWN, JR.                                    DAVID W. HUMPHREYS
**PUBLIC DEFENDER**                                    JODY L. SCHUTZ
S.B. #119189                                          TAMARA ZUROMSKIS
                                                      COURTNEY ABRIL
                                                      KERI KLEIN
                                                      MICAH PIERCE
                                                      GINA LE

---

## *MEMORANDUM*

---

| | |
|---|---|
| **TO:** | **BRENT COLE, WBCF** |
| **FROM:** | JODY SCHUTZ, DEPUTY PUBLIC DEFENDER |
| **SUBJECT:** | **OUT OF THE OFFICE/QUESTIONS** |
| **DATE:** | AUGUST 14, 2014 |

---

I am writing to let you know that I will be out of the office from Friday, August 15, 2014 – Monday, August 25, 2014, returning to the office on Tuesday, August 26, 2014.

In response to your question about the "Answer with Bill of Exceptions and Affidavit in Support." I had my secretary go the Courthouse and review all pleadings in your misdemeanor case, the above-reference document was not filed. I then contacted the District Attorney's Office and they had received the filing in that case. I am enclosing a copy of the document.

Mr. Beresford and I did go to the crime scene on Friday, August 8, 2014; no additional evidence was recovered at that time. We are waiting on the MAIT diagram, photographs and videos before proceeding further on that issue. I will discuss this issue with you further upon my return.

In my absence, my secretary will continue to process any in-coming discovery, and follow-up on our records requests. She will copy and forward these to you as they come in.

COLE 00283

AMERICAN INS INC
38 FIRST ST W
DICKINSON, ND 58601

*PROGRESSIVE*®
DRIVE®/Insurance

733569 19725 1 AB 0.406 PMIDS01D 079 019725

Brent Cole

**Policy Number: 10542465**

Underwritten by:
Progressive Northwestern Ins Co
Date of Mailing: July 17, 2014
Policy Period: Feb 19, 2014 - Aug 19, 2014
Page 1 of 1

BRENT COLE
206 90TH AVE NE
BISMARCK, ND 58503

**AMERICAN INS INC**
**1-701-483-9104**

**Online Service**
**progressiveagent.com**

**Customer Service**
**1-800-876-5581**

# Final Bill

Please note that you no longer have insurance with us, effective July 4, 2014.

Your policy was canceled at your request. Please see your payment summary below for more information.

If you've scheduled a payment, we've canceled it; please pay the amount due (if any).

If you have questions about your cancellation, or would like to learn how to keep this policy or purchase a new one, please call your Agent.

| | |
|---|---|
| Policy premium for coverage until July 4, 2014 | $206.63 |
| Total | $206.63 |
| Total amount paid | 277.00 |
| Total refund amount | $70.37 |

Appendix 6  P. 1 of 1

Form 6269 (07/08)



COLE_01536

GOVERNMENT
EXHIBIT
6
2:14-CR-00269 GEB



APPENDIX 8
Page 1 of 1

GOVERNMENT
EXHIBIT
6 D
2:14-CR-00269 GEB

COLE_01874

COLE 00872



# NEVADA COUNTY
# SHERIFFS OFFICE

950 MAIDU AV
NEVADA CITY, CA 95959
(530) 265-1471

## SUPPLEMENTAL INCIDENT REPORT

| | |
|---|---|
| CASE NUMBER | SUPPLEMENT NUMBER |
| 11401626 | 1 |
| CASE TYPE | CAD EVENT NUMBER |
| ASSAULT - A | |
| REPORTING OFFICER | SUPPLEMENT DATE |
| 3684 - MACKEY. JASON | 06/14/2014 |

## INCIDENT

LOCATION
NORTH BLOOMFIELD ROAD. NEVADA CITY, CA 95959 NEVADA
PREMISE NAME
NORTH BLOOMFIELD ROAD

DATE 06/14/2014    TIME 19:57

| DISTRICT | BEAT | JURISDICTION |
|---|---|---|
| | | NCSO |

## STATUS

| WORK FLOW STATUS | APPROVAL | APPROVAL DATE |
|---|---|---|
| COMPLETE | | |

---

**5**  INVOLVEMENT
OT

NAME: LAST, FIRST, MIDDLE
**TUTER. DAVID BRETT**

HOME ADDRESS                CITY, STATE, ZIPCODE          MAILING ADDRESS
                            NEVADA CITY. CA 95959

EMPLOYER                                                                      OCCUPATION
**FAR OUT FARMS**                                                             **FARMER**
                            CELL PHONE

| | SEX | ETH | | | POB | RES | GANG IDENTIFICATION | |
|---|---|---|---|---|---|---|---|---|
| 45 | M | W | N  506 | 160 | BRO | BRO SC | US | ID |

DL NUMBER          DL ST          STATE ID
                   CA                          9
COMMENT

---

**6**  INVOLVEMENT
OT

CITY, STATE, ZIPCODE
NEVADA CITY. CA 95959

CITY, STATE, ZIPCODE          OCCUPATION

HOME PHONE

| | | ETH | HEIGHT | | HAIR | | |
|---|---|---|---|---|---|---|---|
| 01/08/1959 | 55 | F | W | N | 504 | 145 | GRY | BLU |

SSN          FBI ID          LOCAL

---

| ENTRY NO | INVOLVEMENT | | | COLOR | EVIDENCE |
|---|---|---|---|---|---|
| 1 | **EVIDENCE** | | | WHI | N |

LICENSE NUMBER          YEAR     VIN                                          S
**JDZ508**              2015     1B7FL26X6NS588329
COMMENT
DODGE DAKOTA WITH WHITE CAMPER SHELL AND FADED, PEEPING PAINT ON THE BED.

**ADDITIONAL INFORMATION**

☑ HOLD FOR LATENTS          ☐ USED IN OFFENSE          ☑ TOWED

APPENDIX 10
Page 1 of 3

**PROPERTY**

| ENTRY NO | INVOLVEMENT | TYPE 03 | MAKE DODGE | | | | MODEL | |
|---|---|---|---|---|---|---|---|---|
| | SERIAL NUMBER JDZ 508 | | QUANTITY 1 | BLU | WHI | NORTH DAKOTA | E-200 | |
| | DESCRIPTION (E-200) 1992 DODGE DAKOTA | | | | | | CUSTODY | |

COMMENT
1992 DODGE DAKOTA PICKUP WITH WHITE CAMPER SHELL. VEHICLE TOWED BY CELESTIAL VALLEY TO THE PROPERTY UNIT UNDER 22655.5VC

ADDITIONAL INFORMATION

☑ EVIDENCE                    FOUND·

**MEDIA LIST REPORT**

| TITLE | DATE 06/14/2014 09:51 | CONTEXT 5 - OT - TUTER, DAVID BRETT |
|---|---|---|

COMMENTS

APPENDIX 10
Page 3 of 3

06-14-2014/1456 hours

**Location**

North Bloomfield Graniteville Road
Nevada City, Ca. 95959

**VEHICLE**

Patrol Unit 12

## SUMMARY

I was responding to a report of a Bureau of Land Management Ranger who had been shot with suspects at large.

I arrived near the scene on North Bloomfield Road and was advised to standby on the roadway and (BOLO) be on the look out for a blue Dodge Dakota with North Dakota license plates. I arrived in the area at approximately 1550 hours and began checking the vehicles in the area for a match. At approximately 1628 hours, dispatch advised California State Parks personnel were close to my location and were out with the vehicle and an occupant.

I arrived at 18805 North Bloomfield Road at approximately 1633 hours, and observed California State Parks detaining a male subject near a faded blue 90's Dodge Dakota. As I exited my patrol vehicle to assist they advised the subject had a misdemeanor warrant out of Butte County. I spoke to the male who identified himself as David Brett Tuter (███████████████). David advised he had heard gunshots, saw the helicopter and the large police presence and was concerned for his safety. David walked to the California State Parks Ranger at the Dodge Dakota and asked if he should be in the area due to the level of law enforcement presence.

David stated he did not know who the Dodge belonged to and he was just checking with California State Parks to find out if it was safe to be in the area. The California State Parks Ranger cited and released David for his warrant and I remained at the scene and secured the vehicle until I was advised by Sergeant Sullivan at ⸱ximately 1717 hours that the vehicle needed to be towed. At approximately 1815 hours Celestial Valley ⌐⸱wing arrived and took possession of the vehicle. While I waited for the vehicle I spoke to the neighbor, Darlene Louise Markey (███████████), and she stated she knew the owner of the vehicle and provided me

with her information should anyone need additional information.

I followed the tow truck to the Nevada County Sheriff's Office Property Unit, where the Dodge was placed in a secured parking area and held for processing at approximately 1929 hours. I placed evidence tape on each entry
point of the vehicle to ensure it was not tampered with until processing. The Dodge was booked as item E-200 for this report.

**ATTACHMENT:**
CHP 180

**CASE DISPOSITION**

**End of Report**

APPENDIX 10
Page 3 of 3