BENJAMIN B. WAGNER
United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:14-CR-269 GEB |
| Plaintiff, | UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION TO CORRECT PSR AND SENTENCING MEMORANDUM |
| v. | |
| BRENT DOUGLAS COLE, | Date: August 28, 2015 |
| Defendant. | Time: 9:00 a.m. |
| | Court: Honorable Garland E. Burrell, Jr. |

///
////
///
///
///
///
///
///
///
///
///

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .....................................................................................ii-iv

    I. INTRODUCTION ...........................................................................................1

    II. STATEMENT OF THE CASE AND PROCEDURAL HISTORY  ........................................1

    III. ARGUMENT  ......................................................................................2

        1.  AUnfair trial, untimely indictment and improper comments of the prosecutor
           (Defendant's Items 1 and 2 at 2-3)  .........................................................2

        2.  Alleged perjury commited by law enforcement officers, the scope of law
           enforcement actions, defendant's mens rea and concealment of Radon
           interview (Defendant's Items 3, 4, 5, 7, 8 and 14 at 4-6, 9-12, and 21). ...........................4

        3.  Constitutionally deficient reasonable doubt instruction
           (Defendant's item 6 at 7-8) ...........................................................7

        4.  Lack of serious bodily injury, biased court and audio recording
           (Defendant's item 9 at 13-14, item 15 at 22 and item 16 at 23) ...........................8

        5.  Ineffective assistance of counsel (Defendnat's items 10 and 11 at 15-16)  .................10

        6.  Dismissal of Counts Two and Three (Defendant's items 12 and 14 at 17-20) ................10

        7.  Advisory guidelines calculations (Defendant's items 17 at 24 and 18 at 25)  .................13

        8.  Unconstitutionality of 18 U.S.C. § 111(b) and multiple guideline enhancements
           (Defendant's items 19-21 at 26-29)………………………………………… 15

    IV. SENTENCING RECOMMENDATION.................................................................15

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

Blockburger v. United States

4

    284 U.S. 299 (1932) ........................................................................ 13

Hamling v. United States

5

    418 U.S. 87 (1974) ........................................................................ 12

6

Ladner v. United States

7

    358 U.S. 169 (1958) ........................................................................ 10, 11

8

Midland Asphalt Corp. v. United States

    489 U.S. 794 (1989) ........................................................................ 2

9

Obermeier v. Mortgage Co.

10

    111 Or. 14 (1924) ........................................................................ 15

11

Sullivan v. Louisiana

    508 U.S. 275 (1993) ........................................................................ 8

12

United States v. Acosta-Sierra

13

    690 F.3d 1111 (9th Cir. 2012) ........................................................................ 7

14

United States v. Anderson

    380 F. App'x 597 (9th Cir. 2010) ........................................................................ 8

15

United States v. Collins

16

    684 F.3d 873 (9th Cir 2012) ........................................................................ 3

17

United States v. Feola

18

    420 U.S. 671 (1975) ........................................................................ 6, 11

19

United States v. Freeman

    165 F. Supp. 121 (S.D. Ind. 1958) ........................................................................ 3

20

United States v. Haynes

21

    216 F.3d 789 (9th Cir. 2000) ........................................................................ 4

22

United States v. Hodges

23

    436 F.2d 676 (10th Cir.) ........................................................................ 11

United States v. Kazenbach

24

    824 F.2d 649 (8th Cir. 1987) ........................................................................ 11

25

United States v. Lowe

26

    860 F.2d 1370 (1988) ........................................................................ 13

United States v. Moore

27

    483 F.2d 1361 (9th Cir. 1973) ........................................................................ 6, 10

28

*///*

United States v. Moore
   997 F.2d 30 (5th Cir. 1993) .........................................................................8

United States v. Ruiz
   462 F.3d 1082 (9th Cir. 2006) .....................................................................8

United States v. Snider
   976 F.2d 1249 (9th Cir. 1992) .....................................................................8

United States v. Street
   66 F.3d 969 (8th Cir. 1995) .......................................................................11

United States v. Tauil-Hernandez
   88 F.3d 576 (8th Cir. 1996) .........................................................................4

United States v. Vandemark
   522 F.3d 1019 (9th Cir. 1975) .....................................................................4

United States v. Wesley
   798 F.2d 1155 (8th Cir. 1986) ...................................................................11

Victor v. Nebraska
   511 U.S. 1 (1994) .........................................................................................8

**Federal Statutes and Other**

18 U.S.C. § 111 (2012) ................................................................... 7, 13, 14

18 U.S.C. § 111(a)(1), (b) (2012) ......................................................... 1, 10

18 U.S.C. § 111(b) (2012) ......................................................................... 15

18 U.S.C. § 3161(b) (2012) ......................................................................... 2

18 U.S.C. § 3162 (2012) ............................................................................. 3

18 U.S.C. § 3553(a) (2012) ....................................................................... 15

18 U.S.C. § 3561(b) (2012) ....................................................................... 15

18 U.S.C. § 3583(a) (2012) ....................................................................... 14

18 U.S.C. § 6 (2012) ................................................................................. 15

18 U.S.C. § 922(g) (2012) ................................................................... 13, 14

18 U.S.C. § 924(c) (2012) ............................................................. 12, 13, 14

18 U.S.C. § 924(c)(1)(A)(iii) (2012) ................................................... 1, 12

18 U.S.C. § 924(e) (2012) ................................................................... 12, 13

18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(2012) ................................. 2, 10

18 U.S.C. § 1291 ......................................................................................... 2

28 U.S.C. § 176 (2012) ............................................................................. 12

28 U.S.C. § 2255 (2012) ........................................................................................ 10, 11

Fed. R. Crim. P. 12(b)(3)(A)(ii) ................................................................................ 4

Fed. R. Crim. P. 12(b)(3)(C) ................................................................................. 4, 6

Fed. R. Crim. P. 5.1(c) ............................................................................................. 4

USSG § 1B1.1 ......................................................................................................... 8

USSG § 2A2.2(b)(3)(E) ........................................................................................... 8

USSG § 3C1.1 .................................................................................................. 13, 14

# I.  INTRODUCTION

The United States submits this memorandum in support of a 355 month sentence which is contained in the amended Presentence Investigation Report (PSR) filed on July 24, 2015 and in response to defendant's motion to correct PSR. (ECF 134)  A copy of the amended PSR was served upon the defendant on July 24, 2015 by the probation officer.

## II. STATEMENT OF THE CASE AND PROCEDURAL HISTORY

This court heard the trial of this case and is familiar with the relevant facts. The PSR accurately recites the facts presented by the United States during trial and accepted by the jury in their multiple guilty verdicts notwithstanding defendant's affidavit to the contrary attached to his PSR correction motion.  To that end, the United States will not repeat the facts contained within the PSR in this memorandum.

The defendant was originally charged in Nevada County Superior Court for the June 14, 2014, shooting with two counts of Attempted Murder and two counts of Assault with a Deadly Weapon Likely to Produce Great Bodily Injury (Case Number F14-000267).

On September 18, 2014, the defendant was charged in the Eastern District of California by criminal complaint with multiple crimes related to the June 14, 2014, shooting. At that time, the state charges related to Case Number F14-000267 were dismissed.

On October 2, 2014, the defendant was indicted for Assault on a Federal Officer with a Deadly Weapon Which Inflicts Bodily Injury, in violation of 18 U.S.C. §111(a)(1) and (b) (Count One); Assault on a Person Assisting a Federal Officer with a Deadly Weapon which Inflicts Bodily Injury, in violation of 18 U.S.C. §111(a)(1) and (b) (Count Two); and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) and 924(c)(1)(A)(iii) (Count 3).

On February 3, 2015, the jury trial began. Three days of witness testimony followed, including testimony from the defendant and three defense witnesses. On February 11, 2015, the jury convicted the defendant of all three charges in the indictment.  In the intervening months since the jury's verdict, the court allowed defendant to represent himself and appointed defendant's trial counsel J. Toney as stand-by counsel.  This court later relieved Mr. Toney as stand-by counsel and defendant now represents

1

himself. Sentencing is currently scheduled for August 28, 2015.[1]

On July 29, 2015, defendant filed a 73 page document entitled "Motion for Correction of Pre-Sentence Report with Affidavit in Support." (ECF 134). Defendant asserts 21 issues, attempting to re-litigate the trial with his own revisionist version of the facts, repeated allegations of ineffective assistance of counsel, prosecutorial misconduct, concealment of evidence, and perjury by government witnesses.[2] Defendant raised largely the same issues in his untimely "Motion for Arrest in Judgment" (ECF 116) and in various other pleadings he has filed in this court and in the Ninth Circuit. Defendant asserts that Counts Two and Three of the indictment should be dismissed and makes various arguments about the applicability of the certain advisory guideline offense calculations.

Because the factual basis is accurate and the advisory guidelines are properly calculated, this court should deny defendant's motion to correct the PSR and sentence defendant to a term of 355 months in federal prison.

### III. ARGUMENT

**1. Unfair trial, untimely indictment and improper comments of the prosecutor (Defendant's Items 1 and 2 at 2-3)**

At the outset, defendant asserts that his trial was unfair and that his due process rights were violated. Brief of Defendant at 2. The substance of defendant's assertion seems to be that the time limit to obtain an indictment under 18 U.S.C. § 3161(b), which requires that an indictment issue within 30 days of arrest, was violated. Defendant complains that he was held for 102 days before an indictment was issued by the grand jury. The defendant conveniently fails to mention that he was in the custody of and charged by the State of California for the bulk of this period.

---

[1] On June 15, 2015, and again in an amended pleading on July 2, Cole filed notices of appeal challenging various district court orders. On July 24, 2015, the Ninth Circuit ordered defendant to show cause why his appeal should not be dismissed for lack of jurisdiction and the untimely filing of notices of appeal. Defendant responded to the Ninth Circuit on August 7, 2015. The United States filed its reply on August 17, 2015. The Ninth Circuit has not yet ruled. Because defendant has not been sentenced, there has been no final judgment in this case and the appellate court lacks jurisdiction under 28 U.S.C. § 1291. See Midland Asphalt Corp. v. United States, 489 U.S. 794, 798 (1989). An appeal from a non-final order does not divest a district court of jurisdiction. Estate of Conners v. O'Connor, 6 F.3d 656, 658 (9th Cir. 1993).

[2] Defendant's 73 page Motion to Correct PSR is dated July 23, 2015, which predates the filing of and service upon defendant of the Amended PSR on July 24, 2015.

1    Notwithstanding the utter lack of timeliness of the defendant's motion, there was no pre-

2    indictment delay.[3]  Fed.R.Crim.P. 5.1(c) governs the time within which a defendant must be indicted

3    after being brought into federal custody.  Rule 5.1(c) provides that the magistrate must hold a

4    preliminary hearing "within a reasonable time but no later than 14 days after initial appearance if the

5    defendant is in custody."

6    Here, defendant first appeared before the U.S. Magistrate on September 25, 2014.  (ECF 3).  The

7    magistrate set the preliminary hearing for October 9, 2014, exactly 14 days following defendant's first

8    appearance. (ECF 3).  The indictment was filed on October 2, 2014, 7 days after defendant's first

9    appearance. (ECF 8).[4]  There was simply no pre-indictment delay in this case. The defendant was not

10   entitled to a preliminary hearing because the indictment was filed within the requisite 14 day period

11   contemplate by Rule 5.1(c).  Any motion to dismiss the indictment on the grounds suggested by

12   defendant would have been futile, considering that the United States complied with the time limits set

13   out in 18 U.S.C. § 3162 and Federal Rules of Criminal Procedure.

14   Defendant asserts that the criminal complaint was devoid of the affiant's basis of knowledge

15   rendering his arrest was invalid.  Defendant cites *United States v. Freeman*, 165 F.Supp. 121 (S.D. Ind.

16   1958) in support of this proposition.  First and foremost, the *Freeman* decision was a district court

17   opinion and was outside the Ninth Circuit, thus, it is not binding authority on this court.  Second, the

18   facts in *Freeman* are distinguishable. The judge in *Freeman* reviewed only a sworn statement that stated

19   the essential elements of the crimes charged against the defendant but was not supported by any

20   additional facts or an affidavit of the investigating agent. Id. at 123.  Not surprisingly, the district court

21   held that the finding of probable cause was insufficient. Id. at 124.

22   Here, the criminal complaint was supported by an attached affidavit. (ECF 1).  Not only did the

23   complaint's face sheet indicate that charges were "true to the best of my knowledge and belief" it

24   _____

[3] The United States construes defendant's assertion as a motion to dismiss the indictment. The
25   defendant's motion in this regard is untimely pursuant to Fed.R.Crim.P. 12(b)(3)(A)(ii).  Rule 12
     requires that such a motion "must" be brought prior to trial.  Trial began on February 2, 2015 and
26   concluded with the jury's verdict on February 11, 2015.  Defendant's motion is waived.  *United States v.*
     *Collins*, 684 F.3d 873, 887 (9th Cir. 2012).

27   [4] In its response to defendant's Motion of Ancillary Services, et.al. (ECF 115), the United States
     mistakenly referenced the indictment filing date as October 7, 2014.  In actuality, the indictment was
28   returned on October 2, 2014.

referenced an attached affidavit. (emphasis added).   Within the body of the affidavit, at paragraph 2, FBI Special Agent (SA) Forristel sets forth his personal knowledge of the case.  Specifically, SA Forristel indicated the information provided within the affidavit came from his participation in the investigation as well as information provided by other law enforcement officer to whom SA Forristel had spoken or whose reports SA Forristel read. The affidavit was subscribed and sworn under penalty of perjury before a magistrate of this court wherein SA Forristel re-affirmed that the facts contained within the affidavit were true and correct to the best of his knowledge and belief.  Defendant's assertion that his arrest was invalid for lack of personal knowledge on the part of SA Forristel is meritless.

It appears that defendant is attempting suppress his initial arrest on the complaint. The filing of motion to suppress is governed by Fed. R. Crim.P. 12(b)(3)(C).  This rule requires motions to suppress be filed in advance of trial.  The defendant's motion, filed months after the jury's verdict, is untimely and unsupported by any authority.  Moreover, the exclusionary rule does not apply to sentencing proceedings  -- even illegally obtained evidence would be admissible in a sentencing.  *United States v. Haynes*, 216 F.3d 789, 801 (9th Cir. 2000) *citing United States v. Vandemark*, 522 F.2d 1019, 1021 (9th Cir.1975) (declining to extend the exclusionary rule to sentencing after revocation of probation); *United States v. Tauil–Hernandez*, 88 F.3d 576, 581 & n. 3 (8th Cir. 1996) (citing cases from seven circuits holding that the exclusionary rule does not apply at sentencing). The court should deny this motion.

Defendant alleges that the United States made improper remarks before the grand jury as part of the indictment process.  The United States construes this as a motion regarding a "defect in instituting the prosecution." Fed.R.Crim.P. 12(b)(3)(A).  This portion of the Rule 12 also requires that such a motion be made prior to trial, not, as here, in a motion to correct the PSR filed many months after the jury's verdict. Once again, defendant's motion is untimely and not supported by authority allowing this court to hear the motion post-trial.  Accordingly, the court should deny defendant's motion.

**2.  Alleged perjury committed by law enforcement officers, the scope of law enforcement actions, defendant's mens rea and concealment of Radon interview (Defendant's Items 3, 4, 5, 7, 8 and 14 at 4-6, 9-12, and 21).**

Defendant asserts that Ranger Pultorak and Officer Hardin committed perjury at trial and were acting outside the scope of their authority during the search of the illegal campsite discussed at trial.  Specifically, defendant complains without citation to authority, that the conflict between the officers'

1    testimony is conclusive proof that they lied under oath at trial.  Defendant alleges that Ranger Pultorak

2    knew of defendant's pending misdemeanor criminal case in Nevada County Superior Court, that he was

3    a peaceful, non-violent person with no warrants or history of violence and that Ranger Pultorak knew

4    defendant was armed at the time of traffic stop.  Defendant further asserts that he was arrested without a

5    warrant or probable cause and that the search of the campsite by the officers was illegal.

6          This Court heard the testimony of Ranger Pultorak and Officer Hardin.  That there were

7    differences between their testimony is hardly surprising.  Ranger Pultorak and Officer Hardin were not

8    standing next to each at the time defendant drew his weapon and began firing.  They were in different

9    sections of the camp and naturally saw things from different perspectives and angles. This does not

10   mean either or both lied. No two people will ever see something or relate something in exactly the same

11   way.  Defense counsel cross-examined both Ranger Pultorak and Officer Hardin and pointed out where

12   the testimony was different.  There was no evidence that Ranger Pultorak knew anything more about

13   defendant other than that he'd had a valid driver's license and was driving on closed road.  It defies

14   common sense for Ranger Pultorak to ask defendant if he was armed, if Ranger Pultorak knew that to be

15   the case in advance.  It is wildly speculative for defendant to impute additional knowledge to Ranger

16   Pultorak after the fact.

17         This court also heard the testimony of both Kevin and Michael Radon during defendant's case-

18   in-chief.  Both testified to Ranger Pultorak's demeanor and events surrounding the traffic stop.  There

19   was nothing particularly inconsistent between the Radon brother's version of events and the information

20   in Investigator Beresford's report.  In fact, the Radon brothers said much the same thing in front of the

21   grand jury.

22         Moreover, the jury heard the defendant's testimony and was entitled to reject it.  By its verdict,

23   the jury concluded that Ranger Pultorak's and Officer Hardin's testimony was true and rejected the

24   defendant's version of events and protestations of self-defense.  Simply because the defendant has a

25   version of events that he believes to be true and maintains that he was acting in self-defense are not

26   reasons for this court to now conclude in the absence of any evidence that Ranger Pultorak and Officer

27   Hardin were lying and vacate the jury's verdict.

28         As this court is aware, there was more than enough probable for defendant to be arrested

1  following his assault on Ranger Pultorak and Officer Hardin.  Once again, defendant appears to be

2  making an untimely motion to suppress evidence post trial which this court should reject. Fed. R.

3  Crim.P. 12(b)(3)(C).

4  　　　　There is no evidence and defendant can point to no authority for the proposition that either

5  officer was acting outside the scope of his lawful authority at the time of the assault.  The evidence at

6  trial was that both officers were on duty, driving marked patrol vehicles and in full uniform on June 14,

7  2014.  As this court recalls from trial, Ranger Pultorak was investigating the presence of a stolen

8  motorcycle and an unregistered motorcycle within the illegal campsite used by defendant and the Radon

9  brothers. The camp was on BLM land and Ranger Pultorak had a right to be present where he was at the

10  time defendant assaulted him. Officer Hardin was present to assist Ranger Pultorak.  There was no intent

11  and certainly no evidence that either Ranger Pultorak or Officer Hardin were attempting to steal

12  defendant's property.

13  　　　　Defendant claims that he was entitled to resist attempts to arrest him citing *United States v.*

14  *Moore*, 483 F.2d 1361 (9th Cir. 1973).  It is important to note that *Moore* only stands for the proposition

15  that one may resist an "unlawful" arrest.  Id. at 1364.  In *Moore*, the defendant assaulted the law

16  enforcement officer following the discovery of marijuana in defendant's suitcase.  Id. at 1363.  The

17  Ninth Circuit concluded that the officer had probable cause to arrest defendant based on the discovery of

18  marijuana and that his resistance was not justified. Id. at 1364.   Much the same happened in here. The

19  officers had discovered one stolen motorcycle in the camp and were investigating when defendant made

20  his appearance.  Ranger Pultorak only withdrew his handcuffs when defendant indicated he was armed.

21  Defendant did not comply with Ranger Pultorak's commands but instead, drew his .44 caliber revolver

22  and shot Ranger Pultorak.  There was nothing unlawful about Ranger Pultorak's actions in the campsite

23  that day.

24  　　　　Defendant claims that he had no criminal intent (*mens rea*) to assault either Ranger Pultorak or

25  Officer Hardin, that the United States never alleged defendant's criminal intent and that he acted only in

26  self-defense.  In support of this notion, he cites *United States v. Feola*, 420 U.S. 671 (1975).

27  Unfortunately for defendant, even under *Feola*, the evidence was overwhelming clear at trial that he

28  intended to assault both Ranger Pultorak and Officer Hardin.  According to Ninth Circuit Model

1  Criminal Jury Instruction 8.4, "there is a forcible assault when one person intentionally strikes another,

2  or willfully attempts to inflict injury on another or intentionally threatens another coupled with an

3  apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily

4  injury." This was the same instruction that the court gave to the jury prior to deliberations. In addition,

5  a reasonable apprehension of immediate bodily harm is determined with reference to a reasonable

6  person aware of the circumstances known to the victim, not with reference to all circumstances,

7  including circumstances unknown to the victim. *United States v. Acosta-Sierra*, 690 F.3d 1111, 1121

8  (9th Cir. 2012).[5]

9      Here, the indictment tracked the statutory language of 18 U.S.C. § 111 and the jury was properly

10  instructed as to what constitutes "assault." Defendant's actions in shooting Ranger Pultorak and Officer

11  Hardin, more than demonstrate his intention to assault them. The evidence at trial showed that defendant

12  knew both Ranger Pultorak and Officer Hardin were law enforcement officers. He also knew at the time

13  he contacted them that they were engaged in their official duties. Defendant's response to Ranger

14  Pultorak's commands was to draw his pistol and begin firing. The very act of drawing the pistol meets

15  the definition of assault found in the pattern instruction given to the jury because it created the

16  reasonable apprehension of immediate bodily injury. Defendant fired his pistol 6 times and struck both

17  Ranger Pultorak and Officer Hardin. These are not the acts of an individual trying to defend himself

18  against unlawful actions of two allegedly "rogue" police officers with no criminal intent, but rather, the

19  actions of a cold-blooded individual determined to show law enforcement "who's boss." Simply

20  because the defendant now claims that he had criminal intent does not obviate the facts presented at trial

21  and accepted by the jury.

22      **3. Constitutionally deficient reasonable doubt instruction (Defendant's item 6 at 7-8)**

23      Defendant complains that he had no input into the jury instructions and the reasonable doubt

24  instruction given at trial was constitutionally defective. It is worth noting that the first seven cases cited

25  by defendant in support of this notion are California Court of Appeals cases and not binding authority on

26  
27      [5] Defendant also suggests that he did not form the intent to assault because he was acting in self-defense. This court instructed the jury as to self-defense prior to its deliberations. The jury by convicting defendant of all three counts in the indictment necessarily rejected defendant's arguments

28  that he was acting in self-defense.

this court.  Defendant cites a concurring opinion in *Sullivan v. Louisiana*, 508 U.S. 275 (1993) as

precedent in support of the notion that a constitutionally defective reasonable doubt instruction will not

suffice in proving a crime beyond a reasonable doubt.

This court used Ninth Circuit Model Criminal Jury Instruction 3.5 to define reasonable doubt for

the jury prior to deliberation.  The use of the language in this model instruction "did not constitute plain

error." *United States v. Ruiz*, 462 F.3d 1082, 1087 (9th Cir.2006) (citing *United States v. Nelson*, 66 F.3d

1036, 1045 (9th Cir.1995)).  Moreover, as the comments to the model instructions note "In *Victor v.*

*Nebraska*, 511 U.S. 1, 5 (1994), the Court held that any reasonable doubt instruction must (1) convey to

the jury that it must consider only the evidence, and (2) properly state the government's burden of

proof."  Model Instruction 3.5 does exactly this.

Defendant provides no meaningful analysis nor citation to any authority demonstrating how the

reasonable doubt instruction as given by the court was defective or to what remedy he is entitled.

**4. Lack of serious bodily injury, biased court and audio recording (Defendant's item 9 at
13-14, item 15 at 22 and item 16 at 23)**

Defendant complains that a five level increase in his offense level pursuant to USSG

§ 2A2.2(b)(3)(E) for the injury sustained by Ranger Pultorak is not warranted.  Specifically, defendant

asserts that Ranger Pultorak did not suffer "serious bodily injury" because he was never in "extreme

physical pain" as contemplated by USSG § 1B1.1 (comment, note 1 [L]) and points to the post-shooting

interview of Ranger Pultorak.  "Serious bodily injury" is defined by the advisory guidelines as "injury

involving extreme physical pain or the protracted impairment of a function of a bodily member, organ or

mental faculty; or requiring medical intervention such as surgery, hospitalization or physical

rehabilitation." USSG § 1B1.1 (comment, note 1 [L]). <u>See</u>: *United States v. Moore*, 997 F.2d 30 (5th

Cir. 1993) (gunshot wound through the leg with a two hour hospitalization followed by light duty and

pain constituted serious bodily injury); *United States v. Snider*, 976 F.2d 1249 (9th Cir. 1992) (broken

jaw constituted serious bodily injury); *United States v. Anderson*, 380 Fed. App'x. 597 (9th Cir. 2010)

(unpublished) (broken ankle constituted serious bodily injury).

Ranger Pultorak suffered a "through-and-through" gunshot wound to his shoulder, meaning that

1   a .44 caliber bullet fired by the defendant penetrated his shoulder muscle and passed completely through

2   it before exiting.  It is disingenuous for defendant to suggest that a bullet passing through a person's

3   body would not cause extreme physical pain.  This argument also demonstrates the defendant's extreme

4   callousness and indifference to the injuries sustained by both officers, as well as, a total lack of remorse

5   or acceptance of responsibility for his actions.   Had defendant's bullet struck Ranger Pultorak an inch or

6   two lower, Ranger Pultorak might very well be dead.

7           Moreover, medical intervention in the form of hospitalization certainly occurred in this case.

8   Ranger Pultorak was airlifted to the hospital and remained there for some time while the injury was

9   evaluated, cleaned, and dressed.  The United States expects that Ranger Pultorak would testify as

10  follows: (1) he was prescribed antibiotics to prevent infection; (2) he required specialized wound care

11  for 9 weeks following the shooting; (3) the bullet wound was continuously painful for the entire period

12  of the specialized wound care; (4) the pain at the wound site was exacerbated by the regular changing of

13  dressings and application of ointment; (5) Ranger Pultorak was on administrative leave for

14  approximately 1 week and on light duty for the entire period of the wound care; and (5) Ranger Pultorak

15  has a high tolerance for pain and does not typically use pain medication.[6]

16          The present case is factually analogous to *Moore,* supra, where the officer suffered a gunshot

17  wound to the leg. The five level upward adjustment in offense level for serious bodily injury is properly

18  applied and this court should deny defendant's motion to remove it.  It cannot be said that continuous

19  pain over a 9 week period is not "extreme."  However, should the court require additional information

20  on this issue, the United States will insure that Ranger Pultorak is available to testify at sentencing.

21          Defendant further claims that this court is biased because it refused to order the production of an

22  alleged audio recording of the traffic stop. This issue has been the subject of much discussion and

23  litigation prior to and following trial.  The defendant has insisted and repeatedly demanded that the

24  government produce a "dash-cam video" or a body microphone recording of the traffic stop that he

25  alleges exists.  As this court knows from its review of the pleadings, the United States attempted to

26  locate these items for defendant.  Ranger Pultorak's patrol truck  was not equipped with a dashboard

27

28          [6] A report documenting this information prepared and notes taken by SA Forristel are attached at
    Exhibit A.

video system at the time of the traffic stop.  Additionally, Ranger Pultorak was not wearing a body-microphone recording device at any point on June 14, 2014.  The only audio recordings that presently exist are Ranger Pultorak's radio traffic with his dispatch center, which the United States only recently received from the Nevada County Sheriff's Office and has now produced to the defendant.[7]  These recordings do not contain any of the information alleged by defendant to exist such as his peaceful law abiding nature or that he was presently appearing in court for a misdemeanor case.  In fact, defendant's voice is never heard on the recordings. It is not a verbatim recording of the stop as suggested by defendant and is certainly not exculpatory.  In addition, defendant provides no meaningful analysis as to how this affects the advisory sentencing guidelines.

Defendant also attempts to show this court's "bias" through its denial of defendant's motion to change counsel on January 30, 2015.  Defendant's unhappiness with this court's denial of a motion is not grounds for reversal of the verdict nor is it proof of bias as he suggests.  Defendant points to no authority in support of this proposition.

### 5. Ineffective assistance of counsel (Defendant's items 10 and 11 at 15-16)

Defendant claims that he received ineffective assistance of counsel.  Defendant's briefing is devoid as to how, if at all, this affects the advisory guidelines calculations with respect to his potential sentence.   Ineffective assistance of counsel is more properly addressed on appeal or in a post-appeal motion pursuant to 28 U.S.C. §  2255.

### 6. Dismissal of Counts Two and Three (Defendant's items 12 and 14 at 17-20)

Defendant contends that Count 2, Assault on a Person Assisting a Federal Officer with a Deadly Weapon which Inflicts Bodily Injury, in violation of 18 U.S.C. §111(a)(1) and (b), must be dismissed because it is multiplicitous and violates double jeopardy.  Likewise, defendant claims that Count 3, Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) and 924(c)(1)(A)(iii), must also be dismissed because it is a sentencing enhancement applicable only to armed career criminals and is multiplicitous.  Defendant is wrong.

Defendant essentially argues, relying on *Ladner v. United States*, 358 U.S. 169 (1958) that he

---

[7] For a further explanation, please  see Reply/Response to Defendant's Cole's Motion for Transcript Ancillary Services and Discovery/Evidence Amended as to Section III.6 (ECF 141)

cannot be convicted of assaulting both Ranger Pultorak and Officer Hardin because he only committed one act of assault. The facts in *Ladner* are distinguishable.  The defendant was convicted of assaulting two federal officers and sentence to 10 years in prison for each count to be served consecutively. <u>Id</u>. at 170-71.  In a motion filed under 28 U.S.C. §  2255 at the conclusion of his first ten year sentence, defendant alleged that he'd only fired "a single discharge from a shotgun into the front seat of an automobile and that the pellets wounded the two federal officers who were transporting an arrested prisoner." <u>Id</u>.  Defendant claimed, based upon the fact that he'd fired only one time, that he had only committed one assault. <u>Id</u>.  The Supreme Court agreed, noting that "we cannot find that Congress intended a single act of assault affecting two officers constitutes two offenses under the statute." <u>Id</u>. at 176.  The Supreme Court later clarified the *Ladner* holding in *United States v. Feola*, 420 U.S. 671 (1975), noting "it therefore held that the single discharge of a shotgun constituted only a single violation of s. 254."

Unlike the single shotgun blast that wounded two officers in *Ladner*, here, the defendant fired his pistol six times at two separate individuals.  Ranger Pultorak and Officer Hardin were not standing next to each other or even in the same proximity when they were shot.  They were located in separate areas of the campsite and defendant necessarily had to turn from one to engage the other.  The defendant did not fire a single shot that wounded both Ranger Pultorak and Officer Hardin.  He shot each officer separately, giving each individual attention.

The facts in this case more closely resemble the facts of *United States v. Street*, 66 F.3d 969 (8th Cir. 1995).  In *Street*, defendant threatened and assaulted two federal rangers. Id. at 973-74.  In rejecting defendant's argument that the indictment was multiplicitous because it occurred during the same course of events, the Eighth Circuit concluded "although Street made several verbal threats directed at both rangers during the altercation, the evidence shows that he assaulted each of them separately and successively." <u>Id</u>. at 975.  <u>See also</u>: *United States v. Katzenbach*, 824 F.2d 649 (8th Circuit) (prison inmate with AIDS who assaulted three guards by swinging at one, biting another and scratching a third during the same altercation constituted three separate assaults); *United States v. Wesley*, 798 F.2d 1155 (8th Circuit 1986); *United States v. Hodges*, 436 F.2d 676 (10th Cir.), *cert. denied* 403 U.S. 908 (1971). Based upon the above authorities, this court should find that defendant committed two separate acts of

assault for shooting Ranger Pultorak and Officer Hardin.  The rule of lenity does not apply and this court should not dismiss Count 2.

This court should also reject defendant's arguments that Count 3 did not sufficiently describe scienter, is a sentencing enhancement that does not apply to him because he is not an armed career criminal and is multiplicitous.  18 U.S.C. § 924(c)(1)(A)(iii) provides in pertinent part:

> "…any person who, <u>during and in relation</u> to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime possesses a firearm, shall in addition the punishment provided for such crime of violence or drug trafficking crime if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years."  (Emphasis added).

A careful review of the indictment reveals that it tracked the statutory language of 18 U.S.C. 924(c).  (ECF 8). The indictment clearly identified the crimes of violence upon which the United States was relying to prove the offense, namely the assaults committed by the defendant against Ranger Pultorak and Officer Hardin.  Additionally, the indictment provided the requisite knowledge requirement, specifically stating "did <u>knowingly</u> discharge, carry, and use a firearm…" which is more than required under the plain language of the statute.  (emphasis added) (ECF 8).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves, fully, directly, and expressly…set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation omitted).

The plain language of 18 U.S.C. § 924(c), contrary to defendant's assertion, does not require that he be previously convicted of a crime of violence nor is the statute applicable only to armed career criminals.  Rather, § 924(c) makes it a crime to carry or use a firearm "during or in relation to" a crime violence.  That is exactly what happened here.  Simply put, the defendant used (and discharged a firearm) "during and in relation to" his assault of Ranger Pultorak and Officer Hardin.  This was the same conclusion reached by the jury after its deliberations.

In the affidavit attached to his PSR correction motion, Defendant conflates 18 U.S.C. § 924(c) with 18 U.S.C. § 924(e), which sets out the requirements for an enhanced sentence for those convicted

under 18 U.S.C. § 922(g) (felon in possession of a firearm).  Defendant was not charged with being a

felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) nor was it alleged in the indictment that

he was an "armed career criminal."  As such, the enhancement provisions found in 18 U.S.C. § 924(e)

are inapplicable to this case.[8]

In the affidavit attached to the motion to correct PSR, defendant cites the test for multipicitous

charges set out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) and makes a conclusory

statement without analysis or citation to further authority that Count 3 is multiplicitous.  Because 18

U.S.C. § 111 and 18 U.S.C. § 924(c) require the proof of separate facts, *Blockburger* is not implicated.

Specifically, 18 U.S.C. § 924(c) requires only that the defendant discharge, carry or use a firearm during

or in relation to a crime of violence.  Conversely, 18 U.S.C. § 111 requires the forcible assault of a

federal officer in the performance of his duties using a dangerous weapon that results in bodily injury.

Because § 924(c) does not require an assault, the infliction of injury, or that the victim be a federal

officer in the performance of his duties, Count 3 is not multiplicitous and should not be dismissed.

**7.  Advisory guidelines calculations (Defendant's items 17 at 24 and 18 at 25)**

Defendant asserts that a two level increase in offender score for obstruction of justice under

USSG § 3C1.1 is not warranted.  Defendant claims that his trial testimony was truthful. Unfortunately

for the defendant, the jury's verdict is a clear rejection of his testimony as being neither true nor

credible.

This court heard the testimony of all witnesses, including Ranger Pultorak, Officer Hardin and

defendant. With minor variations, the testimony of Ranger Pultorak and Officer Hardin at trial was

consistent with their pretrial interviews and statements.  The defendant's testimony, on the other hand,

was not.  Defendant falsely claimed that he was under the influence of medication at the time of his

Mirandized statement at the hospital and made this fact known to Investigator Billingsley during the

interview.  Defendant claimed his memory was better during trial then it was at the time he was

interviewed and continued to improve.  Conversely, Investigator Billingsley testified that defendant was

---

[8] Defendant also cites *United States v. Lowe*, 860 F.2d 1370 (1988).  Not surprisingly, *Lowe* and its analysis is completely inapplicable to the present case because it dealt with 18 U.S.C. § § 922(g) and 924(e), not 18 U.S.C. §  924(c).

1   lucid, understood the questions being asked, never expressed any confusion, and never indicated that

2   medication was affecting his recall of events.

3   　　　Defendant testified that he was fully compliant with Ranger Pultorak's commands, that he did

4   not draw his weapon until the officers began shooting him first, and that his actions were in self-defense.

5   He also testified that Ranger Pultorak repeatedly threatened him during the traffic stop.  This testimony

6   was directly contradicted by Ranger Pultorak and Officer Hardin.  Defendant also stated that Ranger

7   Pultorak was wearing a brown poncho on the day of the shooting.  Defendant provided a detailed

8   description of the design and color of the poncho.  He even remembered that the poncho had tassels at

9   the bottom.  Ranger Pultorak denied owning or wearing such an item on the day of the shooting.

10   　　　More to the point, since his conviction defendant continues his narrative that he acted in self-

11   defense, that Ranger Pultorak "gut shot" him first, that Ranger Pultorak threatened him during the traffic

12   stop, that Ranger Pultorak lied etc.  A review the multitude of pleadings that defendant has filed in this

13   court since his conviction bears this out.  This court may also consider defendant's attempts to influence

14   sentencing through his narrative in finding that defendant obstructed justice, if the court concludes that

15   the narrative put forth by the defendant is false. USSG § 3C1.1.  The defendant has earned the two level

16   increase in his offense level for obstruction of justice.

17   　　　Defendant claims that a term of supervised release is not authorized under either 18 U.S.C. § 111

18   or 18 U.S.C. 3583(a) because he was not convicted of a domestic violence offense.  A plain reading of

19   18 U.S.C. § 3583(a) reveals that the Court has discretion to impose a term of supervised release (TSR)

20   on any felony but must impose a TSR if the statute so requires <u>or</u> "the defendant has been convicted for

21   the first time of a domestic violence crime as defined in section 3561(b)."  While it is certainly true that

22   the offenses of conviction in this case are not domestic violence crimes, nevertheless, the statute allows

23   this court to impose a term of supervised release upon defendant's release from custody.  Given the

24   nature of the offenses and defendant's lack of remorse and overall callousness, the United States

25   believes that the maximum term of supervision provided for by law should be imposed.

26   　　　Defendant asserts that he  is eligible for probation in this case as "Count 3 must be dismissed as a

27   18 U.S.C. § 924(c) is a sentence enhancement that may only be applied to 'career criminals' who have

28   previously been convicted of felony crime."  Defendant is mistaken.  As noted in Section 6 above, there

is no basis to dismiss Count 3 as either multiplicitous or because the defendant is not an armed career criminal.  Furthermore, because defendant will be sentenced "at the same time to a term of imprisonment for the same or a different offense that is not a petty offense" he is ineligible for probation.

### 8.  Unconstitutionality of 18 U.S.C. § 111(b) and multiple guideline enhancements (Defendant's items 19-21 at 26-29)

Defendant complains, without any analysis or citation to authority that 18 U.S.C. § 111(b) is unconstitutional because it infringes upon his Second Amendment right to keep and bear firearms.  The statute does nothing to infringe upon an individual's right to keep and bear firearms, rather, it criminalizes assaulting another person with firearms, as the defendant did in this case.  Moreover, because the defendant does no more than make a conclusory statement without any meaningful analysis, this court should entirely disregard this issue.

Defendant asserts that the advisory guidelines are also unconstitutional because "the defendant is subject to many years of incarceration for having exercised his Second Amendment rights." Brief of Defendant at 26.   Defendant goes on to argue that the advisory guidelines applicable to these offenses "have subjected him to multiple jeopardies for the same act." Id.  Again, the defendant provides no meaningful analysis or authority for his position.  It bears repeating, the defendant is being punished for his conduct while utilizing a firearm, namely assaulting Ranger Pultorak and Officer Hardin, not for simply possessing a firearm.  Other than conclusory statements about double jeopardy and unconstitutionality unsupported by any authority, defendant can point to no errors in the probation officer's calculation nor in the applicability of the advisory guidelines variables.

Defendant concludes his motion by repeating his mantra that he merely acted in self-defense as the officer unjustifiably assaulted him.  This story was flatly rejected by the jury.  The court should reject all of the defendant's assertions of error in the PSR.

### IV. SENTENCING RECOMMENDATION

In deciding what sentence to impose on a defendant, after determining the advisory sentencing guidelines, the Court is required to consider the factors enumerated in 18 U.S.C. § 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the

1  defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote

2  respect for the law, provide just punishment and adequate deterrence, protect the public, and provide

3  education or vocational training for the defendant; (3) the kinds of sentences available; (4) the kinds of

4  sentences and sentencing range set forth in the guidelines; (5) the sentencing guidelines policy

5  statements; (6) avoidance of unwarranted sentencing disparities among similarly situated defendants and

6  (7) providing restitution to victims of the offense.

7         The probation officer correctly applied the all the advisory guidelines variables set out on pages

8  8-10 of the July 24, 2015 PSR.  The defendant's total offense level as 36 with a criminal history

9  category of I.  The advisory guideline range for Counts One and Two is 188-235 months.  Count Three

10  adds 120 months consecutive to the advisory guideline range for Counts One and Two.

11         Given the defendant's utter disregard for authority and the law, the United States adopts the

12  recommendation of the PSR and urges this court to impose a sentence of 355 months of incarceration.

13  Such a sentence is required to reflect the seriousness of the offense, provide just punishment and

14  adequate deterrent and, most importantly to protect the public.  The defendant is a danger individual and

15  society must be protected.

16         The defendant violently over-reacted to the presence of the officers at his campsite generally and

17  to Ranger Pultorak's actions specifically.  He fired at the officers six times for no reason, hitting and

18  wounding both.  The officers are lucky to be alive.  Defendant's characterizations of the officers'

19  injuries as merely "flesh wounds" displays a stunning lack regard for anyone other than himself. He has

20  shown no remorse for his actions, accepted no responsibility, perpetuated his own self-defense narrative,

21  and attempted to portray himself as the victim in this case.  And what did the officers do after being so

22  callously and viciously assaulted? They promptly rendered medical assistance and saved defendant's

23  life.

24  ///

25  ///

26  ///

27  ///

28  ///

16

The defendant has earned a 355 month sentence and this court should not hesitate to impose it.

Respectfully submitted,

Dated:  August 21, 2015

BENJAMIN B. WAGNER
United States Attorney

By:  /s/ *HEIKO P. COPPOLA*
HEIKO P. COPPOLA
Assistant United States Attorney

17

# EXHIBIT A

FD-302 (Rev. 5-8-10)



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    08/21/2015

    Ranger Tad Pultorak, Bureau of Land Management, U.S. Department of Interior, was contacted telephonically, for the purpose of discussing the wound he suffered during the June 14, 2014 shooting incident in rural Nevada County, California.  Also participating in the telephone call was Assistant United States Attorney (AUSA) Heiko Coppola.  After being advised of the identity of the interviewing Agent and AUSA, and the purpose of the interview, Pultorak provided the following information:

    After being treated at the hospital on the day he was wounded, Pultorak required wound care for nine weeks.  The wound care required numerous and frequent changing of bandages, treatment of the wound, application of ointment, and the placement of new dressings.  Each time treatment was provided, the wound was aggravated causing Pultorak pain.  Pultorak stated he was in pain for the whole nine weeks.

    After the shooting, Pultorak was on administrative leave for one week, followed by being placed on light-duty for the next eight weeks.

    Pultorak has a high tolerance for pain, and usually does not take any pain medications.

Investigation on    08/21/2015    at   Chico, California, United States (Phone)

File #   266S-SC-5039057                                    Date drafted   08/21/2015

by   FORRISTEL ANDREW D

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

8-21-15

TAD   w/ AUSA        TELEPHONIC

R2D WOUND CARE   ~ 5 WEEKS
CARE — PAIN — ALL 5 WEEK
DRESSING / CARE / OINTMENT   AGGRAVATED / PAIN
ADMIN IV   — 1 WEEK :  LIGHT DUTY —
      ALL WOUND CARE
HAS HIGH TOLERANCE FOR PAIN — USUALLY DOESN'T
      TAKE PAIN MEDS