1  Brent D. Cole _____ (Name)

2  X-635066 _____ (X-Ref. No)

3  Sacramento County Main Jail
   651 "I" Street, 6W 329

4  Sacramento, CA 95814

5  In Pro Se

6

7  **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9  UNITED STATES OF AMERICA,                    Case No. 2:14-cr-00269-GEB
                              Plaintiff,        REPLY TO 'UNITED STATES'
10                                              RESPONSE TO DEFENDANT COLE'S
    V.                                          MOTION FOR TRANSCRIPT,
11                                              ANCILLARY SERVICES AND
12  BRENT DOUGLAS COLE,                         DISCOVERY EVIDENCE (ECF 115)
13                              Defendant(s).   Date: August 17, 2015
                                                Time: 10:00 AM
14                                              Judge: GEB  (13th Floor)

15

16                    I. INTRODUCTION STATEMENT

17  On August 12, 2015 defendant received the reply to his motion

18  for transcripts, ancillary services, and discovery evidence.

19  Mr. Coppola has kindly attached a discovery production log, which

20  shows counsel J. Toney was provided 23 items of discovery, but

21  counsel did not provide 18 of these items to the defendant, and

    provided only paper items, mostly at the end of May 2015 or

22  June 8, 2015. Counsel failed/refused to inform the jail of the

23  defendant's status as pro-per, which he promised the court

24  he would immediately do on April 24, 2015. All ability to

25  access legal materials or make copies was denied to the

26  defendant until May 20, 2015. Thousands of pages of

27  paper in a jumble were dumped on defendant 5/24/15 and 6/8/15.

28  REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 1 of 32

                                    1.

**THE RELEVANT FACTS**

The prosecution claims in his "argument" on page 5, "2. Pre-indictment delay", that "defendant's motion is untimely..." and that "there was no pre-indictment delay."

i) Defendant was unlawfully arrested on June 14, 2014 by federal officer Tad Pultorak of the BLM. acting without a warrant and without any probable cause to arrest the defendant. He did not inform defendant of his intent to place him under arrest. He pulled handcuffs out, and when defendant took a step back asked if he was armed. Defendant informed him, "Yes I am." where upon both officers drew their guns and Tad Pultorak shot the defendant. He backed away from the defendant continuing to shoot him. The defendant acted in self defense to return fire, shooting him in the shoulder. Due process has been violated since the arrest was initiated by a federal officer on June 14, 2014, and the defendant has been incarcerated since said malicious "arrest,"

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 2 of 32

The prosecution states, "defendant first appeared" on September 25, 2014, as if the delay was defendant's choice. The accused was incarcerated without a valid commitment in "MaximumA" secure confinement in isolation without a due process hearing or statement of reasons or probable cause hearing since June 19, 2014. Prosecution pretends 9/25 was timely. The magistrate scheduled no preliminary hearing and made no proper attempt to determine probable cause. The prosecution's claim that "There was simply no pre-indictment delay in this case." is utterly without merit. A federal officer acted outside his jurisdiction without a warrant or probable cause to "arrest" defendant, without informing him that he was placing him under arrest, using excessive force, and failed to do anything required by Rules 3-5 or the Fourth Amendment. Now it is pretended that only the State of California was involved. FRCrP. Rule 5(b), requiring probable cause to be promptly filed, was violated.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 3 of 32

Contrary to the prosecution's assertion, defendant timely

raised the issues of the delay in charging, and violation

of due process in his 28 USC § 2255 motion filed on

1/30/2015, ECF 42, See "MEMORANDUM" page 2, lines 23-27;

page 3, line 26-27; page 4, lines 1-27; see appindix 1; see MOTION

page 2, question 1, 2, 3, 4, 5, 6, 7, 8, 10, 11(a)(6), 11(b)(c), 11(d),

12(a) and 12(b), "GROUND TWO" and "GROUND THREE" See

also appendix 17 of Ninth Circuit "MOTION FOR STAY OF

PROCEEDINGS PENDING APPEAL", page 12, lines 16-25;

page 13, lines 1-4, lines 17-25; page 14, lines 1-6, lines 16-

25; page 15, lines 18-25; page 16, line 1, page 18, lines 12-25

Counsel did not keep his word to the court, and Sacramento

County Jail denied the accused access to legal materials and

denied accused all means and assistance in preparing

and filing meaning ful legal papers. Defendant has

been subjected to a vindictive prosecution, unable to access

the courts until May 20, 2015, except for the §2255 motion.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 4 of 32

"The case calls for the proper application of Rule 5(a) of the Federal Rules of Criminal Procedure, promulgated in 1946, 327 US 281. That Rule provides: <*pg. 1482> "(a) Appearance Before The Commissioner. An officer making an arrest ... without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith." — This provision has both statutory and judicial antecedents for guidance in applying it. The requirement that arraignment be "without un-necessary delay" is a compendious restatement, with-out substantive change of several prior specific federal statutory provisions. (E. g., 20 Stat 327, 341; 48 Stat 1008; also 28 Stat 416.) See Dession, The New Federal Rules of Criminal Procedure I, 55 Yale LJ 694, 707. In McNabb v. United States, 318 US 332, 343, 344, 87 L Ed 819, 825, 826, 63 S Ct 608, we spelled out the important reasons of policy behind this body of legislation: "The purpose of this impressively pervasive requirement of criminal procedure is plain. ... The awful instruments of the crim-inal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon which the criminal law relies for its vindication. ... For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. Mallory v. United States, 354 US 449, 452, 1 L Ed 2d 1479, 77 S Ct 1356 (1957).

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 5 of 32

The "prosecution team", officers involved with the shooting, jailers, and the court have formed what is in essence a 'single functionary'; essentially a "gang", in which 'the awful instruments of the criminal law' have been entrusted to a single functionary, which has no oversight, essentially, because the group acts as a 'gang' that is in control of the instruments of the criminal law. The accused has been subjected to a malicious prosecution for having exercised his inherent Constitutionally guaranteed right under the Second Amendment, and for having exercised a lawful authority as a statutory federal officer and performed his duty to lawfully attempt to protect the Constitution. Defendant was incarcerated by Rusty Greene January 26, 2014, who siezed control of the investigation of this case as soon as his friend, Ted Pultorak, instituted the shooting incident. Defendant was injured in his person and property to obstruct justice in furtherance of a conspiracy against rights.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 6 of 32

The court was informed January 30, 2015 that the

defendant had not been given discovery, with counsel

J. Toney present at the in camera hearing remaining silent.
"The Sixth Amendment does not provide merely that a
defense shall be made for the accused; it grants to the
accused personally the right to make his defense. It is the
accused, not counsel, who must be "informed of the nature
and cause of the accusation," who must be "confronted
with the witnesses against him," and who must be ac-
corded "compulsary process for obtaining witnesses in
his favor." ... "The right to defend <* pg. 573> is given
directly to the accused," Faretta v. California, 422 US,
806, 819-820, 45 L.Ed. 2d 562, 573, 95 S.Ct. 2525.
"... the suppression of substantial material evidence
bearing on the credibility of a key witness is a denial of
due process... An accused, accordingly is entitled to
relief in such circumstances unless we can declare
a belief that the denial 'was harmless beyond a reas-
onable doubt.'" Chapman v. California (1967) 386 US 18,24,
87 S. Ct. 824, 828, 17 L Ed 2d 705.
   In Giglio the court held: " the failure to disclose to the
jury or to the defense exculpatory evidence, and the
failure to correct misleading statements by the wit-
ness denied the defendant a fair trial as the evidence
suppressed related to the credibility of a key
witness ..." Giglio v. United States, 405 US 150, 154, 92
S. Ct 763; Napu v. Illinois (1959) 360 US 264, 266, 79 S.Ct.
1173, 3 L Ed 2d 1217.
   "When the constitutional validity of an arrest is challenged,
it is the function of a court to determine...," Carol v. United
States, 387 U.S. 294, 310. — This was not done. —
The court made no attempt to determine the validity of the arrest.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 7 of 32

II - FACTS

Defendant has attempted many times to obtain the evidence that was suppressed at trial, and which is still being suppressed.

1.) January 30, 2015 at the in camera hearing defendant's "MOTION FOR ENFORCEMENT" requested an order for the suppressed items to be subpoened and available at trial. He asserted he could not get a fair trial without the audio recording of the BLM "Traffic-stop" or without the evidence that was seized without a warrant and unlawfully retained by N.C.S.O.; Evidence Entries #106 and #120. A motion for discovery was first filed for the audio recording on July 28, 2014 in case F14-000267, "INFORMAL REQUEST FOR DISCOVERY", page 3, "11 (b) A copy of the thumb drive with audio from Forest Service Traffic Stop (E-325);".

Judge Burrell denied all motions and requests for discovery, Defendant stated that discovery had not been given to him and that it would be a "trial by ambush." J, Toney assisted the prosecution in suppressing evidence.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT- Page 8 of 32

2.) The Supreme Court has consistently held that the denial of assistance of counsel at trial precludes the imposition of a jail sentence. Defendant was so denied.

3.) Judge Burrell showed bias by refusing/failing to order suppressed evidence be produced at trial; by proceeding to trial knowing that defendant was denied discovery; by refusing/failing to protect defendant's rights to be free from cruel and unusual punishments, to property, to due process, and to be free from unwarranted intrusions.

4.) Officers were not engaged in the lowful performance of their duties, but were stealing defendant's property, i.e. the backpack referred to on page 6, "3.", 2nd paragraph, of the "RESPONSE", and defendant's dentures. Defendant is demanding that his dentures be returned, which were stolen by Brent Hardin and Ted Pultorak June 14, 2014, N.C.S.O. Evidence Entry 35, case 1140-1626, to end the cruel and unusual punishment of deprivation there of.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 9 of 32

5.) On page 9 at the bottom of the page it is pretended that

the Thumb-Drive audio is a copy of the radio traffic record-

ing; stating that "the dispatch radio calls will be

provided." Defendant is demanding the audio recording

of the BLM "Traffic Stop", which has been with-

held and suppressed. Attached is the first motion

filed in state court case no. F14-000267 "INFORMAL

REQUEST FOR DISCOVERY: APPENDIX AA filed

July 28, 2014, See page 3, line 18 ("11. (b)") "A copy of

the thumb drive with audio from Forest Service Traffic Stop"

Evidence Entry no. 106 in N.C.S.O. case 1140-1626. **

If it was only the recording of the "radio calls" it

would not have been so important to prosecutors to

have suppressed this evidence for more than a

year... And J. Toney to conceal the proof of the audio

recording's existence at trial; and the court to

refuse to subpoena the audio recording into evidence,

Defendant needs Entries 106, 120, 35 in NCSO # 1140-1626.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 10 of 32

6.) Government Exhibit 2J (photograph) shows the food cache suspended to keep bears out of it; and notably absent is the Kawasaki motor cycle, which was not in the camp until M.C.S.O. deputies moved it into the camp. See appendix I of PETITION FOR REVIEW, Ninth Circuit, and page i.

7.) Tad Pultorak committed fraud under 18 U.S.C. § 1001. He knowingly and willfully falsified a material fact and made a fictitious representation that it is BLM policy to require the public to call in to determine if a road is closed prior to using it. He then perjured himself to conceal the fraud he had perpetrated to act in excess of his jurisdiction to seize property belonging to the defendant and others. If his concern had been defendant camping, he would have had him take his things. Defendant approached the officers because they were engaged in stealing his property, as is admitted in Officer Hardin's interview, who also stated repeatedly that both drew their guns first.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 11 of 32

8.) To illustrate how ineffective counsel J. Toney was
it only need be noted that only two of the more than
seventeen witnesses listed by the defendant were
permitted to testify because counsel failed to
subpoena them; failed to give prosecution discovery,
and sanctions were imposed precluding defendant's
witnesses from testifying. Counsel made no motions,
made no attempt to suppress any evidence, entered no
evidence in defendant's favor, refused to ask the questions
that defendant submitted of witnesses, failed to obtain
any expert witnesses or interview any witness
prior to trial. He failed to ask any of the questions
of Michael Radon which had elicited impeachment
testimony before the grand jury when Mr. LeCoy asked
questions, and in the interview with Robert Beresford,
which counsel concealed. He failed to keep his word to
defendant and failed to do any legal research or investigation.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 12 of 32

9.) Defendant denies that the allegations of "FACTS" is accurate. Imposed counsel was used to preclude defendant from having an opportunity to speak in his own behalf, cross-examine witnesses, compel witnesses in his favor, or be informed of the nature and cause of the accusation. Counsel failed to act as a diligent advocate and failed to subject the prosecution's case to meaningful adversarial testing. Counsel's performance was both deficient and prejudicial. He grossly neglected the preparation for trial, did not confer with defendant without undue delay or often enough to elicit matters of defense. Counsel did not advise defendant of his rights and did not take the actions necessary to preserve them. Counsel failed to act in a manner to be expected of a reasonably competent attorney.

10.) Defendant was unlawfully held in "Maximum A" security housing without a due process hearing, and was denied meaningful access to the courts from June 19, 2014 to May 20, 2015 by the denial of ability to make copies and denial of access to legal materials.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 13 of 32

11.) Officers had no warrant and no probable cause.
"In the absense of eminent danger to life and limb a
decision regarding search, or seizure is required by a
judicial officer to "make an independent determination on
the undisputable facts."" Stroble v. California, 343 US
181, 190 —— "An officer who 'acts without process' or
'under a process void on its face' is to be considered a per-
sonal trespasser." Roberts v. Dean, 187 So. 571, 575 Fla (1939).

12.) Officers admit they were purloining defendant's back pack
and searching without a warrant. They made no attempt
to inform defendant of an intent to arrest. Mr. Pultorak
was conversing with defendant a few feet from him, then
suddenly assaulted defendant with a fire arm.

13.) Under F.R. Crim. P. Rule 4(c)(3)(A) the arresting officer
is required explicitly to inform the defendant of the
offense charged in all instances. "The Fourth Amendment
is designed to prevent, not simply to redress, unlawful
police action." Chimel v. California, 395 US 752, 766;
"The Fourth Amendment proscribes all unreasonable searches
and seizures, and it is a cardinal principle that searches
conducted outside the judicial process, without prior
approval by judge or magistrate, are per se unreason-
able under the fourth Amendment — subject only to
a few specifically established and well-delineated
exceptions." Katz v. United States, 389 US 347, 357; Mincey v.
Arizona, 437 US 390; South Dakota v. Opperman, 428 US 364, 381

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 14 of 32

14.) Counsel J. Toney was forced upon the defendant, against his considered wishes to manage and plead his own cause personally, as "representation" and not as the assistance of counsel guaranteed by the sixth Amendment. Counsel failed to do any of the things he promised the defendant he would do and failed to perform the requisits to mounting a meritous defense. Counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Counsel did not file any motions despite having asked the court for a two month postponement of trial to file inlimine motions, Counsel did not interview any witnesses or subpoena witnesses defendant sought to testify at trial. Counsel did not do any investigaton or any legal research and made no attempt to suppress any evidence such as the interview in I.C.U. He failed to challenge any of prosecutions allegations. If not for Counsel's unprofessional errors the result of the proceeding would have been different. Williams v. Washington, 59 F. 3d 673; 1995 U.S. App. LEXIS 16533 (7th Cir.) No. 94-3378

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT – Page 15 of 32

15.) Counsel's failure to subject the prosecutions case to

meaningful adversarial testing warrants presumption of

ineffectiveness. Bell v. Cone, 535 US 685, 152 L. Ed 2d 914, 927
"Multiple trial errors may form the basis of ineffective
assistance of counsel and do violate due process where
it renders the resulting criminal trial fundamentally
unfair. Chambers, 410 US at 298, 302-303, 93 SCt 1038,
410 US 490 [Also Thomas 273 F.3d at 1179]" Parle v.
Runnels, 505 F.3d 922.

On January 30, 2015 during the in camera hearing Judge Burrell

denied defendant's "MOTION FOR CHANGE OF COUNSEL" based

soley on his opinion without making a record of the bases for

defendant's request and the court's response.
"[A] judge cannot base his disposition of a request for substitution
of counsel on his or her own confidence in the current attorney
and observations of that attorney's previous demonstrations of
court room skill." People v. Marsden 2 Cal. 3d 118, 124; People
v. Lewis (1978) 20 Cal. 3d 496, 498; People v. Munoz (1974) 41 Cal. App.
3d 62; People v. Groce (1971) 18 Cal App. 32, 292, 297. Instead,
the court must inquire on the record into the bases of
defendant's complaints and afford him an opportunity to
relate specific instances of his attorney's asserted inade-
quacy. People v. Molina (1977) 74 Cal App. 3d 544, 548-549."
People v. Hill (1983) 148 Cal. App. 3d 744, 753; 196 Cal Rptr. 382;
1983 Cal App. LEXIS 2350 No, A017621 (1st App. Dist. Div. 4).
"Failure to inquire adequately into a defendant's complaint results
" in a silent record making intelligent appellate review of defendant's
charges impossible, ..., we have no choice but to conclude Marsden
error occurred." Id., at 755. "Marsden error is typically treated as
prejudicial per se, ..." People v. Marsden, supra 2 cal 3d 118, 126.
REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 16 of 32

16.) "The implication of scienter here is as necessary and proper as it was in Morissette v. United States, 342 US 246, 96 L Ed 288, 72 S Ct 240. The Court there read a scienter requirement into a federal larceny statute over the governments objection that the need for scienter should not be implied for a federal offense when the statute that created the offense was silent on the subject, The Court said: "Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act... "... [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from < * pg 568 > which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." Id., at 262-263, 96 L Ed 288. — The same principle applies here. The terms and purposes of § 111 flow from well-defined and familiar law proscribing obstructions of justice, and the provision complements a pattern of state aggravated assault statutes which are uniform and unambiguous in requiring scienter."United States v. Feola, 420 US 671, 710-712, 43 L Ed 2d 541, 95 S Ct 1255. — "... a relevant consideration under § 111. The statute does require a criminal intent, and there may well be circumstances... For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT- Page 17 of 32

16.) (cont.)  In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent. We hold therefore, that in order to incur criminal liability under §111 an actor must enter toin merely the criminal intent to do the acts therein specified." Id., (Feola) at 686.

Mens rea was not alleged either in the indictment or at trial, and is required for conviction. It is clear that defendant had no criminal intent. No motive was even alleged for defendant to have assaulted officers. Andrew Forristel testified before the grand jury Oct. 2, 2014, page 12 lines 17-20; "... the BLM ranger asked Mr. Cole if he was armed, Mr. Cole said he was. In response to that, both of the law enforcement officers drew their weapons."

When the grand jury attempted to investigate the prosecutor acted improperly to dissuade them from performing their historic function of protecting against unfounded prosecutions. Page 21, lines 15-17: "GRAND JUROR: But it would be revellent — relevent in the fact that when they pulled the arms he felt threatened and that's why he pulled his." lines 18-20; "MR. McCOY: Yeah. Let me make this clear first of all. Your role is to determine whether or not there's probable cause to believe these crimes have occurred." line 21: "GRAND JUROR: I understand."

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 18 of 32

1  17.) There exists no evidence to support ranger Pultorak's

3  fraudulent representation that BLM requires the public

5  to verify that a BLM road is not closed before using

7  it. To the contrary: Bureau policy is that "roads are
   generally open to use by the general public; are for use,
9  development, protection, and administration of public lands
   and resources; are not currently designated as public
11 roads. Bureau roads are subject to rules and regulations
   of the Secretary of the Interior, and, although public
13 use is generally allowed, roads may be closed or
   use restricted to fulfill management objectives
15 such as protecting public health and safety, preserving
   resources, or in support of security issues. Bureau
17 roads may also be subject to State and other Federal
   regulations as necessary to protect public health and
19 safety. Reclamations/decommissionings, closures, and
   use restrictions, except for emergency reasons, are
21 identified prior to construction or through the Land
   Use Planning Process," — BLM, Manuel Rel. No. 90-310
23 (Supercedes 9-247) Date 10/21/2011, Roads P. 7.05.

25 18.) To issue warrant after defendant was arrested without probable

27 cause violates Rule 4. United States v. Hughes (1962 W.D.Pa.) 201 F. Supp.
   615, revd. on other grounds (1962 CA3 Pa) 311 F2d 845,
   REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 19 OF 32

19.) "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. This clear constitutional rule has emerged from a series of cases decided here over the last 50 years." Faretta v. California, 422 US 806, 807 (1975).

20.) A "biased trial judge" is 'structural error' and subject to reversal. "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." Edwards v. Balisok (1997) 520 US, 641, 647; Johnson v. United States (1997) 520 US 461, 469; Sullivan v Louisiana, 508 U.S. at 279; Rose v. Clark 478 U.S. 570; Tunney v. Ohio, 273 US 510, 523 (1927)

21.) 26 days after defendant's property was seized without a warrant, ex-post-facto warrant no. 3692 was issued in F14-0267 to create the illusion of having warrant, and the evidence needed by defendant to establish his frame of mind and the motive for the illegal seizure, arrest, and assaults has been suppressed and concealed since June 14, 2014,

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 20 of 32

22.) "Requirements of Rule 3 must be strictly complied with, to afford Fourth Amendment Protection." Brown v. Duggen, (1971) 329 F. Supp. 207.

"In the absense of eminent danger to life and limb a decision regarding search, or seizure is required by a judicial officer to "make an independent determination on the indisputable facts."" Stroble v. California, 343 U.S. 181, 190.

23.) Officer Hardin testified at trial Feb. 3, 2015, page 31, line 9: "Q. What did you observe from your vantage point? A. Well, they were talking. He was --" ... at line 15: "Q. Okay. And what was the tone of his voice during that initial encounter when he broke through the treeline?" "A. Just normal." ... at line 21: "A. He came up and said, "Hey, this is my camp. This is my gear," Or something to the fact that it was his stuff. And he says his name. He says, "You know me." And he asked us kind of not to take his stuff."

Andrew Forristel testified before the Grand Jury Oct. 2, 2014: "[T]he BLM ranger asked Mr. Cole if he was armed. Mr. Cole said he was. In response to that both of the law enforcement officers drew their weapons."

Officers suddenly, without provocation, assaulted the accused with deadly weapons while engaged in a normal conversation.

24.) Paramedic Kyle Rutherford testified before the grand jury page11, lines 12-14 "So, I'm looking at him. He's got a bullet wound under-- below the belly button. And it looked to me like an exit wound out his inner thigh. ..."

The surgeon's report confirms the above observation to be correct,

Government Exhibit 3N shows a bullet strike in the roadway.

All other wounds inflicted had horizontal trajectories. The bullet strike in the roadway was where defendant was standing.

Ranger Paltorak stated in his interview and testified at trial "I said, do you have any weapons on you? He said "Yes." I said, "Turn Around," "No I'm not gonna turn around." I about took a step forward I said, "Turn around now." He yelled very loudly, "I'm not going to turn around now." And then I saw his right hand go to his waist band. Drew out something silver. Continue drawing it out. And I see a gun being raised toward me. At that point I duck, startin to draw my weapon. I hear a loud boom in my left ear. And my left shoulder I feel a twinge. Um I raise my weapon up. ..."

Officer's statements conflict such that one is necessarily false.

1.  26.) "The right to have the grand jury make the charge on its own judgment is a substential right which cannot be

3.  taken away with or without a court amendment."
    "The very purpose of the requirement that a man be indicted by

5.  grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either

7.  prosecuting attorney or judge," Stirone v. United States, 361 US 212, 218, 219, 4 L Ed 2d 252, 80 S Ct 270.

9.  "A grand jury's investigation is not fully carried out until every available clue has been run down and all its witnesses

11. examined in every proper way to find if a crime has been committed; its investigation proceeds step-by-step

13. and a false statement by a witness, such as Stone (or Andrew Forristel) in any step, even though not relevant in

15. an essential sense to the ultimate issues pending before the grand jury, may be material in that it tends to

17. influence or impede the course of the investigation." Carroll v. United States, 16 F.2d 951 (2d Cir 1927)

19. "[M]ateriality of statements made in a grand jury investigation may more readily appear than that of similar evid-

21. ence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which

23. will enable the grand jury to determine whether formal charges should be made against some one rather than prove mat-

25. ters directly at issue." United States v. Alu, 246 F.2d 29 (2d Cir. 1957)

27. "It is the duty of a prosecutor presenting a case to a Grand Jury not to inflame or otherwise influence the jurors against any person."

1  "The Grand Jury exists as an integral part of Anglo-American
   jurisprudence for the express partiality or assuring that
3  persons will not be charged with crimes simply because of
   the zeal, malice, partiality or other prejudice of the
5  prosecutor, the government, or private persons. United
   States v. Wells, D.C.D. Idaho 1908, 163 F. 313, 324," United
7  States v. DiGrazia, 213 F. Supp. 232; 1963 US Dist. LEXIS
   6838 No. 62 CR 16

9  "When the Framers of the Bill of Rights directed in the Fifth Amend-
   ment that "No person shall be held to answer for a capital, or otherwise
11 infamous crime, unless on a presentment or indictment of a Grand
   Jury," they were not engaging in a mere verbal exercise.
13 The importance of avoiding undue reliance upon hearsay before
   a grand jury is heightened by this circuit's view that an
15 indictment constitutes a finding of probable cause and
   avoids the need for a preliminary hearing under F.R.Cr.P. 5(c).
17 Sciortino v. Zampano, 385 F.2d 132 (2 cir 1967).
   "[W]e have insisted that, even though "there is no affirmative
19 duty to tell the grand jury in haec verba that it is listening
   to hearsay." United States v. Malofsky, 388 F.2d 288, 289
21 (2 cir) cert. denied, 390 U.S. 1017, 88 S Ct. 1273, 20 L. Ed. 2d 168
   (1968), the grand jury must not be "misled into thinking it
23 is getting eye-witness testimony from the agent whereas
   it is actually being given an account whose hearsay nature
25 is concealed. ..." United States v. Leibowitz, 420 F.2d 39,
   42 (2 Cir 1969)."— The Government contends more broadly that,
27 ..., the grand jury should have known he ... could not have seen
   or heard the details ... to which he testified with such specivity.

1. Grand jurors do not have this degree of familiarity with law enforcement
   techniques, and it would have been so easy for the Assistant
3. United States Attorney to tell them what they are now
   claimed to have known. Moreover, this explanation does not
5. at all explain Two hill's { 471 F. 2d 1137 } testimony about the
   chase, the throwing of the packets, and Estepa's arrest, ...
7. We have been willing to allow ample, many doubtless think too
   ample, latitude in the needless use of hearsay, subject only
9. to two provisos -- that the prosecutor does not deceive grand
   jurors as to "the shoddy merchandise they are getting so
11. they can seek something better if they wish," United States
    v. Payton, supra, 363 F 2d at 1000 (dissenting opinion), or
13. that the case does not involve "a high probability that
    with eye witness rather than hearsay testimony the
15. grand jury would not have indicted." United States v.
    Leibowitz, supra, 420 F 2d at 42" United States v Estepa,
17. 471 F. 2d 1132; 1972 U.S. App. Lexis 6065 Nos. 157, 377 (2 Cir),
    26.) (cont.)
19. Due process was violated and process was abused by the

21. use of the grand jury to perform the function required to

23. be performed by a magistrate judge under F.R.Cr.P. Rule

25. 5(a)(1)(A) and 5(c) and 18 U.S.C. §§ 3060, 3161 to find

27. "probable cause", using hearsay and abridging investigation.

1  26.) The proper function of the grand jury was impeded,

3  then dissuaded by excessive and unnessesary use of hear-

5  say, undue rebukes, and admonishments of the prosecutor;

7  who improperly and wrongfully asserted that the sole

9  function of the grand jury is to determine if probable

11  cause exists and return indictments being sought. He

13  insinuated that the grand jury was acting inappropriately

15  by asking questions and investigating as they deemed

17  appropriate. Had the grand jury questioned the two officers,

19  who were witnesses involved in the shooting incident, and

21  whose testimonies are utterly irreconcilable and conflict

23  to the point that one is necessarily false, it is likely

25  that perjury charges would have been instituted and that

27  no indictment would have been returned against the defendant.

27.) "The government contends that the practice of relying on hearsay was authorized by United States v. Costello, 350 U.S. 359, 76 S Ct 406, 100 L Ed 397 (1956) aff'g 221 F 2d 688 (2d Cir. 1955),   Costello held that an indictment was not invalid merely because it was based on hearsay. ... In a burst of exuberance at the release from pre-Costello restrictions, federal prosecutors appear to have made substantial use of the technique typified by the instant case. —— This practice has come under substantial attack in this circuit. As Judge Waterman put it: "excessive use of hearsay in the presentation of government cases to grand juries tends to destroy the historical { 282 F. Supp. 349 } function of grand juries in assessing the likelyhood of prosecutorial success and tends to destroy the protection from unwarranted prosecutions that grand juries are supposed to afford to the innocent. Hearsay evidence should only be used when direct testimony is unavailable or when it is demonstrably inconvienient to summon witnesses able to testify to facts from personal Knowledge," United States v. Umans, 368 F. 2d 725, 730 (2d Cir. 1966), cert. granted 386 U.S. 940, 87 S. Ct. 975, 17 L. Ed. 2d 872, (cites omitted) — (" consequence of this procedure is to make it impossible for the defense, by demanding production of the grand jury minutes at the trial, to use contradictions and misstatements of the principal witness under oath to impeach him.") United States v. Payton, 363 F 2d 996, 999-1001 (2d Cir. 1966), ,, Cinquegrano v. United States, 379 U.S. 960, 85 S Ct 647, 13 L. Ed 2d 555 (1965) ("The government ought not be allowed, by having its principle witness speak to the grand jury through the voice of another, to deprive a defendant of his right to impeach by contradiction."). There is no reason to believe that the Supreme Court in Costello intended to encorage the practice before grand juries of deliberately relying solely on testimony of witnesses without any personal knowledge when better evidence is readily at hand." United States v. Arcuri, 282 F. Supp 347, 1968 U.S. Dist. LEXIS 8207 No 66 CR 454, Eastern District of New York.

REPLY TO RESPONSE TO MOTION FOR Transcript - Page 27 of 32

"The practice - as in the instant case - of relying on hearsay rather than on the testimony of eye-witnesses is pernicious for two reasons. First, it habituates the grand jury to rely upon "evidence" which appears smooth, well integrated and consistant in all respects. Particularly because neither cross-examinations nor defense witnesses are available to them, grand jurors do not hear cases with the rough edges that result from the often halting, inconsistent and incomplete testimony of honest observers of events. Thus, they are unable to distinguish between prosecutions which are strong and those which are relatively weak. All cases are presented in an equally homogenized form. A grand jury so conditioned is unable to adequately serve its function as a screening agency. It cannot exercise its judgment in refusing to indict in weak cases where, technically, a prima facie case may have been made out. It is, moreover, unlikely to demand additional evidence. The second reason the practice is undesirable is that it prevents the defendant from utilizing grand jury testimony in cross-examining witnesses who will testify at the trial. Since no witness the government intends to use is called before the grand jury, it avails a defendant little to have the grand jury testimony furnished to him at trial." Dennis v. United States, 384 U.S. 855, 868-875, 86 SCt 1840, 16 L Ed 2d 973 (1966) (where interest in secrecy is minimal and grand jury minutes would be helpful, it is reversible error not to order them disclosed); United States v. Youngblood, 379 F. 2d 365, 367, 370 (2d Cir 1967)..., Arcuri, opinion of Judge Weinstein, paragraph 8.

Andrew Forristel, who wrote the complaint, was the sole hearsay "witness", and every word of the above opinion holds TRUE.

## CONCLUSION

FBI agent Andrew Forristel testified as the only "witness";
speaking without personal knowledge as the voice for the
two officers involved in the shooting, who were readily
available to testify, and whose statements and testimony
do not agree. This made it impossible to use contradictions
and misstatements of the principal witnesses under oath
to impeach them, depriving defendant of his right to im-
peach by contradiction. The smooth, well integrated, and
consistent in all respects hearsay "testimony", where
neither cross-examinations nor defense witnesses were
available to the grand jurors removed the rough edges
and incomplete testimony of honest observers. Material facts
were withheld and incorrect statements were made and
claimed to be fact. The Fifth Amendment was violated by
altering the grand jury's historic role as a protector of
citizens against unfounded criminal prosecutions and against
arbitrary and oppressive government action. United States
v. Williams, 504 US 36, 46, 48-50, 56, 118 L Ed 2d 352, 112 SCt 1735;
United States v. Gold, 470 F. Supp. 1336; 1979 US Dist. LEXIS 12906 ;
Stirone v. United States, 361 US 212, 217, 4 L Ed 2d 252, 80 SCt 270,

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 29 of 32

Officer Hardin very clearly stated numerous times in his interview on June 17, 2014 that both officers drew their guns the instant defendant answered the questions as to if he was armed... that he saw the ranger draw his gun: Page 6, line 269 - ""Are you armed?" and the guy says, "Yes, I am," and I immediately drew my weapon, and I saw the ra - the BLM Ranger drew his and we ordered, and we said, "Put the gun down ..."... lemme back up just a little bit - (Page 7, line 274) when, uh, we asked if he was armed we both - we both drew, I saw the Ranger draw his weapon, and the Ranger started back towards the trail a little bit, kinda backin up a little bit."... (Then at line 282') "..., and as soon as he pointed it out, I heard shots goin' and I believe he fired first, the - the suspect, I can't - I can't be - but as soon as he pointed it out and was dead on target shots started fr - flyin', and I just kinda - I shot at him, multiple times, ...."

Page 31, lines 1333-34: "A:  And I saw the gun, and at that point, I don't believe the BLM Officer said anymore he - he - we both drew and he backed up."

Counsel J. Toney failed/refused to ask Officer Hardin about the bullet strike in the roadway (see page 22 of this REPLY), about how he might explain the vertical wound on defendant, and/or Exhibit 3N evidence.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 30 of 32

Counsel J. Toney refused to ask any of the same questions of Ranger Pultorak or of ballistics expert Sergeant Day, and he failed to obtain the testimony of a ballistics expert as he had repeatedly promised to do. Now, the prosecution claims that a gun powder residue test and ballistic analysis will show no new facts. At trial the court would not allow the defendant to address the court or speak. The trial was rendered fundamentally unfair by the failure to provide discovery, suppression of material evidence, ineffective counsel, denial of access to legal materials, biased judge, and the silencing of defendant. The indictment was obtained using exclusively hearsay when better evidence was readily available, and by prosecutorial misconduct to deter the grand jury from investigating. The two officers testimonies do not agree with each other and do not agree with statements made during interviews. The indictment should be quashed and the verdict rescinded.

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT - Page 31 of 32

Defendant seeks the return of his property, especially his
dentures, his legal research, his laptop computer, his
personal papers, his identification and occupational
certificates, court papers, and the evidence that he
had in a black canvas bag that is Evidence Entry 120.
Defendant seeks discovery which has been withheld
from him in violation of his Sixth Amendment right,
and constituted a severe breach of trust by counsel
J. Toney having withheld and concealed it from him.
Defendant is factually innocent of the charges against
him and there is insufficiency of evidence to sustain
a conviction. 18 U.S.C. § 924 requires prior convictions
and cannot lawfully be imposed on defendant. The U.S.
Supreme Court ruled in Ladner that only one assault can
be charged. Counts 2 and 3 must be dismissed as a matter
of law. The indictment is interdicted and should be quashed.
Respectfully Submitted on 8/17/15    Brent D. Cole

REPLY TO RESPONSE TO MOTION FOR TRANSCRIPT- Page 32 of 32

1  **DONALD E. LOWN, JR.** (SBN 119189)
   **Nevada County Public Defender**
2  **JODY SCHUTZ** (SBN 209507)
   **Deputy Public Defender**
3  224 Main Street
   Nevada City, CA. 95959
4  (530) 265-1400

5

6  Attorneys for Defendant
   **BRENT DOUGLAS COLE**

7



APPENDIX AA
Page 1 of 9

8

9                    **IN THE SUPERIOR COURT NEVADA CITY DIVISION**

10                     **IN AND FOR THE COUNTY OF NEVADA**

11

12  **THE PEOPLE OF THE STATE OF**
13  **CALIFORNIA,**                          Case No. F14-000267

14                    *Plaintiff,*            **INFORMAL REQUEST FOR**
                                              **DISCOVERY (P.C. §1054.5(b))**
    vs.
15

16  **BRENT DOUGLAS COLE,**

17                    *Defendant.*

18  TO:   CLIFFORD  NEWELL,  THE  DISTRICT  ATTORNEY  OF  NEVADA
19  COUNTY, AND ANNA FERGUSON, ASSISTANT DISTRICT ATTORNEY:

20       **NOTICE IS HEREBY GIVEN**, pursuant to Penal Code Section 1054.5(b),

21  Izazaga vs. Superior Court, (1991) 54 Cal. 3d. 356, and Brady v. Maryland (1963) 373

22  U.S. 83, and their progeny, that BRENT DOUGLAS COLE, by and through counsel, is

23  requesting you to provide disclosure and production of the following materials and

24
    information immediately and within fifteen days of the date of service of this request.
25

26  1. A copy of the stolen vehicle report for the 2003 Kawasaki motorcycle, VIN:

27     JKAKLEAA193DA03977.

28

*(Left margin, vertical text):* DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER   224 MAIN STREET   NEVADA CITY, CA 95959

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

2. A copy of the registration information for the Honda Motorcycle, VIN: XL3502005768.

3. A copy of any/all FBI's "Evidence Collection/Response Team reports, including but not limited to June 14, 2014; June 15, 2014 and June 18, 2014.

4. Any and all video recordings made of any and all alleged crime scenes in this matter, including but not limited to:

   (a) Video from CHP Air 21 (E-312);

5. Any and all photographs made of any and all alleged crime scenes, victims suspects and responding officers, fire and medical personnel in this matter, including but not limited to the following:

   (a) Crime scene pics from CHP (E-306);

   (b) Crime scene pics from CHP (E-307);

   (c) Pics of Uniforms and Duty Belts & Equipment (E-308);

   (d) Pics of BLM Truck at SPU (E-309);

   (e) Pics of Officer Hardin at Hospital by Sgt. Bates (E-310);

   (f) Pics of scene from H-20 Officer Emery (E-311);

   (g) Photos of Officer Hardin at SNMH from CHP (E-313);

   (h) Photos of scene from CHP AIR-2 (E-316);

   (i) Pics of crime scene taken by FBI Disc 1 of 2 (E-323);

   (j) Pics of crime scene taken by FBI Disc 2 of 2 (E-324);

   (k) Pictures of the following evidence from the scene:

       a. Casting of shoe print in the dirt (E-29);

       b. Dirt impression of bullet strike (E-32);

       c. Dirt impression of bullet strike (E-35);

       d. Dirt impression of bullet strike (E-37)

2

e.  Picture of Manzanita branch struck by a round (E-47);

6.  A copy of the Nevada County Crime Scene Log from this incident (E-303);

7.  A copy of the BLM warning sticker located on toolbox (E-21);

8.  A copy of the bank print-out in pocket contained in the hoodie (E-38);

9.  A copy of the contents of the "log book from BLM truck" (E-302);

10. Copies of any/all video and audio recordings of contacts and interviews related to this investigation, including but not limited to:

(a) A copy of the video of the interview of Michael Radon (E-318);

(b) A copy of the video of the interview with Kevin Radon (E-319);

(c) A copy of the audio recording of interview with Rhonda Rose (E-331);

(d) A copy of the CD with interviews of NSJ Fire employees – Montelius, McLaughlin, Olson, Lingen and Johnson (E-201);

(e) A copy of the CD with interviews of Rutherford, Sorenson and Hurtado (E-203).

11. Any and all statements of the Defendant, in any form, including but not limited to:

(a) Audio recording of service of DNA search warrant on Cole (E-320);

(b) A copy of the thumb drive with audio from Forest Service Traffic Stop (E-325);

(c) A copy of all recorded jail calls and visits with Brent Douglas Cole.

(d) A copy of the video of Cole's Ch.10 interview (E-202).

12. A copy of the "data from Nokia phone, " the subject of Search Warrant 3670 (E-80; SW-1);

13. Copies of all "PDF" files listed in "Media List Report," including but not limited to:

(a) 2014-06-26 stored vehicle entry; Sullivan;

(b) 2014-06-29, CFS detail, Tyner (copy supplied is illegible from printing/copying);

(c) PDF file containing 23 DMV printouts for license plates located near the scene (copy supplied is illegible from printing/copying);

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

APPENDIX AA
Page 2 of 9

3



DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

14. Copies of the DVD/CDs from activated "in-car cameras" from any responding units.

15. A copy of any/all dispatch calls and CAD radio logs both the audio recordings **and** corresponding print-outs, for responding agencies – CHP, NCSO, CHP, BLM, FBI and  ambulance and flight dispatch records from the Sierra Nevada Memorial Ambulance Crew, North San Juan Fire District and CHP, including but not limited to:

    (a) CHP dispatch audio file from 06/14/14, (E-321)

    (b) Wave file of CHP dispatch log, (E-322);

16. Copies of any/all pictures or schematic drawings made by witnesses, including but not limited to the following:

    (a) A copy of the CHP MAIT Team's diagram of the scene.

    (b) A copy of the "crime scene sketch by Officer Hardin;" (E-304);

    (c) A copy of the "crime scene sketch by Ranger Pultorak;" (E-305);

17. Any and all reports, original or supplemental, notes, documents, diagrams, memoranda, and records, however recorded or preserved, prepared by Detectives/Officers/Deputies from the Nevada County Sheriff's Office including but not limited to Mike Sullivan, Brandon Corchero, Jeff Tyner, Rusty Greene, Dan Saunders, Nate Hutson, Andrew Liller,

18. Any and all reports, original or supplemental, prepared by the District Attorney investigators in this case, including but not limited to Tom Swisher and Randy Billingsley.

19. Any other reports, notes, documents, diagrams, memoranda and records, however recorded or preserved, prepared by any police officer, or at a police officer's direction, in connection with this incident, including, but not limited to, the investigating officers' log, defendant's booking sheet and defendant's arrest sheet and booking photo.  All notes made by any police officer in connection with this case shall be

APPENDIX AA
Page 5 of 9

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

preserved and a copy provided to defense counsel.  It is further requested that the prosecution immediately notify all police officers involved in this investigation to preserve any original notes they may have made during this investigation.   This request applies directly to the following individuals identified in the police reports:

(a) CHP:

   (1) Fulke Lillyquist;

   (2) Steve Ingram;

   (3) Matt Whiting;

   (4) Tim Sheehan;

   (5) Steve Ruppert;

   (6) Darrell Nishimi;

   (7) Jason Hamilton;

   (8) Steve Day;

   (9) Robert Gillerstrom;

   (10)   Jeff Arnswald;

   (11)   Rod Ellison;

   (12)   Cory Shell;

   (13)   Mark Zelhart;

   (14)   Earl Cummings;

   (15)   C.M. West.

(b) NCSO:

   (16)   Mike Sullivan;

   (17)   Andrew Liller;

   (18)   Dan Saunders;

   (19)   Nate Hutson;

APPENDIX AA
Page 6 of 9

(20)   Esteban Salinas.

(c) FBI:

(21)   Marcus Knutson;

(22)   Lee Myers;

(23)   Keli Unknown last name;

(24)   Linda Frazier;

(25)   Scott Medlin;

(26)   George Whitfield;

(27)   Monica McGuire;

(28)   Michele Ramirez;

(29)   David Ricks;

(30)   Nichole Heideman;

(31)   Andrew Forristel;

(c) BLM:

(32)   Kevin Harrison;

(33)   Ed Delmolino;

(34)   Joe Andrews;

(d) MEDICAL/FIRE:

(35)   Jim Turner;

(36)   Tom Browning;

(37)   Paul Castiglioni;

(38)   Shayne McLaughlin;

(39)   Kyle Rutherford;

(40)   Matthew Calcutt;

(41)   Stefan Montelius;

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

(42)   Shawn Olson

(43)   Doug Lingen;

(44)   Boyd Johnson;



APPENDIX AA
Page 7 of 9

(45)   Ricky Hurtado;

(46)   Jefferson Wilson.

(e) Douglas County Special Reserve K-9 Deputy Al Trimarchi.

(f) California Department of Fish and Game – Jerry Karnow.

20. All medical records from the treatment of all victims and/or defendant.

21. Any and all reports, notes, memoranda, audio tapes, video tapes, and/or any other manner of recording of the FBI Latent Fingerprint Analysis.

22. Any and all reports, notes, memoranda, audio tapes, video tapes, and/or any other manner of recording of the FBI DNA Analysis.

23. Any and all reports, original or supplemental, prepared by any FBI employee in regards to this case, including but not limited to:

(a)   Reports of all analyses performed;

(b)   Evidence test analyses even where no report is prepared;

(c)   Original bench notes, worksheets and photos taken during any and all evidence analyses;

(d)   Lab protocols of any and all tests performed in relation to this matter.

24. All reports, notes, documents memoranda and records, however recorded or preserved relating to any and all "tips" received by law enforcement officers in relation to this case.

25. The names and addresses of persons the prosecutor intends to call as witnesses at preliminary hearing and at trial.

26. All relevant real evidence seized or obtained as a part of the investigation of the

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

7

offenses charged.

27. Any and all <u>Engstrom</u>, <u>Castro</u> and/or <u>Wheeler</u> information regarding *any and all* witnesses the People intend to call at Preliminary Examination and/or at the Trial of this matter.

28.  Any exculpatory evidence.

*APPENDIX AA*
*Page 8 of 9*

29. To the extent not requested above – relevant written or recorded statements of witnesses or reports of the statements of witnesses including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons.

30. To the extent not requested above –  all dispatch logs from any and all police, fire, ambulance agencies involved in responding to and/or investigating this incident.

31.  To the extent not requested above – all 911 calls, including any transfer of those calls to different agencies.

32. To the extent not requested above – all dispatch tapes, in real time, and unedited.

33. The names, affiliations and backgrounds of all officers/investigators involved in the investigation, evidence collection, detentions, and arrests, of the incident.

34. All reports not yet produced.

35. To the extent not requested above – all original notes, sketches, diagrams, dictation, even if no report was generated.

36. To the extent not requested above – all worksheets with original notes on them.

37. Any and all other discoverable evidence concerning this case.

This is a continuing request through the completion of trial.  If such information becomes available at a future time, it is deemed requested hereby and without further request and should be disclosed immediately (Penal Code Section 1054.7)

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

8

1  As to the materials requested to which the defense is entitled pursuant to case law

2  and other statutory mandates, the prosecution has the obligation to immediately provide

3  these materials outside, and independent of, the statutory scheme, (<u>Izazaga vs. Superior</u>

4  <u>Court</u> (1991) 54 Cal.3d 356, 378) and this is a courtesy request for those materials.

5

6  Dated: 7/28/14

7

8  Jody Schutz
   Deputy Public Defender

9  Attorney for Defendant

10  BRENT DOUGLAS COLE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX AA
Page 9 of 9

DONALD LOWN, NEVADA COUNTY PUBLIC DEFENDER
224 MAIN STREET
NEVADA CITY, CA 95959

9

PROOF OF SERVICE - UNITED STATES OF AMERICA v. BRENT DOUGLAS COLE

| | |
|---|---|
| Party: Brent Douglas Cole / x-635066 | Case no.: 2:14-cr-00269-GEB |
| Sacramento County Main Jail 6W329 | |
| 651 "I" St., Sacramento, CA 95814 | |
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF CALIFORNIA | Judge: GEB |
| In Propia Persona: | Dept: 13th Floor |

On (date) Aug. 17, 2015 at 10:00 AM I served the following:
1.) "REPLY TO 'UNITED STATES' RESPONSE TO DEFENDANT COLE'S
    MOTION FOR TRANSCRIPT, ANCILLARY SERVICES AND
    DISCOVERY EVIDENCE (ECF #5)" — 32 pages
    a.) APPENDIX AA "INFORMAL REQUEST FOR DISCOVERY"-9 pgs.
With a copy of this "PROOF OF SERVICE" on the following entities:
1.) Clerk of the Court, United States District Court Eastern
District of California, 501 "I" St., Room 4-200, Sacramento,
CA 95814-2322
2.) Assistant U.S. Attorney, Heiko P. Coppola, 501 "I" St.,
Suite 10-100, Sacramento, CA 95814-2322


I hereby certify upon penalty of perjury that: I am over 18
years old; I personally checked and placed the above
listed documents into an envelope addressed to the entities
listed above and sealed them, then deposited them into
the prison mail system with sufficient postage
Executed on August 17, 2015          Brent D. Cole / x-635066
    at Sacramento, California          signature of Declarant
                                       Brent D. Cole
                                       Printed name