UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BRENT DOUGLAS COLE,<br><br>    Defendant. | No.  2:14-cr-00269-GEB<br><br>**ORDER RE APPLICATION OF OBSTRUCTION OF JUSTICE ENHANCEMENT** |

Defendant objects to the Probation Officer's recommendation that he receive a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1(c). Probation recommends this enhancement be applied based on perjured trial testimony. (PSR ¶ 17.) Defendant argues the "accusation that [he] was not truthful on the stand . . . is . . . unfounded and unsubstantiated . . . ." (Def.'s Mot. Correction of Pre-Sentence Report ("Mot.") 24:1-5, ECF No. 134.)

The government rejoins that Defendant "has earned the two level increase . . . for obstruction of justice[,]" arguing in its sentencing memorandum and response to Defendant's motion to correct the PSR:

> [T]he jury's verdict is a clear rejection of [Defendant's] testimony as being neither true nor credible.
>
> . . . .

1

> Defendant testified that he . . . did not draw his weapon until the officers began shooting him first, and that his actions were in self-defense. He also testified that [Bureau of Land Management] Ranger Pultorak repeatedly threatened him during the traffic stop. This testimony was directly contradicted by Ranger Pultorak and [California Highway Patrol] Officer Hardin. Defendant also stated that Ranger Pultorak was wearing a brown poncho on the day of the shooting. Defendant provided a detailed description of the design and color of the poncho. He even remembered that the poncho had tassels at the bottom. Ranger Pultorak denied owning or wearing such an item on the day of the shooting.
>
> More to the point, since his conviction defendant continues his narrative that he acted in self-defense, that Ranger Pultorak "gut shot" him first, that Ranger Pultorak threatened him during the traffic stop, that Ranger Pultorak lied etc. . . . This court may also consider defendant's attempts to influence sentencing through his narrative in finding that defendant obstructed justice, if the court concludes that the narrative put forth by the defendant is false. USSG § 3C1.1.

(Gov't Resp. to Def.'s Mot. to Correct PSR & Sentencing Mem. 13:15-14:16, ECF No. 145.)

The government is correct about Defendant's perjurious trial testimony and his sentencing antics. For example, in Defendant's filing docketed as number 147, he states: "[Pultorak] act[ed] in excess of his jurisdiction to seize property belonging to the defendant and others. If his concern had been defendant camping, he would have had him take his things. Defendant approached the officers because they were engaged in stealing his property . . . ." (Def.'s Reply to Gov't Resp. to Def.'s Mot. for Transcript & Ancillary Services 11:14-24, ECF No. 147.)

Further, in Defendant's Motion for Correction of Pre-Sentence Report, he states:

> There was only one motorcycle in the campsite. N.C.S.O. moved the Kawasaki into the camp after the shooting. The information as to the statements of Grass Valley dispatch is correct, but it was falsified [elsewhere, including] . . . at trial. The BLM log shows that Pultorak decided to impound the motorcycles before he called in.

(Def.'s Mot. 3.)

These statements evince that Defendant willfully attempted to obstruct the administration of justice by obviously lying and concocting a false story that he was within his rights when he confronted Pultorak and Hardin during what he appears to characterize as an illegal investigation.

U.S.S.G. § 3C1.1 states, in relevant part:

> If . . . the defendant willfully . . . attempted to obstruct . . . the administration of justice with respect to the . . . prosecution[] or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction . . . , increase the offense level by 2 levels.

Application Note 4 to this enhancement provides a non-exhaustive list of conduct to which it applies, which includes "committing . . . perjury[,]" and "providing materially false information to a judge."

"For perjury to be deemed obstruction, the . . . court must find that: '(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent.'" United States v. Castro-Ponce, 770 F.3d 819, 822 (9th Cir. 2014) (quoting United States v. Garro, 517 F.3d 1163, 1171 (9th Cir. 2008)).

3

1  Application Note 6 to this enhancement defines "material" as
2  follows: "'Material' evidence, fact, statement, or information,
3  as used in this section, means evidence, fact, statement, or
4  information that, if believed, would tend to influence or affect
5  the issue under determination."
6        Probation recommends the obstruction of justice
7  enhancement be applied on the following basis: "The defendant
8  took the stand at trial and was not truthful. The defendant lied
9  to the jury, indicating he was fully compliant with the officers'
10 commands, and they (the officers) attacked him [without
11 provocation]. Further, the defendant testified he acted out of
12 self-defense." (PSR ¶ 17.) The referenced statement that
13 Defendant "indicat[ed at trial that] he was fully compliant with
14 the officers' commands" does not accurately reflect Defendant's
15 trial testimony.
16       Defendant testified at trial that when he entered the
17 area of the campsite, he told Ranger Pultorak he returned to
18 retrieve his property. He testified that Pultorak removed his
19 handcuffs and twirled them on his finger to taunt him. Defendant
20 further testified that Pultorak asked him if he had any weapons
21 and directed him to turn around. Defendant testified that he said
22 he was armed, but responded: "I'm not turning around now."
23 Defendant also testified that after he informed Pultorak he was
24 armed, Pultorak drew his weapon immediately and "gut shot" him.
25 In essence, Defendant testified that was acting in self-defense
26 and only fired his gun once he was shot.
27       The trial record establishes that Defendant gave
28 willfully false testimony on the central issue in the case

4

whether he drew and fired his pistol in self-defense. Contrary to Defendant's testimony, the trial record evinces that Ranger Pultorak and Officer Hardin were investigating reported stolen property located in the campsite when Pultorak heard rustling in the brush from an area where he did not expect a person to be. In response to that noise, Pultorak said: "Hello, police" twice. Defendant responded: "Yuh, it's me, you dealt with me earlier; I'm just coming to get my stuff." Pultorak asked Defendant, "Do you have any weapons?" Defendant said he was armed, and Pultorak told him to turn around. Defendant responded "I'm not turning around now," and Defendant exposed his pistol as Defendant assumed what was characterized as a "bladed stance"; Pultorak saw Defendant's right leg and foot move to Defendant's rear, and his right hand head to his waistband where his gun was holstered;[1] Pultorak was in the process of backing up away from Defendant and drawing his weapon when he felt a twinge in his left shoulder; Pultorak had been shot.

CHP Hardin testified that he heard Defendant say, "Hey this is my camp, this is my gear. Don't take my stuff." Hardin heard Pultorak ask, "Are you armed?" and Defendant pulled his jacket back, revealing a gun in a holster. Hardin further testified that Pultorak pulled out his handcuffs and Defendant said, "You're not putting those on me" and assumed a bladed stance, left hand out, right hand going toward his waist. Pultorak yelled at Defendant to "drop the gun, drop the gun,"

---

[1] Defendant had a safety strap on his holster that secured his pistol in the holster. After he left his vehicle for the purpose of walking through the forest to reach the campsite, he unsnapped that safety strap, thereby readying his pistol for removal from his holster.

backing away. Defendant held his stance and pointed the gun. As soon as Defendant extended his gun, Hardin heard a shot.

In response, both Pultorak and Hardin returned fire. Defendant fired multiple rounds, striking Pultorak in the left shoulder and Hardin in a leg.

Pultorak's actions in attempting to detain Defendant during his and Hardin's investigation concerning the reported stolen property were lawful under the circumstances, given Defendant's conduct and demeanor and Pultorak's stated concerns during the trial that the two other men whom had been with Defendant earlier may also have been approaching the campsite. See generally, Alexander v. Cnty. of L.A., 64 F.3d 1315, 1320 (9th Cir. 1995) (discussing when pointing a weapon at and/or handcuffing a person is permissible to eliminate the possibility of an assault while officers are engaged in investigative functions).[2]

Here, the trial record makes evident that Defendant failed to obey the lawful directives Pultorak gave him, and Defendant violently resisted being detained so Pultorak and Hardin could continue with their investigation; Defendant was not acting in self-defense. I disbelieve Defendant's trial testimony to the contrary. The falsity of Defendant's testimony is further evidenced by the statement Defendant gave to law enforcement investigators while he was in hospitalized for medical

---

[2] Defendant raises a Second Amendment objection, indicating that Ranger Pultorak's actions in attempting to detain him violated his right to bear arms, i.e. the gun he possessed. However, his right to bear arms was not at issue in this case; the issue is the reasonableness of Pultorak and Hardin's actions in connection with their investigation of a crime.

treatment.³ In his June 16, 2014 interview, Defendant stated he was convinced Pultorak was going to shoot him so he pulled his firearm to make Pultorak back away from him. Defendant also stated in his interview that he "just freaked" and fired a total of six rounds. When asked during the interview if he thought it was wrong to shoot Pultorak and Hardin, Defendant replied, "yes."

Therefore, I find by a preponderance of the evidence that Defendant testified falsely at trial. See United States v. Armstrong, 620 F.3d 1172, 1176 (9th Cir. 2010) ("The sentencing judge need only find by a preponderance of the evidence that the defendant committed perjury.").

Further, I find by a preponderance of the evidence that Defendant's false testimony was material in that if believed it would have affected the jury's determination of his guilt, and that it was willful; his false testimony was not the "result of confusion, mistake, or faulty memory." United States v. Jimenez, 300 F.3d 1166, 1170 (9th Cir. 2002). "Since [the trial record evinces] that [the defendant] was [not acting in self-defense], he could not have been mistaken regarding [that issue], and the question of whether he [acted in self-defense] was [a] central issue in this case". United States v. Villasenor-Chavez, 560 F. App'x 653, 656 (9th Cir. 2014) (affirming application of obstruction of justice enhancement). Defendant's elaborate false testimony that Pultorak was wearing a brown, tasseled poncho at the time of the incident further demonstrates Defendant's intent

---

³ Defendant asserts he was under the influence of medication during this interview. However, Investigator Billingsley testified at trial that Defendant was lucid, appeared to understand the questions he was asked, never expressed any confusion, and did not indicate that his medication was affecting his memory of the incident.

in testifying falsely. He concocted a story to try to obtain a not guilty verdict.

I also find by a preponderance of the evidence that Defendant has willfully continued to present his false version of events to me in an attempt to influence his sentencing, and that the false information is material. If believed, the false information would tend to affect Defendant's sentence.

For the stated reasons, a 2-level enhancement for obstruction of justice is applied.

This order shall be appended to any copy of the PSR made available to the Bureau of Prisons in accordance with Federal Rule of Criminal Procedure 32(i)(3)(c).

Dated: August 28, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge