IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF CALIFORNIA


  UNITED STATES OF AMERICA,

                Plaintiff,
                                      Case No. 2:14-cr-00269
          vs.
                                      Sacramento, California
  BRENT DOUGLAS COLE,                 August 28, 2015
                                      9:00 a.m.
                Defendant.
  _____ /




                        JUDGMENT AND SENTENCE
               BEFORE THE HONORABLE GARLAND E. BURRELL
                 UNITED STATES DISTRICT SENIOR JUDGE



  APPEARANCES:

  For the Government:          BENJAMIN B. WAGNER
                               UNITED STATES ATTORNEY
                               501 I Street, Suite 10-100
                               Sacramento, California 95814
                               BY:  HEIKO P. COPPOLA
                                    Assistant U.S. Attorney



  For the Defendant:          BRENT DOUGLAS COLE
                               Appearing pro se




  Court Reporter:             DIANE J. SHEPARD, CSR 6331, RPR
                               Official Court Reporter
                               501 I Street, Rm 4-200
                               Sacramento, California 95814
                               (916) 554-7460

  Proceedings reported by mechanical stenography, transcript
  produced by computer-aided transcription.

1          THE CLERK:  Calling 14-269, United States versus Brent

2     Cole.

3          THE COURT:  State your appearance?

4          MR. COPPOLA:  Good morning, Your Honor.  Heiko Coppola

5     on behalf of the United States.

6          THE COURT:  Mr. Cole is present.

7        I called this matter at this time because I received

8     information from the courtroom deputy that the prosecutor spoke

9     to Mr. Cole, and Mr. Cole is missing a document -- or least he

10    said he was missing a document.

11         MR. COPPOLA:  That is correct, Your Honor.

12         THE COURT:  Do you have a copy?

13         MR. COPPOLA:  I do, Your Honor, and I will provide

14    that to Mr. Cole at this time.  And the document was the United

15    States of America's response to the defendant's motion to

16    correct PSR and sentencing memorandum.

17         THE COURT:  It's docket number what?

18         MR. COPPOLA:  It is docket number 145, Your Honor, and

19    it was filed last Friday.

20         THE COURT:  The only parts of that document that have

21    a bearing or could have a bearing on sentencing begin at

22    page 13, line 14, to the end.  Everything that precedes that

23    part of the document has no bearing on sentencing.

24       What's the Government's position on that?

25         MR. COPPOLA:  Your Honor, the Government's position is

1  that Mr. Cole at least needs an opportunity to review the pieces

2  that relate to sentencing.  And if he is requesting -- and he is

3  claiming that he has not received this document, and if he is

4  requesting some time to do that, I think the Court probably

5  should give it to him.

6          THE COURT:  I'm not sure what your response to my

7  intended question is.  I had scanned the document once I

8  received the information from my courtroom deputy, and the only

9  parts of this document that pertains to sentencing begin on

10  page 13, line 14.  Do you have a different opinion?

11          MR. COPPOLA:  I don't, Your Honor.

12          THE COURT:  All right.  Well, that's what I'm trying

13  to clarify.  So that when Mr. Cole is given the document, he

14  knows what portions of it are pertinent to sentencing.

15          MR. COPPOLA:  Very well, Your Honor.

16          THE COURT:  Mr. Cole, I'm having the Government to

17  give you that document, and the parts that are pertinent to

18  sentencing begin at page 13, line 14.

19      Please show it to Mr. Cole.

20          MR. COPPOLA:  I've marked it, Your Honor.

21          THE COURT:  All right.  And then you can give it to

22  Mr. Cole.  We're going to trail your proceeding, Mr. Cole, so

23  you have an opportunity to read that.  You will be able to take

24  it back with you to the holding cell.

25          DEFENDANT COLE:  Your Honor, I do have a service for

 1    the U.S. Attorney and for the Court today, too.

 2              THE COURT:  All we're going to deal with right now is

 3    the matter I just said.  So you're going to leave the courtroom

 4    now with the United States Marshals.  I'm doing this so you can

 5    read that document.

 6              DEFENDANT COLE:  Okay.

 7              THE COURT:  It starts on page 13, line 14.  All the

 8    way to the end.

 9              DEFENDANT COLE:  Okay.

10              MR. COPPOLA:  Thank you, Your Honor.

11          (Break in proceedings.)

12              THE CLERK:  Calling 14-269, United States versus Brent

13    Cole.

14              MR. COPPOLA:  Good morning, Your Honor.  Heiko Coppola

15    on behalf of the United States.

16              THE COURT:  Good morning.  I've authorized Mr. Cole to

17    sit at counsel table.  If that is your preference, you may do

18    that, too.  You do not have to.

19              MR. COPPOLA:  I will do that, Your Honor.  Thank you.

20              THE COURT:  The record shall reflect Mr. Cole is

21    present, too.

22         Mr. Cole, did you have sufficient time to read the few

23    pages?

24              DEFENDANT COLE:  I have one more paragraph I need to

25    look over.

1              THE COURT:  Okay.

2              MR. COPPOLA:  Your Honor, just for the record, I

3    discovered -- or I also directed Mr. Cole to look at page 8,

4    line 15 through page 9, line 20.

5              THE COURT:  Thank you.  Let me know when you're ready

6    to proceed, Mr. Cole.

7              DEFENDANT COLE:  Go ahead, Your Honor.

8              THE COURT:  Are you ready to proceed?

9              DEFENDANT COLE:  Yes.

10             THE COURT:  I need you to pull the microphone a bit

11   closer so your voice is amplified more.  You have to speak

12   directly into it.  That's much better.  Thank you, sir.

13        Before I provided you with the opportunity to read the

14   document, at least the aspects of the document that bear on

15   sentencing, you stated you wanted to give me something and give

16   the prosecutor something.

17             DEFENDANT COLE:  Yes, I have a service for the Court

18   and a service for the prosecutor.  Medical records are in there

19   which will show that he's quite in error about some of his

20   statements in this.

21        He claims that I was not on morphine when I was in the ICU

22   unit when they did their interview.  I have enclosed both the

23   records of the blood transfusion of 2,375 units of blood that I

24   received, and I've enclosed the records of all the IV solutions

25   that I was receiving on the day that they came into my room to

1    interrogate me.  And that was a third-degree interrogation, Your

2    Honor.

3         Counsel Toney repeatedly promised me that he would move to

4    suppress it and made no move to suppress it.  It was a complete

5    surprise.  Because I was under the impression that the ICU

6    interview would be suppressed.

7         I was never allowed to have the tape.  I was never allowed

8    to review it.  I didn't review it before we came in.  And if you

9    look over even the transcript --

10             THE COURT:  I'll interrupt you.  What's a third-degree

11    interrogation?  What does that mean?

12             DEFENDANT COLE:  Basically, they came in.  I was

13    unable to move.  I couldn't even move enough to push the call

14    button.  I had just been pulled off of the respirator.

15             THE COURT:  Sir, what do you mean when you say a

16    third-degree interrogation?

17             DEFENDANT COLE:  Basically a heavy-handed

18    interrogation where they come in and sit on top of you, and cut

19    you off, and grill you, and then misconstrue what you say, and

20    then turn it around on you, and sit and hammer you with it, and

21    try to get you to say something wrong, and then they misconstrue

22    that further.

23             THE COURT:  You say someone was sitting on top of you?

24             DEFENDANT COLE:  Well, standing over the top of me,

25    when I was unable to move, for over an hour.

1           THE COURT:  Not sitting on you?

2           DEFENDANT COLE:  Not actually sitting on me, no, sir.

3           THE COURT:  And the documents you want to give me are

4    medical records concerning when you were hospitalized following

5    the shots you received as a result of the shooting with the

6    officers?

7           DEFENDANT COLE:  Yes, sir.  I received five gunshot

8    wounds that were direct gunshot wounds.

9           THE COURT:  I'm just trying to figure out what you're

10   trying to give me.  Just the medical records, right?

11          DEFENDANT COLE:  Well, it's more than just the medical

12   records.

13          THE COURT:  What else is there?

14          DEFENDANT COLE:  There is a formal written answer to

15   the criminal charges which I had given J. Toney, and he had

16   agreed to file it and serve it and never did.

17       Actually, I rewrote it, but, I mean, I had given him one

18   back in October of 2014.

19          THE COURT:  When you say formal written answer of the

20   charges, what does that mean to you?

21          DEFENDANT COLE:  What I've done is I've gone over

22   everything that occurred, and I've written a formal answer to

23   it.

24          THE COURT:  Well, we've had a trial, so I don't need

25   that.

1              DEFENDANT COLE:  Your Honor, J. Toney was imposed upon

2    me as counsel.

3              THE COURT:  Sir, we're going to proceed with

4    sentencing right now.  And the first thing I wanted to determine

5    was whether there is additional documents I need to consider.

6              DEFENDANT COLE:  Yes, sir, there is.

7              THE COURT:  The documents you just stated are not

8    pertinent to sentencing in light of the jury trial and the

9    presentence report involved in this case.

10             DEFENDANT COLE:  The medical records are not relevant

11   that proves that what he's claiming in this document are false?

12             THE COURT:  The presentence report finds that the

13   offense level is 36, the criminal-history category is I, and the

14   advisory guideline range is 188 to 235 months.

15        As to Count 3, a 120-month consecutive sentence is required

16   to be imposed under the advisory guidelines for any sentence

17   given for Counts 1 and 2.

18             DEFENDANT COLE:  Objection, Your Honor.

19             THE COURT:  What is it?

20             DEFENDANT COLE:  Under Federal Rules of Criminal

21   Procedure, Rule 32(h)(4) --

22             THE COURT:  Let me interrupt you for a second.

23        I stated what I just stated, but there is an issue that I

24   need to decide, and that's the obstruction of justice issue.

25        The offense level I just stated, that was found by the

1    probation officer, includes the two-level enhancement for

2    obstruction of justice.  The parties have different views on

3    that issue.

4        Now, what were you about to tell me, Mr. Cole?

5            DEFENDANT COLE:  Your Honor, under Federal Rule of

6    Criminal Procedure 32(h)(4)(A)(ii), I am entitled to address the

7    Court and to state at your sentencing anything that I might have

8    in the way of a statement or objection to the sentencing.

9            THE COURT:  I think you're right in a sense.  I do

10   have to hear from you.

11       However, first I need to make a decision on what the offense

12   level is.  And since I presided over the trial in this matter,

13   and I have read the parties' sentencing memorandum and other

14   papers, I'm going to decide the issue.  And it's a rather long

15   decision.  I'm going to read it.  And the decision will be a

16   written decision that will most likely be issued today.

17       Defendant objects to the probation officer's recommendation

18   that he receive a two-level obstruction of justice enhancement

19   under advisory guideline Section 3C1.1(c).  Probation recommends

20   this enhancement be applied based on perjured trial testimony.

21   That's paragraph 17 of the presentence report.

22       Defendant argues "the accusation that he was not truthful on

23   the stand is unfounded and unsubstantiated."  That's defendant's

24   motion for correction of the PSR, 24:1-5, ECF number 134.

25       The Government rejoins that the defendant has earned the

1   two-level increase for obstruction of justice arguing in its

2   sentencing memorandum:  The jury's verdict is a clear rejection

3   of defendant's testimony as being neither true nor credible.

4   Defendant testified that he did not draw his weapon until the

5   officers began shooting him first, and that his actions were in

6   self-defense.  He also testified that Bureau of Land Management

7   Ranger Pultorak repeatedly threatened him during the traffic

8   stop.  This testimony was directly contradicted by Ranger

9   Pultorak and California Highway Patrol Officer Hardin.

10          DEFENDANT COLE:  Objection.

11          THE COURT:  I'm ruling now.  Don't interrupt me.

12      Defendant also stated that Ranger Pultorak was wearing a

13   brown poncho on the day of the shooting.  Defendant provided a

14   detailed description of the design and color of the poncho.  He

15   even remembered that the poncho had tassels at the bottom.

16   Ranger Pultorak denied owning or wearing such an item on the day

17   of the shooting.

18      More to the point, since his conviction, defendant continues

19   his narrative that he acted in self-defense, that Ranger

20   Pultorak gut shot him first, that Ranger Pultorak threatened him

21   during the traffic stop, that Ranger Pultorak lied, et cetera.

22      This Court may also consider defendant's attempts to

23   influence sentencing through his narrative in finding that

24   defendant obstructed justice, if the Court concludes that the

25   narrative put forth by the defendant is false.

1          That's in the Government's sentencing memorandum filed as

2     docket number 145.

3          The Government is correct about defendant's perjurious trial

4     testimony and his sentencing antics.  For example, in

5     defendant's document docketed as number 147, on page 11 of 42,

6     he states:  "Pultorak perpetrated to act in excess of his

7     jurisdiction to seize property belonging to defendant and

8     others.  If his concern had been defendant's camping, he would

9     have had to take his things.  Defendant approached the officers

10    because they were engaged in stealing his property."

11         In defendant's motion to correct document docketed as number

12    134, he states:  "There was only one motorcycle in the campsite.

13    N.C.S.O moved the Kawasaki into the camp after the shooting.

14    The information as to the statements of Grass Valley dispatch is

15    correct, but it was falsified [elsewhere, including] at trial.

16    The BLM log shows that Pultorak decided to impound the

17    motorcycles before he called in."

18         These sentencing statements evidence that defendant

19    willfully attempted to obstruct the administration of justice by

20    obviously lying and concocting a false story that he was within

21    his rights when he confronted the officers during what he

22    appears to characterize as an illegal investigation.

23         Sentencing guideline 3C1.1 states in relevant part:  If the

24    defendant willfully attempted to obstruct the administration of

25    justice with respect to the prosecution or sentencing of the

1    instant offense, and the obstructive conduct related to the

2    defendant's offense of conviction, increase the offense level by

3    two levels.

4         Application Note 4 to this enhancement provides a

5    non-exhaustive list of conduct to which it applies, which

6    includes committing perjury and providing materially false

7    information to a judge.

8         For perjury to be deemed obstruction, the Court must find

9    that the defendant gave false statement on a material matter

10   with willful intent.  And there is authority cited.

11        Application Note 4 to this enhancement defines material as

12   follows:  Material evidence, fact, statement or information as

13   used in this section means evidence, fact, statement or

14   information that, if believed, would tend to influence or affect

15   the issue under determination.

16        Probation recommends the obstruction of justice enhancement

17   be applied on the following basis.  I'm now quoting from the

18   PSR, paragraph 14.

19        The defendant took the stand at trial and was not truthful.

20   The defendant lied to the jury indicating he was fully compliant

21   with the officers' commands, and they, the officers, attacked

22   him without provocation.  Further, the defendant testified he

23   acted out of self-defense.  The referenced statement that the

24   defendant indicated at trial that he was fully compliant with

25   the officers' commands does not accurately reflect defendant's

1    trial testimony.

2        Defendant testified at trial that when he entered the area

3    of the campsite, he told Ranger Pultorak he had returned to

4    retrieve his property.  He testified that Pultorak removed his

5    handcuffs and twirled them on his finger to taunt him.

6    Defendant further testified that Pultorak asked him if he had

7    any weapons and directed him to turn around after defendant said

8    he was armed, and that Pultorak drew his weapon immediately and

9    gut shot him.  In essence, defendant testified that he was

10   acting in self-defense and only fired his gun once he was shot.

11       The trial record establishes that defendant gave willfully

12   false testimony on the central issue in the case - whether he

13   drew and fired his pistol in self-defense.  Contrary to

14   defendant's testimony, the trial record evinces that Ranger

15   Pultorak and Officer Hardin were investigating reported stolen

16   property located in the campsite when Pultorak heard rustling in

17   the brush from an area of the forest where he did not expect a

18   person to be.

19       In response to that noise, Pultorak said, "hello, police,"

20   twice.

21       Defendant responded:  "Yeah, it's me.  You dealt with me

22   earlier.  I'm just coming to get my stuff."

23       Pultorak asked defendant, "Do you have any weapons?"

24   Defendant said he was armed, and Pultorak told him to turn

25   around.

1     Defendant responded, "I'm not turning around now."

2     And defendant exposed his pistol as defendant assumed what

3     was characterized as a bladed stance.  Pultorak saw defendant's

4     right leg and right foot move to defendant's rear, and his right

5     hand headed to his waistband where his gun was holstered.

6     I'm going to add a footnote.  The defendant had a

7     safety-type flap over the holster which snapped.  When he exited

8     his vehicle, as he entered the forest, at least toward the

9     campsite, he unsnapped it.  I draw the reasonable inference from

10    that that he was placing his pistol in a ready position so that

11    it can easily be removed.  It is not typical to walk around with

12    a pistol in a holster that does not have the safety-covering

13    device snapped so that the pistol cannot accidently fall out of

14    the holster and you can get shot yourself.

15    The defendant's gun was holstered, but his hand was headed

16    back to draw it.  Pultorak obviously observed that and was in

17    the process of backing away from the defendant and drawing his

18    own weapon when he felt a twinge in his shoulder.  He had been

19    shot.

20    CHP Hardin testified that he heard defendant say:  "Hey,

21    this is my camp.  This is my gear.  Don't take my stuff."

22    He heard Pultorak ask defendant if he was armed.  Defendant

23    pulled his jacket back, and that's when the CHP officer saw

24    defendant's gun.

25    When Ranger Pultorak pulled out his handcuffs, defendant

1    said, "you're not putting those on me," and assumed a bladed

2    stance, left hand out, right hand going toward his waist.

3    Pultorak yelled at defendant to "drop the gun, drop the gun."

4    Backing out of there.  Defendant held his stance and pointed the

5    gun.

6         As soon as defendant got into an extended position, the CHP

7    officer heard the shot.  In response, both Pultorak and Hardin

8    returned fire.  Defendant fired multiple rounds, striking

9    Pultorak in the left shoulder and Hardin in a leg.

10        Pultorak's actions in attempting to detain defendant during

11   his and Hardin's investigation concerning the reported stolen

12   property were lawful under the circumstances, given defendant's

13   conduct and demeanor, and Pultorak's stated concerns during the

14   trial that two other men, whom had been with defendant earlier

15   during the day, may have also been approaching the campsite.

16        See generally a Ninth Circuit decision discussing when

17   pointing a weapon at an individual and/or handcuffing a person,

18   it is permissible to eliminate the possibility of an assault

19   while officers conduct or are engaged in investigative

20   functions.

21        Here, the trial record makes evident that defendant failed

22   to obey the lawful directives Pultorak gave him, and defendant

23   violently resisted being detained so Pultorak and Hardin could

24   continue with their investigation.  Defendant was not acting in

25   self-defense.  He was the aggressor.  He was the assaulter.  I

1    disbelieve his trial testimony to the contrary.

2        The falsity of defendant's testimony is further evidenced by

3    the statement defendant gave to the law enforcement

4    investigators while he was hospitalized for medical treatment.

5        In his June 16, 2014 interview, defendant stated he was

6    convinced Pultorak was going to shoot him so he pulled his

7    firearm to make Pultorak back away from him.  Defendant also

8    stated in his interview that he just freaked, and he fired a

9    total of six rounds.  When asked during the interview if he

10   thought it was wrong to shoot Pultorak and Hardin, defendant

11   replied yes.

12       For the stated reasons, I find by a preponderance of the

13   evidence that defendant falsely testified at trial.  Further, I

14   find by a preponderance of the evidence that defendant's false

15   testimony was material, and that if believed it would have

16   affected the jury's determination of his guilt, and that it was

17   willful.  His false testimony was not the result of confusion,

18   mistake or faulty memory.

19       Since the trial record evinces that defendant was not acting

20   in self-defense, he could not have been mistaken regarding the

21   issue, and the question of whether he acted in self-defense was

22   a central issue in this case.

23       Defendant's elaborate false testimony that Pultorak was

24   wearing a brown-tasseled poncho at the time of the incident

25   further demonstrates defendant's intent in testifying falsely.

1    He concocted that story to try to obtain a not guilty verdict.

2        The enhancement applies.  The issue remaining is where

3    within the advisory guideline range I should sentence the

4    defendant.

5        Would you like to say anything, Mr. Cole?

6        DEFENDANT COLE:  Yes, I would.  For the grand jury,

7    Andrew Forristel, the FBI agent who did the investigation,

8    testified to the grand jury that both officers drew their

9    weapons on me first.

10       Now, he got that impression because Officer Hardin stated at

11   least three times in his interview that he drew his weapon while

12   mine was still in the holster, and that he saw Officer Pultorak

13   draw his weapon while my weapon was still in the holster.

14       THE COURT:  You know, you do have an opportunity to

15   speak, but you're wasting your time concerning what you're

16   telling me now.  I was at the trial, sir, and you're wrong.  And

17   I'm not -- you're wrong on that.  I just ruled that you're

18   wrong.

19       DEFENDANT COLE:  I was not permitted to speak at

20   trial.  I was not permitted to address the Court.  J. Toney did

21   not bring forth the evidence that I asked him to bring forth.

22   He did not do an adequate investigation.

23       THE COURT:  During sentencing -- you did read the

24   right rule -- I am to give you an opportunity to speak, but I

25   don't have to give you an opportunity to be repetitive and to

1    cover things that aren't pertinent to sentencing.

2        I'm going to turn to the Government.  Does the Government

3    desire to say anything before I pronounce sentence?

4            MR. COPPOLA:  There was one other area that I recall

5    that Mr. Cole raised, Your Honor, with respect to the

6    guidelines, and that had to do with the level of injury suffered

7    by Ranger Pultorak.

8        And so to that extent, the Government would certainly like

9    the Court's thoughts and ruling with respect to that, as he has

10   challenged I believe it was a five-level enhancement for that in

11   terms of the serious bodily injury.

12           THE COURT:  Are you indicating that there is

13   insufficient information in the presentence report to justify

14   the enhancement?

15           MR. COPPOLA:  No, Your Honor.  I'm simply saying that

16   Mr. Cole raised that, and I wanted the Court to dispose of it.

17   I think there is plenty of information, and I provided more in

18   my sentencing memorandum.

19           THE COURT:  I adopt the findings in the presentence

20   report and determine them to be true and correct except for the

21   finding that I discussed concerning the obstruction of justice

22   enhancement.  That finding will be modified by the order I've

23   given.  Anything further?

24           MR. COPPOLA:  No, Your Honor.

25           THE COURT:  Mr. Cole, do you have anything further

1    before I pronounce sentence?

2            DEFENDANT COLE:  Yes, I would like to object because I

3    have not had an opportunity to speak.

4            THE COURT:  Oh, yes, you have.  You may not have had

5    an opportunity to speak as much as you want to speak.  You can't

6    necessarily speak all day.

7            DEFENDANT COLE:  I understand that.

8            THE COURT:  If I can't discern that you have something

9    that is pertinent to sentencing to say, I'm going to just

10   conclude the sentencing and rule.

11           DEFENDANT COLE:  I do have something pertinent to say,

12   Your Honor.

13           THE COURT:  All right.

14           DEFENDANT COLE:  Absent assistance of counsel, a

15   sentence of any kind being imposed is not acceptable and not

16   allowed, and that is Supreme Court ruling of Volume 422 of the

17   United States Supreme Court Reports, Faretta versus California,

18   begins on page 806.  That's page 807.  I can read the cite if

19   you give me a minute to locate it.

20           THE COURT:  You don't have to.

21           DEFENDANT COLE:  I was denied the effective assistance

22   of counsel.  J. Toney was not effective assistance of counsel.

23           THE COURT:  That's a post-trial issue.  That's a

24   post-judgment issue.

25      I'm going to rule.  I find that the defendant is a

1    manipulator.  He complains about his trial attorney's

2    performance during trial, but defendant did not manifest a

3    significant problem with his trial attorney during the trial.

4         For instance, when his defense attorney cross-examined one

5    of the state investigators during the trial, defendant appeared

6    to have a gleeful demeanor, indicating that he appreciated how

7    his attorney conducted that examination.

8         I opine that defendant's stated disapproval of his former

9    appointed attorney is part of his deliberate action to try to

10   convince others that he did not have a fair trial and should

11   have prevailed on his self-defense theory, which I authorized in

12   a pretrial ruling in which the Government acquiesced.

13        I opine that the defendant has concocted a fanciful story

14   about law enforcement officials for the purpose of getting his

15   convictions -- hoping to get his convictions overturned.

16        The defendant has repeatedly demonstrated that he lacks

17   remorse, has no respect for the law that he was convicted of.

18   Frankly, I think he understands the wrongfulness of what he did

19   as he virtually conceded that when the investigators, during the

20   hospital interview, were questioning him.  But he appears to be

21   too prideful to admit the tragic mistake he made that has

22   serious consequences.  During the hospital interview, he said he

23   just freaked out.  And when asked if he thought what he did was

24   wrong, he said yes.

25              DEFENDANT COLE:  Objection.  The question --

1          THE COURT:  I'm ruling now.  You're done.  Sorry.  I'm

2     almost done.

3          DEFENDANT COLE:  Objection.

4          THE COURT:  Well, Mr. Cole, if you don't elect to stop

5     talking when I'm talking, you will end up on the fifth floor,

6     and you will be listening to the proceedings from the fifth

7     floor in the marshal's office.  I think there's a video

8     connection, video/audio connection that once existed.  That's

9     where you're going to be.  So don't interrupt me again.  I'm

10    ruling.  If you want to stay in the courtroom.

11         I agree with the Government's following sentencing argument

12    which I quote and paraphrase:

13         Given defendant's utter disregard for authority and the law,

14    a sentence at the top of the advisory guidelines will be

15    imposed.  This sentence is required to reflect the seriousness

16    of the offense, provide just punishment and adequate deterrence,

17    and most importantly to protect the public.  The defendant is a

18    danger to the public.  He violently overreacted to the presence

19    of officers at his campsite.  He fired at the officers six times

20    and hitting each officer.  He displays a stunning lack of regard

21    for anyone other than himself.  He has accepted no

22    responsibility, perpetuated his own self-defense narrative, and

23    has attempted to portray himself as a victim in this case.

24         As the Eleventh Circuit indicated or stated in a case before

25    it, a case called Brian -- I won't read it.  I will just tell

1    you, and it's probably repetitive.

2        It's unfortunate that the defendant has not tried to accept

3    some recognition of his responsibility.  This is one of the most

4    difficult things in the job.  The defendant does have positive

5    things in his background.  And the educational portion of the

6    presentence report reveals that he completed high school, he

7    attended college, and had gainful employment.  But because of

8    the other sentencing factors and because he blames others for

9    his vicious attack on two law enforcement officers, I sentence

10   as follows:

11       Pursuant to the Sentencing Reform Act of 1984, it is the

12   judgment of the Court that the defendant, Brent Douglas Cole, is

13   committed to the custody of the Bureau of Prisons for terms of

14   235 months on each of Counts 1 and 2, to be served concurrently,

15   and a term of 120 months on Count 3, to be served consecutively

16   to the terms imposed on Counts 1 and 2 to the extent necessary

17   to produce a total term of 355 months.

18       The defendant shall pay a special assessment of $300.

19   Payment to begin immediately.

20       You read the presentence report, didn't you, Mr. Cole?

21           DEFENDANT COLE:  Yes, I did.

22           THE COURT:  I was supposed to have asked you that, and

23   I just remembered that I didn't.

24       No fine is imposed because the defendant lacks the ability

25   to pay a fine.  Therefore it's waived.

1          Upon release from imprisonment, the defendant shall be

2     placed on supervised release for a term of 36 months on each of

3     Counts 1, 2 and 3, to be served concurrently, for a total term

4     of 36 months.

5          Within 72 hours of release from the custody of the Bureau of

6     Prisons, he shall report in person to the probation office in

7     the district to which he is released.

8          While on supervised release, the defendant shall not commit

9     another federal, state, or local crime, shall not possess a

10    firearm, ammunition, destructive device or any other dangerous

11    weapon, and shall not illegally possess controlled substances.

12         The defendant shall cooperate in the collection of DNA as

13    directed by the probation officer and shall comply with the

14    standard conditions which have been recommended by the United

15    States Sentencing Commission and which I adopt.

16         Further, the defendant shall refrain from any unlawful use

17    of a controlled substance.

18         The defendant shall submit to one drug test within 15 days

19    of release from imprisonment, and at least two periodic drug

20    tests thereafter, not to exceed four drug tests per month.

21         I adopt the special conditions recommended by the probation

22    officer on pages 19 and 20 of the presentence report and impose

23    them.

24         Mr. Cole, you have a right to appeal from this judgment.  If

25    you wish to file an appeal, you must file a written notice of

1  appeal with the Clerk of this court within 10 days from the

2  entry of this judgment.

3      If you cannot afford the cost of an appeal, you will be

4  permitted to proceed in forma pauperis.  If you cannot afford

5  counsel, one will be appointed to represent you.  If the

6  Government wishes to appeal, it must file a notice of appeal

7  within 30 days from the entry of this judgment.

8      Anything further?

9          MR. COPPOLA:  Yes, Your Honor.  I think the Court said

10  that Mr. Cole needed to file his notice of appeal within 10

11  days.  I think it's 14.

12          THE COURT:  What's your authority?

13          MR. COPPOLA:  Just a moment, Your Honor.

14      Your Honor, it's Federal Rule of Appellate Procedure 4, and

15  it's in subsection B.

16          THE COURT:  What page of the book is that?

17          MR. COPPOLA:  410, Your Honor.  In the 2015 revised

18  version.

19          THE COURT:  It was just revised?

20          MR. COPPOLA:  Yes, Your Honor.

21          THE COURT:  It appears that the rule has been revised,

22  and you have 14 days to file the appeal.

23      Mr. Cole, I don't normally ask a defendant about this, but

24  I'm going to ask you.  The probation officer has made a

25  recommendation that I tell the Bureau of Prisons they should

1   incarcerate you in the State of California.

2       Do you want me to make a placement recommendation or just

3   let the Bureau of Prisons decide the issue?

4           DEFENDANT COLE:  Excuse me, Your Honor.  What was the

5   question again?  I'm not sure I fully understood that.

6           THE COURT:  In what state do you want to be in prison?

7           DEFENDANT COLE:  North Dakota, where I'm living.  I

8   was just visiting California when this happened.

9           THE COURT:  I recommend that the defendant be

10  incarcerated in an institution in North Dakota.  But only

11  insofar as this recommendation accords with the security

12  classification and space availability of the Bureau of Prisons.

13      Anything further?

14          MR. COPPOLA:  One last thing, Your Honor.  Mr. Cole

15  has repeatedly claimed that he has not received a full copy of

16  the discovery from his former defense counsel.

17      The Government has gone through the trouble of reproducing a

18  full copy of that discovery except for one disc, which we are

19  currently reproducing.  I'm going to hand what we have presently

20  to the defendant, and I wanted that on the record.

21      And this morning when I provided Mr. Cole with a copy of our

22  presentence report -- or, excuse me, with our sentencing memo, I

23  also provided him with a copy of two letters that I had written

24  him, with attachments, that he had not yet received.  I just

25  wanted that on the record.

1      But beyond that, Your Honor, the Government has nothing

2  further.  Thank you.

3           DEFENDANT COLE:  I do have one more thing.  The Nevada

4  County Sheriff's Office has a number of pieces of evidence that

5  have not been released, a number of discs, digital evidence and

6  whatnot, which is relevant particularly to the appeal at this

7  point.

8           THE COURT:  I've referred your return of evidence

9  motion to the United States Magistrate Judge.

10     This matter is adjourned.  Mr. Cole is remanded to the

11  custody of the United States Marshal to serve the sentence just

12  imposed.

13     (Court adjourned.  10:30 a.m.)

14

15                          CERTIFICATION

16

17     I, Diane J. Shepard, certify that the foregoing is a correct

18  transcript from the record of proceedings in the above-entitled

19  matter.

20                          /s/ DIANE J. SHEPARD
                            DIANE J. SHEPARD, CSR #6331, RPR
21                          Official Court Reporter
                            United States District Court
22

23

24

25